1/5 21

Fee Paid

1   BRIAN CONWAY

2   27662 Aliso Creek Rd #10111

3   Aliso Viejo, CA 92656

4   Phone: (949) 828-7995

5   Email: beiwulf@yahoo.com

6   Plaintiff  Pro Se

7

8       UNITED STATES DISTRICT COURT

9       CENTRAL DISTRICT OF CALIFORNIA

10      SOUTHERN DIVISION – SANTA ANA

11

| | |
|---|---|
| 12  BRIAN CONWAY | ) Case No.: 8:25-cv-01949-DOC-(KESx) |
| 13 | ) |
| 14          Plaintiff, | ) 1. Violation of Magnuson-Moss |
| 15 | )      Warranty Act |
| 16 | )      (15 U.S.C. § 2301 et seq.) |
| 17 | ) 2. Violation of Americans with |
| 18  v. | )      Disabilities Act |
| 19 | )      (42 U.S.C. § 12182) |
| 20  MERCEDES-BENZ USA, LLC, | ) 3. Fraudulent Concealment |
| 21  a Delaware Limited Liability Company; | ) 4. Unjust Enrichment |
| 22  FLETCHER JONES MOTOR CARS, INC., | ) 5. Violation of California Consumer |
| 23  dba Fletcher Jones Motorcars, | )      Legal Remedies Act |
| 24  a California Corporation, | ) |
| 25 | ) |
| 26          Defendants, | ) |
| 27 | ) |
| 28 | ) |

**DEMAND FOR JURY TRIAL**

## I. INTRODUCTION

1. This action involves Defendants' violation of warranty, emissions, and disability laws following an EPA-mandated Approved Emissions Modification ("AEM") that caused catastrophic engine failure.

2. Plaintiff's vehicle currently cannot operate without violating federal emissions standards due to documented mechanical failures directly caused by improperly installed AEM components. Each day of continued non-compliance constitutes an ongoing violation of federal law.

3. The case presents federal questions under the Magnuson-Moss Warranty Act (15 U.S.C. § 2310(d)) and Americans with Disabilities Act (42 U.S.C. § 12188), with supplemental jurisdiction over state law claims. Each cause of action arises from Defendants' coordinated conduct following the AEM modification, presenting common questions of fact suitable for unified adjudication.

## II. JURISDICTION AND VENUE

4. This Court has federal question jurisdiction under:
   - 28 U.S.C. § 1331 (federal question)
   - 15 U.S.C. § 2310(d) (Magnuson-Moss)
   - 42 U.S.C. § 12188 (ADA)

5. **Amount in Controversy**: Exceeds $75,000 exclusive of interest and costs, including actual damages ($64,449+), Song-Beverly civil penalties (up to 2x actual damages), and statutory damages under federal law.

6. Supplemental jurisdiction exists under 28 U.S.C. § 1367 for related state law claims.

7. Venue is proper under 28 U.S.C. § 1391(b) as substantial events occurred in this District.

## III. PARTIES

8. Plaintiff BRIAN CONWAY is a disabled military veteran residing in Aliso Viejo, California, with service-connected disabilities requiring accommodation through service animal Kojin.

9. Defendant MERCEDES-BENZ USA, LLC ("MBUSA") is a Delaware LLC with principal place of business in Georgia.

10. Defendant FLETCHER JONES MOTOR CARS, INC. ("FJMB") is a California corporation operating in Newport Beach, California.

## IV. NO ENFORCEABLE ARBITRATION AGREEMENT

11. **Settlement Agreement Void - No Consideration**: MBUSA accepted Plaintiff's vehicle for AEM modification in July 2022 but failed to pay the required $3,290 settlement amount for 37 months. Under *Armendariz v. Foundation Health Psychcare Services*, 24 Cal.4th 83 (2000), arbitration agreements require mutuality of obligation. MBUSA's acceptance of AEM benefits while withholding payment constitutes failure of consideration. Plaintiff is not bound by any class settlement procedures, arbitration requirements, or claim limitations as no settlement contract was formed.

12. **No Valid Contract Exists**: "A party to a contract cannot ratify the beneficial parts and reject the rest." *Beaver v. Tarsadia Hotels*, 816 F.3d 1170 (9th Cir. 2016). MBUSA cannot enforce arbitration while breaching payment obligations. See also *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996 (9th Cir. 2010) (material breach prevents enforcement of arbitration).

13. **Waiver Through Litigation Conduct**: Defendants engaged counsel (Crafts Law Firm) and pursued collection actions without invoking arbitration, constituting waiver. *Martin v. Yasuda*, 829 F.3d 1118 (9th Cir. 2016) (litigation conduct inconsistent with arbitration constitutes waiver).

14. **Federal Claims Exception**: Even if arbitration existed, Clean Air Act enforcement and ADA public accommodation claims are non-arbitrable matters of public interest. *EEOC v. Waffle House*, 534 U.S. 279 (2002).

15. **No Class Action Restrictions**: Plaintiff never received settlement payment and is not a class member. No class action procedures, claim committees, or settlement restrictions apply.

## V. STATEMENT OF FACTS

### A. The AEM Installation and Immediate Failures

16. July 2022: Plaintiff's 2011 Mercedes E350 BlueTEC underwent AEM at Laguna Niguel Mercedes at 83,000 miles.

17. Within 30 days, ASE Master Technician Charles Shaw documented Mercedes technicians had:
    o Improperly installed the DEF injector causing white smoke (dosage valve became unseated)
    o Failed to properly secure components that would later cause cascading failures

18. Expert Charles Shaw credentials:
    o 35+ years owner/operator of AAA-approved S&S Auto Service
    o 25+ year California State Smog Instructor
    o Adjunct Faculty, Cypress College (20+ years)
    o Court-qualified expert witness on automotive matters

19. Shaw's May 18, 2025 written statement documents:
    o "newly replaced Diesel Exhaust Fluid Injector was improperly installed"
    o "Nitrogen Sensor...was loose and falling out of the exhaust"
    o Both failures occurred "shortly after two emission related warranty repairs"

4

1         o   (Formal declaration under penalty of perjury to be filed as

2               supplemental exhibit)

3       20. **Critical Timeline of Cascading Failures**:

4         o   **July 2022**: AEM installation with improperly secured components at

5               Laguna Niguel Mercedes

6         o   **August/September 2022**: White smoke from improperly seated DEF

7               dosage valve (videos documented)

8         o   **November 2022**: Salvador Arreola (BAR) involved regarding post-

9               AEM failures

10        o   **January 2023**: NOx sensor dislodged during highway driving,

11              triggering CEL

12        o   **November 2023 - January 2024**: Oil consumption issues escalate;

13              BAR monitoring continues

14        o   **Engineering Cascade**: The improperly secured NOx sensor provided

15              false exhaust readings to the ECU, causing:

16           ▪   Over-fueling to compensate for perceived emissions imbalance

17           ▪   Excessive DEF dosing attempting to reduce non-existent NOx

18                levels

19           ▪   Unburnt fuel washing down cylinder walls, degrading ring seal

20           ▪   Progressive compression loss (documented 21 bar vs. 23 bar

21                minimum)

22        o   **Result**: Direct mechanical chain from emissions component failure to

23              engine damage

24     **B. Progressive Component Failures**

25       21. **Oil Consumption Pattern**:

26         o   November 30, 2023: Oil consumption test initiated (Invoice #273209,

27               Mileage 105,600)

1    o   January 12, 2024: Oil 2.0 quarts low after 500 miles; PCV replaced
2        under warranty (Invoice #281021)
3    o   Rob Draper (Service Advisor) confirmed warranty coverage but never
4        disclosed root cause
5    o   February 8, 2024: 1.5 quarts consumed (Invoice #285394.1)
6    o   Tom (Shop Foreman) later stated replacement would be for
7        "performance increase" not warranty
8    **22. Complete System Failure Within 32,000 miles post-AEM:**
9    o   DPF failed at 27% soot loading
10   o   EGR valves failed (Rob Draper noted warranty coverage early 2024)
11   o   Compression test: Cylinder 6 at 21 bar (minimum spec: 23 bar)
12   o   Leak-down: 21-25% on five cylinders (industry standard: <15%)
13   o   Engine replacement quoted at $36,959.40
14   o   January 30, 2025: Tom (Shop Foreman) attempted to reframe
15       necessary repairs as "optional performance upgrade"
16   o   Pattern: Each component failure occurred without root cause
17       disclosure
18   **23. Coordinated Refusal of Diagnostic Information:**
19   o   FJMB: Claims diagnostic data is "proprietary MBUSA information"
20   o   MBUSA: Claims "we don't perform the work, contact the dealer"
21   o   Both refuse borescope interpretation
22   o   Both refuse DPF failure analysis
23   o   Both refuse to explain cascading component failures
24   **C. Current Non-Compliance Status**
25   24. The vehicle presently cannot operate without violating federal emissions
26       standards due to:
27   o   Failed emissions control components
28   o   Inability to complete regeneration cycles

6

1          o   Oil contamination of exhaust systems
2          o   Documented compression below specifications

**D. Concealment and Misrepresentation**

25. **Borescope Evidence Spoliation**: FJMB performed borescope imaging but violated affirmative disclosure duties by:

   o   Labeling results "inconclusive" without engineering review
   o   Violating Cal. Bus. & Prof. Code § 9884.9 requiring complete diagnostic documentation
   o   Breaching 16 CCR § 3356 mandating disclosure of "specific test results"
   o   Invoice states "BORE SCOPE PICTURES PROVIDED TO CUSTOMER" but no interpretation
   o   Under *Cedars-Sinai Medical Center v. Superior Court*, 18 Cal.4th 1 (1998), selective disclosure while withholding interpretation constitutes concealment

26. **Vehicle Status Misrepresentation**: Through counsel (Crafts Law Firm), FJMB claimed vehicle "ready for pickup" while concealing:

   o   21 bar compression failure (28% below minimum specification)
   o   $36,959.40 engine replacement recommendation
   o   Emissions system non-compliance preventing legal operation
   o   Violates 15 U.S.C. § 2304(a)(4) requiring disclosure of warranty remedies

27. **Vehicle Retrieval**: Plaintiff requested written certification of emissions compliance and mechanical safety before accepting vehicle with documented failures. Request met with threats of abandonment and storage fees.

28. **Safety Concerns**:

   o   DPF failure creates fire risk per SAE Technical Paper 2019-01-0974

1      o   21 bar compression risks engine failure

2      o   Contaminated oil system risks turbocharger failure

3      o   Cal. Veh. Code § 24007 prohibits operation of unsafe vehicles

4   29. **Written Requests Denied**: Plaintiff made multiple written requests for

5     documentation, all denied:

6      o   January 17, 2025: Certified letter to MBUSA requesting diagnostic

7        reports - no substantive response

8      o   January 30, 2025: Email to Alex Kniazuk requesting root cause

9        analysis - denied as "proprietary"

10      o   February 3, 2025: In-person request for written warranty

11        determination - Eric Smith: "I don't need to get into details"

12      o   February 10, 2025: Written request for borescope interpretation -

13        ignored

14      o   March 5, 2025: Formal request for emissions compliance certification

15        - no response

16      o   April 11, 2025: ADA accommodation request for written

17        communications - ignored by management

18 **E. Service Animal Life-Safety Impact**

19   30. **Service Animal Impact**:

20      o   Kojin: 100-pound Akita service animal for PTSD/disability support

21      o   Heat stroke risk above 80°F (veterinary documented)

22      o   Southern California exceeds 80°F April-October

23      o   Only climate-controlled vehicle detained 214+ days

24      o   **Specific Impacts from Vehicle Loss**:

25        ▪   Missed VA medical appointments requiring service animal

26          presence

27        ▪   Unable to transport son to medical appointments causing family

28          stress

- Repeatedly burdened friends for vehicle loans causing psychological distress
- Forced to cancel family activities during heat-risk periods
- Degraded mental health from inability to fulfill family transportation needs
  - No alternative transportation accommodations offered despite multiple written requests

30a. **Dealer Selection After Laguna Niguel Failure**: After Laguna Niguel Mercedes's negligent AEM installation caused catastrophic failures, Plaintiff could not return to that dealer. Plaintiff researched alternatives and selected FJMB based on: (1) largest Mercedes dealer in Orange County; (2) superior service reputation; (3) comprehensive BlueTEC diesel capabilities; (4) similar travel time to Foothill Ranch Mercedes despite greater distance. Plaintiff brought vehicle to FJMB in January 2024, establishing service relationship and providing extensive documentation of AEM-related failures. FJMB accepted Plaintiff as customer, performed diagnostics, and began warranty evaluation before discriminating based on disability accommodation needs.

**F. Regulatory Failures**

31. California Bureau of Automotive Repair declined enforcement. In official correspondence dated March 18, 2025, BAR Chief Patrick Dorais stated: "BAR does not have statutory authority over an automobile manufacturer's warranty provisions and we cannot compel Mercedes Benz of America to provide any benefit under the warranty." This admission demonstrates that state consumer protection mechanisms are ineffective for AEM warranty enforcement, making federal court intervention necessary.

32. **Jurisdictional Prerequisites Satisfied**: Federal jurisdiction is proper as Plaintiff attempted resolution through applicable administrative channels without success. Multiple regulatory complaints filed with EPA (January 31,

9

2025, Reference #183185014) and FTC (Reference #183185014). EPA Office of Enforcement and Compliance Assurance acknowledged complaint February 4, 2025, subsequently forwarding matter to appropriate oversight parties and referring to CARB and California Attorney General March 28, 2025. EPA confirmed Mercedes-Benz was notified of the complaint. **Clean Air Act 60-day notice served August 15, 2025, with receipt by defendants on August 19, 2025**, triggering statutory cure period expiring October 18, 2025. Regulatory impasse necessitates federal court intervention. 90+ days elapsed without administrative resolution.

**G. Exhaustion of Administrative Remedies**

33. Plaintiff attempted resolution through:

- **EPA**: Multiple complaints filed including January 31, 2025 (Reference #183185014)
- **California BAR**: Two complaints filed (Reference #61C7-PZBPNF); Chief Patrick Dorais responded March 18, 2025: "BAR does not have statutory authority over manufacturer's warranty provisions"
- **FTC**: Consumer protection complaint filed (Reference #183185014)
- **California Attorney General**: Consumer complaint submitted
- **State Assembly**: Representative Diane Dixon contacted
- **Direct to MBUSA**: Multiple certified letters (January 17, 27, 2025)
- **Salvador Arreola (BAR)**: Ongoing communications November 2023 - January 2024

34. **February 3, 2025 Exchange at FJMB**: During mandated loaner return:

- Eric Smith stated: "had I agreed to the oil consumption test, it might have resulted in a turbocharger failure diagnosis, and MBUSA might have covered its replacement under warranty"
- Smith confirmed FJMB acts on its own behalf, not as MBUSA liaison
- Smith stated some technical documentation "does not exist"

- Smith refused to provide written documentation: "I don't need to get into details with it"
- Smith threatened storage fees and legal action
- Justin Ringel present and supporting Smith's positions

35. **Lien Threats During Warranty Dispute**:
   - March 19, 2025: Crafts Law Firm threatened lien sale
   - Storage fees threatened while warranty dispute unresolved (violates 16 CCR § 3353)

36. **Key Documentary Evidence**:
   - January 17, 2025: Certified letter to MBUSA requesting diagnostics
   - January 27, 2025: Two calls to MBUSA (24:56 and 24:19 duration) - no meaningful response
   - January 30, 2025: Formal RCA request to Alex Kniazuk
   - January 31, 2025: EPA complaint filed (Reference #183185014); FTC complaint filed (Reference #183185014); BAR complaint filed (Reference #61C7-PZBPNF)
   - February 4, 2025: EPA Office of Enforcement and Compliance Assurance acknowledgment; Eric Smith email confirming MBUSA/FJMB coordination
   - March 5, 2025: Formal dispute of storage fees
   - April 11, 2025: ADA accommodation request to Dave Gonzalez (no response)

37. **Persistence Despite Obstruction**: Plaintiff's 90+ day pursuit through multiple agencies, despite each claiming lack of authority, demonstrates both good faith exhaustion and the inadequacy of administrative remedies for AEM enforcement. The circular jurisdictional disclaimers between federal and state agencies exemplify why federal court intervention is necessary.

38. **Pre-Litigation Resolution Attempts**: Plaintiff attempted good faith
    resolution through direct communication with both Defendants' management
    and counsel before filing suit, consistent with this Court's preference for pre-
    litigation resolution. All attempts were rebuffed or ignored.

## VI. FIRST CAUSE OF ACTION

## Violation of Magnuson-Moss Warranty Act

*(15 U.S.C. § 2301 et seq.) (Against All Defendants)*

39. Plaintiff incorporates all preceding paragraphs.

39a. **Non-Disclaimable Federal Warranty**: The AEM warranty arises from
federal mandate under EPA Consent Decree, not voluntary commercial warranty.
Defendants cannot disclaim, limit, or condition federally-required emissions
warranty coverage. Any attempt to do so violates both MMWA and Clean Air Act
regulations.

40. The vehicle is a "consumer product" with written warranty. The AEM
    Settlement specifically provides: "4-year/48,000-mile extended warranty
    from date of AEM installation for emissions-related components." Vehicle
    underwent AEM July 2022 with 83,000 miles, creating warranty coverage
    through July 2026 or 131,000 miles. Current mileage approximately 115,000
    miles places vehicle squarely within extended warranty period.

41. Defendants failed to remedy defects after reasonable opportunity:

    o Multiple repair attempts over 2.5 years

    o Catastrophic failures within warranty period

    o Refusal to honor extended AEM warranty

    o **Specific**: 30+ days opportunity to cure after each written demand
      (January 17, 2025; January 30, 2025; February 3, 2025)

    o **Pattern**: Over 214 days vehicle in Defendants' possession without
      successful repair

12

1              o   **Result**: Vehicle remains inoperable and non-compliant with emissions
2                  standards
3        42. **Tie-In Violation - Redundant Testing as Obstruction**: Despite
4            documented catastrophic engine damage (21 bar compression failure, 25%
5            leak-down on five cylinders), Defendants demanded $600 for an oil
6            consumption test they knew would only confirm existing failures. This
7            constitutes:
8              o   Exhausting customer time with redundant diagnostics
9              o   Avoiding transparent warranty repairs
10             o   Shop Foreman Tom's admission that engine replacement would be for
11                 "performance increase" not warranty
12             o   Pattern of obstructing warranted repairs through unnecessary testing
13       42a. **Direct Causation from AEM to Engine Damage**: As detailed in Paragraph
14       20 above, the improperly installed AEM components created a cascade of failures:
15       false NOx sensor readings caused ECU over-fueling and excessive DEF dosing,
16       leading to cylinder wash and documented compression failure. This direct
17       mechanical causation chain establishes that engine damage resulted from emissions
18       component failures covered under the AEM warranty, not consequential damage.
19       43. Eric Smith admitted February 3, 2025: "had I agreed to the oil consumption
20           test, it might have resulted in a turbocharger failure diagnosis, and MBUSA
21           might have covered its replacement under warranty" - acknowledging they
22           suspected the failure but conditioned coverage on unnecessary testing.
23       43a. **MMWA Disclosure Violations**: Defendants violated 15 U.S.C. § 2304 by: -
24       Failing to provide warranty terms in writing when requested - Refusing to disclose
25       warranty claim procedures - Withholding diagnostic information paid for by
26       consumer - Creating undisclosed prerequisites for warranty coverage - Failing to
27       maintain required warranty records accessible to consumers These violations are
28       per se evidence of bad faith under federal law.

44. **Willful Violation Through Coordinated Concealment**: Defendants
engaged in systematic bad faith by:

- o FJMB acknowledging AEM-related failures (PCV valve warranty
  coverage) while refusing root cause disclosure
- o FJMB claiming root cause analysis is "proprietary MBUSA
  information"
- o MBUSA claiming "we don't do the work, ask the dealer"
- o Both refusing borescope analysis despite customer requests
- o Both refusing DPF analysis despite documented failure
- o Both refusing to explain connection between AEM installation and
  subsequent failures
- o FJMB threatening lien and storage fees during unresolved warranty
  dispute in violation of 16 CCR § 3353
- o **Critical**: Defendants charged Plaintiff for diagnostics ($1,500+) while
  refusing to provide diagnostic results - violating 15 U.S.C. §
  2304(a)(3)
- o **Economic Coercion**: Conditioning warranty coverage on unnecessary
  $600 oil consumption test despite documented catastrophic engine
  failure
- o This circular blame-shifting while withholding critical diagnostic
  information constitutes willful violation under *Kwan v. Mercedes-
  Benz*, 23 Cal.App.4th 174 (1994) (willful = intentional/knowing)

45. **Song-Beverly Act Remedies**: Plaintiff seeks remedies under California's
Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1794, including
civil penalties for willful violation. Congress intended state warranty
remedies to be available in federal court actions under MMWA. *Schaefer v.
Chrysler Corp.*, 86 F.Supp.2d 1002 (C.D. Cal. 2000) (MMWA incorporates

14

state remedies); see also *Kwan v. Mercedes-Benz*, 23 Cal.App.4th 174 (1994)
(willful = intentional/knowing).

46. FJMB and MBUSA are jointly and severally liable. *Keegan v. American
Honda*, 838 F.Supp.2d 929 (C.D. Cal. 2012) (dealer/manufacturer joint
liability).

47. Damages exceed $50,000. Under MMWA, Plaintiff is entitled to:
   o All actual damages ($64,449+)
   o Consequential damages from warranty breach
   o Incidental damages including diagnostic costs
   o Attorney fees and costs (even if pro se)
   o Other equitable relief deemed appropriate

## VII. SECOND CAUSE OF ACTION

**Americans with Disabilities Act - Title III**

*(42 U.S.C. § 12182) (Against All Defendants)*

48. Plaintiff incorporates all preceding paragraphs.

49. FJMB is a place of public accommodation under 42 U.S.C. § 12181(7)(F)
(service establishment). Automotive dealerships providing repair services to
the general public constitute public accommodations required to ensure
equal access to all customers regardless of disability status.

50. **Denial of Access to Services**: Defendants discriminated against Plaintiff, a
disabled veteran with service animal, by:
   o **Written Communication Denial**: January 30, 2025: Plaintiff
     requested written warranty decisions due to disability-related need for
     documentation - denied. February 3, 2025: Repeated request for
     written documentation - Eric Smith responded "I don't need to get into
     details with it"
   o **Complete Service Ban**: Eric Smith's February 3, 2025 verbal
     statement: FJMB "will no longer work on" Plaintiff's vehicle

15

- o **Total Communication Cutoff**: Eric Smith's February 4, 2025 email: "Neither I nor anyone on my team will further address your substantive concerns and we will not respond to any correspondence from you other than on the topic of the removal of your vehicle"

- o **Access Obstruction**: Crafts Law Firm's April 23, 2025 directive: "All future communications must go through counsel" - preventing direct dealership access

- o **Accommodation Request Ignored**: March 2025 written request for disability accommodation - no response. April 11, 2025 formal ADA request to General Manager Dave Gonzalez - no response

- o **Transportation Barrier**: 214+ day vehicle detention forcing Plaintiff to:
  - ▪ Miss medical appointments requiring service animal presence
  - ▪ Cancel family activities during heat-risk periods (80°F+ danger for 100-pound Akita)
  - ▪ Burden friends repeatedly for vehicle loans causing psychological distress
  - ▪ Experience degraded mental health from inability to provide family transportation

- o **Coercive Tactics**: Threatening storage fees and lien sale while simultaneously refusing to provide disability accommodations or complete warranty repairs

51. **Ongoing Denial of Full and Equal Access**: Plaintiff cannot access FJMB's services, facilities, privileges, advantages, or accommodations on equal basis due to disability-based discrimination. This is not merely a warranty dispute but a denial of equal access to dealership services available to non-disabled customers. While other customers receive written documentation, warranty explanations, and continued service, Plaintiff was categorically denied these

16

1    accommodations due to disability-related communication needs. *PGA Tour,*
2    *Inc. v. Martin*, 532 U.S. 661 (2001) (reasonable modifications required).
3  52. **Plaintiff's Intent to Return Satisfies Article III Standing**: Plaintiff's dealer
4    options are severely limited due to cascading failures by Mercedes dealers.
5    Laguna Niguel Mercedes negligently performed the AEM installation in July
6    2022, causing catastrophic engine failure, then refused responsibility -
7    disqualifying them from Plaintiff's consideration. This leaves only FJMB
8    Newport Beach and Foothill Ranch Mercedes as viable options in South
9    Orange County, with similar travel times despite different distances. Plaintiff
10   chose FJMB based on size and reputation, established a service relationship
11   beginning January 2024, submitted extensive documentation, and has open
12   warranty claims there. Defendants' discrimination now effectively reduces
13   Plaintiff's options to a single dealer, causing particular harm given the
14   specialized nature of BlueTEC diesel service and AEM warranty
15   requirements. The ADA does not require Plaintiff to accept substitute dealers
16   after discrimination - just as racial discrimination is not acceptable merely
17   because another restaurant exists in town. Plaintiff will return to FJMB
18   immediately upon removal of discriminatory barriers. *Chapman v. Pier 1*
19   *Imports*, 631 F.3d 939 (9th Cir. 2011).
20  52a. **Systematic Denial Creating Limited Options**: Mercedes dealers have
21   systematically failed Plaintiff: First, Laguna Niguel destroyed Plaintiff's vehicle
22   through negligent AEM installation; then Fletcher Jones discriminated based on
23   disability. Plaintiff's reasonable dealer options reduced from three to one within 30-
24   minute driving distance. While other dealers exist in greater Los Angeles area, the
25   discrimination significantly limits Plaintiff's practical access to Mercedes service
26   given disability-related transportation challenges with service animal. The ADA
27   requires Fletcher Jones to provide equal access, not force Plaintiff to travel
28   excessive distances for basic vehicle service.

52b. **Injunctive Relief Sought**: Plaintiff seeks injunctive relief requiring FJMB to: (a) Remove all discriminatory barriers and restore full access to dealership services; (b) Provide reasonable accommodations including written documentation of all warranty and service decisions; (c) Train staff on ADA compliance and disability accommodation requirements; (d) Permit Plaintiff to obtain all services available to non-disabled customers; and (e) Comply with all provisions of 42 U.S.C. § 12182. Plaintiff further seeks attorneys' fees and costs as provided by 42 U.S.C. § 12188.

52c. **Cumulative Impact of Discrimination**: The discrimination is particularly harmful given Plaintiff's limited reasonable alternatives after Laguna Niguel's negligence. While other Mercedes dealers exist in the greater Los Angeles area, they require 45+ minute drives that are challenging with a heat-sensitive service animal and disability-related limitations. FJMB's discrimination forces Plaintiff to choose between accepting discrimination or traveling unreasonable distances for routine service - a choice the ADA prohibits.

**VIII. THIRD CAUSE OF ACTION**

**Fraudulent Concealment**

*(Against All Defendants)*

53. Plaintiff incorporates all preceding paragraphs. The following allegations satisfy Fed. R. Civ. P. 9(b) particularity requirements by identifying specific misrepresentations, speakers, dates, and contradictory evidence.

54. Defendants had exclusive knowledge of material facts including:

- o Borescope imaging results showing cylinder damage
- o Root cause analysis of emissions component failures
- o Engineering determination that AEM installation caused cascading failures
- o Vehicle's inability to comply with emissions standards
- o Safety risks from failed DPF and compromised engine

1  ○  **Critical**: Which entity (FJMB or MBUSA) actually possessed

2  diagnostic authority - both claimed the other had it, proving

3  coordinated concealment

4  55. **Contradictory Representations**: In EPA correspondence dated March 28,

5  2025, EPA reported Mercedes-Benz's position that "the vehicle is operating

6  normally and is ready to be picked up." Contemporaneously, FJMB's Invoice

7  #348310 documented catastrophic compression failure (21 bar - 28% below

8  specification). Whether this contradiction was FJMB misrepresenting to

9  MBUSA, or MBUSA misrepresenting to EPA, demonstrates systematic

10  concealment requiring discovery to determine which entity made false

11  statements.

12  56. Defendants had duty to disclose based on:

13  ○  Exclusive knowledge of material facts

14  ○  Active concealment through "inconclusive" labeling

15  ○  Partial disclosure creating duty to complete (invoice stating "BORE

16  SCOPE PICTURES PROVIDED" without interpretation)

17  ○  Safety implications of undisclosed defects

18  57. **Pattern of Concealment with Specific Misrepresentations**:

19  ○  **January 12, 2024**: Rob Draper confirmed warranty coverage for PCV

20  replacement (Invoice #281021) but refused to disclose root cause

21  when asked: "That's MBUSA's determination"

22  ○  **January 30, 2025**: Tom (Shop Foreman) stated engine replacement

23  would be for "performance increase" not warranty - concealing

24  warranty obligation

25  ○  **February 3, 2025**: Eric Smith stated "I don't need to get into details

26  with it" when directly asked about failure causes

27  ○  **February 4, 2025**: Eric Smith email claimed diagnostic information

28  "does not exist" while invoice shows borescope performed

- o **March 19, 2025**: Crafts Law Firm letter claimed vehicle "ready for pickup" while concealing $36,959.40 engine replacement recommendation
- o **March 28, 2025**: MBUSA told EPA vehicle "operating normally" while FJMB documented 21 bar compression failure
- o FJMB performed borescope but withheld engineering interpretation despite customer payment for diagnostic

58. Plaintiff justifiably relied on Defendants' partial disclosures and silence regarding safety/emissions compliance.

59. **Tolling Based on Concealment**: Any applicable limitations periods are tolled by Defendants' fraudulent concealment of material facts. Plaintiff could not have discovered the true cause of failures without the withheld diagnostic information. Discovery rule and equitable tolling apply. *Stutz Motor Car of America v. Reebok Int'l*, 909 F.Supp. 1353 (C.D. Cal. 1995).

60. Damages include repair costs, lost use, and diminished value exceeding $64,000.

## IX. FOURTH CAUSE OF ACTION

**Unjust Enrichment**

*(Against MBUSA) (Pled in the Alternative)*

61. Plaintiff incorporates all preceding paragraphs. This claim is pled in the alternative to contract-based warranty claims should the Court find no enforceable warranty exists.

62. **Benefits Conferred on MBUSA**:

- o Plaintiff's vehicle accepted for AEM modification July 2022
- o AEM increased MBUSA's emissions credits and regulatory compliance
- o Avoided EPA penalties through Plaintiff's participation
- o Settlement benefits taken without payment of $3,290 consideration

63. **MBUSA's Knowledge and Retention:**

- MBUSA knew settlement required $3,290 payment to Plaintiff
- Retained benefits of completed AEM for 37 months
- Refused warranty coverage while keeping compliance benefits
- Attempted to enforce settlement restrictions without payment

64. **Inequitable Retention:**

- MBUSA cannot retain AEM compliance benefits while refusing payment
- Cannot claim settlement protections after breaching payment obligation
- Unjust to keep regulatory benefits while forcing $36,959.40 repair costs on Plaintiff

65. No adequate remedy at law exists for ongoing retention of benefits. To the extent warranty remedies may be unavailable, equitable restitution is necessary to prevent unjust enrichment. Fed. R. Civ. P. 8(d)(3) permits alternative and inconsistent claims.

66. Restitution and disgorgement appropriate including:

- Value of emissions credits obtained
- Regulatory compliance benefits
- Unpaid settlement amount
- Interest and penalties

## X. FIFTH CAUSE OF ACTION

### Violation of California Consumer Legal Remedies Act

*(Cal. Civ. Code § 1750 et seq.) (Against FJMB Only)*

67. Plaintiff incorporates all preceding paragraphs.

68. The vehicle and services constitute "goods" and "services" under the CLRA.

69. Defendant FJMB violated Cal. Civ. Code § 1770 by:

- (a)(5): Representing goods have characteristics they do not have (emissions compliance)
- (a)(7): Representing goods are of particular quality when they are not (safe for operation)
- (a)(14): Representing transaction confers rights it does not (warranty coverage authority)
- (a)(16): Representing services have been performed when they have not (complete diagnostics)

70. **Specific Misrepresentations by FJMB and Its Counsel**:
- March 19, 2025 (Crafts Law Firm): Borescope results described as "inclusive" when FJMB's own records state "inconclusive"
- Vehicle declared "ready for pickup" while concealing 21 bar compression failure
- Claiming warranty determination authority without required MBUSA engineering review
- Falsely alleging Plaintiff "refused" oil consumption test after documented cooperation
- Threatening lien sale despite waived fees and unresolved warranty dispute

71. **Agency Liability**: Crafts Law Firm's misrepresentations were made as authorized agent of FJMB in furtherance of FJMB's business purposes. Communications from counsel regarding vehicle condition and warranty coverage constitute representations by FJMB for CLRA purposes. Under respondeat superior and California agency law, FJMB is liable for its counsel's false statements made within the scope of representation. See *Kimmel v. Goland*, 51 Cal.3d 202 (1990); *Salazar v. Interinsurance Exchange*, 148 Cal.App.4th 53 (2007) (statements by authorized agents attributable to principal).

72. **CLRA Notice and Cure Period Expired**: Served on FJMB through counsel (Crafts Law Firm) April 25, 2025 via certified mail and email. The 30-day cure period expired May 25, 2025, without correction. FJMB's continued refusal to remedy violations demonstrates willfulness. MBUSA has not been served with CLRA notice and is not a defendant to this cause of action.

73. Plaintiff is entitled to:

- o Actual damages
- o Punitive damages for willful violations
- o Attorneys' fees and costs

## XI. RESERVATION OF RIGHT TO AMEND

74. **Additional Claims Ready for Amendment**: Plaintiff expressly reserves the right to amend this Complaint to add additional causes of action, including:

- o **Clean Air Act violations** (42 U.S.C. § 7604) - 60-day notice delivered August 19, 2025; amendment available October 18, 2025
- o **CLRA claims against MBUSA** upon proper service of § 1782(a) notice
- o **Breach of express and implied warranty** as specific provisions are documented
- o **Conversion** for 214+ day vehicle detention exceeding any lawful basis
- o **Pattern and practice claims** if discovery reveals systematic enterprise-wide fraud
- o **Unfair Competition Law** (Cal. Bus. & Prof. Code § 17200) based on unlawful business practices
- o **Federal conspiracy claims** if coordinated conduct between multiple parties is established
- o Any other federal or state claims supported by evidence obtained in discovery

75. **Strategic Timing**: The Clean Air Act claim becomes available upon expiration of the 60-day statutory notice period on October 18, 2025. This claim will be added via amendment if matter remains unresolved.

76. **Discovery Necessity**: Plaintiff requires limited discovery to obtain:
    - FJMB's service records for other post-AEM DPF replacements from 2022-2025
    - Internal communications between FJMB and MBUSA regarding AEM warranty coverage decisions
    - Technical bulletins not publicly available regarding compression failures post-AEM Such discovery is necessary to establish whether Defendants' refusal to disclose root cause analysis represents standard practice or isolated conduct.

## XII. DAMAGES

77. **Economic Damages**:
    - Engine replacement: $36,959.40
    - Lost use (214+ days): $21,400.00
    - Expert repairs: $2,800.00
    - Unpaid settlement: $3,290.00
    - **Total**: $64,449.40+

78. **Song-Beverly Act penalties for willful violation**

79. **Non-Economic Damages**:
    - Isolation from family activities
    - Degraded mental health support
    - Service animal transportation loss
    - 214+ days vehicle detention

80. **Statutory damages available under MMWA, ADA, and CLRA**

## XIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.  **Actual damages exceeding $64,449**

2.  **Song-Beverly Act penalties for willful violation**

3.  **Injunctive relief under ADA requiring reasonable accommodations**

4.  **Costs and attorney fees under MMWA, ADA, and CLRA**

5.  **Punitive damages for fraudulent concealment and CLRA violations**

6.  **Leave to amend to add Clean Air Act and other claims**

7.  **Limited expedited discovery regarding**:
    - Other post-AEM failures in similar vehicles
    - Internal warranty coverage guidelines
    - Communications with EPA regarding AEM compliance
    - Limited to 10 document requests and 2 depositions prior to class certification determination

8.  **Other relief deemed just and proper**

**JURY DEMAND**: Plaintiff demands jury trial on all triable issues.

Dated: _29 AUG 2025_

_[signature]_

BRIAN CONWAY

Plaintiff Pro Se

27662 Aliso Creek Rd #10111

Aliso Viejo, CA 92656

Phone: (949) 828-7995

Email: beiwulf1976@gmail.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **CONSENT DECREE** |
| ) | |
| DAIMLER AG and ) | |
| MERCEDES-BENZ USA, LLC, ) | |
| ) | Civil Action Nos.:  1:20-cv-2564 |
| Defendants. ) | 1:20-cv-2565 |
| _____ ) | |
| ) | |
| PEOPLE OF THE STATE OF ) | |
| CALIFORNIA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DAIMLER AG and ) | |
| MERCEDES-BENZ USA, LLC, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**EXHIBIT A**
**Consent Decree - U.S. v Daimler AG, MBUSA**
**(D.D.C. Case No. 1:20-cv-02520, Finalized March 2021**

Case 8:25-cv-01949-DOC-KES    Document 1-1    Filed 08/29/25    Page 27 of 211    Page ID
#:27
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 2 of 148

TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ............................................................................... 4
II.     APPLICABILITY ................................................................................................... 5
III.    DEFINITIONS ........................................................................................................ 6
IV.     CIVIL PENALTY ................................................................................................. 23
V.      APPROVAL OF SUBMISSIONS; U.S./EPA/CARB DECISION-MAKING .......... 25
VI.     SUBJECT VEHICLE COMPLIANCE ................................................................. 28
VII.    CORPORATE COMPLIANCE ............................................................................ 41
VIII.   MITIGATION ....................................................................................................... 73
IX.     REPORTING REQUIREMENTS ......................................................................... 77
X.      STIPULATED PENALTIES ................................................................................. 86
XI.     FORCE MAJEURE ............................................................................................ 115
XII.    DISPUTE RESOLUTION .................................................................................. 117
XIII.   INFORMATION COLLECTION AND RETENTION........................................... 121
XIV.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS................................ 124
XV.     COSTS ............................................................................................................... 128
XVI.    NOTICES ........................................................................................................... 128
XVII.   EFFECTIVE DATE ............................................................................................ 132
XVIII.  RETENTION OF JURISDICTION ..................................................................... 133
XIX.    MODIFICATION................................................................................................ 133
XX.     TERMINATION.................................................................................................. 134
XXI.    PUBLIC PARTICIPATION................................................................................. 135
XXII.   SIGNATORIES/SERVICE ................................................................................. 135
XXIII.  INTEGRATION.................................................................................................. 136
XXIV.   26 U.S.C. § 162(F)(2)(A)(II) IDENTIFICATION ............................................... 137
XXV.    FINAL JUDGMENT .......................................................................................... 137
XXVI.   HEADINGS ........................................................................................................ 137
XXVII.  APPENDICES .................................................................................................... 137

Case 8:25-cv-01949-DOC-KES    Document 1-1    Filed 08/29/25    Page 28 of 211    Page ID
#:28
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 3 of 148

WHEREAS, Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), is, concurrent with the lodging of this Consent Decree, filing a complaint in this action ("U.S. Complaint"), against Daimler AG and Mercedes-Benz USA, LLC (collectively, "Defendants"), alleging that Defendants violated Sections 203(a)(1), (a)(2)(A), (a)(3)(A), and (a)(3)(B) of the Clean Air Act (the "Act"), 42 U.S.C. §§ 7522(a)(1), (a)(2)(A), (a)(3)(A), and (a)(3)(B), with regard to about 250,000 Model Year ("MY") 2009 to 2016 BlueTEC II diesel vehicles (collectively, "Subject Vehicles").

WHEREAS, the U.S. Complaint alleges that each Subject Vehicle contains, as part of the electronic control unit ("ECU"), certain software functions and calibrations that cause the emission control system of those vehicles to perform differently during normal vehicle operation and use than during emissions testing. The U.S. Complaint alleges that these software functions and calibrations are undisclosed "Auxiliary Emission Control Devices" ("AECDs") in violation of the Act and that some of these software functions and calibrations are also prohibited Defeat Devices under the Act. The U.S. Complaint also alleges that during normal vehicle operation and use, the Subject Vehicles emit increased levels of oxides of nitrogen ("$NO_x$"). The U.S. Complaint alleges and asserts claims for relief related to the presence of the undisclosed AECDs and Defeat Devices in the Subject Vehicles.

WHEREAS, Plaintiff the People of the State of California, acting by and through Xavier Becerra, Attorney General of the State of California ("the California Attorney General"), and the California Air Resources Board ("CARB"), are concurrently with the lodging of this Consent Decree filing a complaint in this action (the "California Complaint"), against Defendants. In the California Complaint, CARB alleges that Defendants violated certain provisions of California law, including without limitation California Health and Safety Code sections 43016, 43106,

1

Case 8:25-cv-01949-DOC-KES    Document 1-1    Filed 08/29/25    Page 29 of 211    Page ID
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 4 of 148
#:29

43151, 43152, 43153, 43205, 43211, and 43212; 13 C.C.R. §§ 1961, 1961.2, 1965, 1968.2, and 2037; and 42 U.S.C. § 7604 and 40 C.F.R. § 54.3 with regard to 36,946 Model Year 2009 to 2016 BlueTEC II diesel vehicles (a subset of "Subject Vehicles"). For his part, the California Attorney General alleges that Defendants, through their violation of the sections of California Health and Safety Code and Code of Regulations pled by CARB, engaged in unlawful business acts or practices, within the meaning of California Business and Professions Code § 17200 et seq.

WHEREAS, the California Complaint alleges, among other things, that the Subject Vehicles contain undisclosed AECDs and prohibited Defeat Devices, as well as several unreported, unapproved running changes and field fixes, that have resulted in, and continue to result in, increased $NO_x$ emissions from each Subject Vehicle significantly in excess of California limits.

WHEREAS, Defendants deny the allegations in the Complaints and do not admit any liability to the United States, California, or otherwise arising out of or in connection with the allegations in the Complaints.

WHEREAS, in 2017 and 2018, EPA and CARB certified that the configuration of software and calibrations installed in the 6-cylinder Sprinters for MYs 2017 and 2018, respectively, complied with the requirements of the Clean Air Act and, as to CARB, also with California law.

WHEREAS, Defendants will update the configuration of software and calibrations in the Eligible Vehicles in Emission Modification Categories 1 and 2 with the MY17/18 Sprinter certified configuration, and will make certain changes in the hardware, as listed in Appendix B,

Case 8:25-cv-01949-DOC-KES    Document 1-1    Filed 08/29/25    Page 30 of 211    Page ID
#:30
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 5 of 148

Attachment I, to each Eligible Vehicle in Emission Modification Categories 1 and 2, consistent with the MY17/18 Sprinters.

WHEREAS, Defendants will update the configuration of hardware, software, and calibrations in the Eligible Vehicles in Emission Modification Category 9 (4-cylinder GLK 250s) as listed in Appendix B, Attachment I. The Defendants made these updates on an Emission Test Vehicle for Emission Modification Category 9, and conducted testing prior to lodging this Consent Decree in accordance with an agreed-upon protocol with EPA/CARB, as set forth in Appendix B.

WHEREAS, Defendants will update the configuration of hardware, software, and calibrations in the Eligible Vehicles in the other Emission Modification Categories as listed in Appendix B, Attachment I.

WHEREAS, based upon the results of the aforementioned testing of Emission Modification Category 9 and the accompanying Updated AECD Document, and based upon required testing pursuant to this Consent Decree for the other Emission Modification Categories, EPA/CARB consider the updates to the Eligible Vehicles set forth in this Consent Decree, together with the other terms set forth in this Consent Decree, to be an appropriate remedy for, and to resolve in full, the allegations in the U.S. and California Complaints, as set forth in Section XIV below.

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that the United States and CARB are not issuing new Certificates of Conformity or Executive Orders, respectively, for the Subject Vehicles, nor are they revoking the existing Certificates of Conformity or Executive Orders for the Subject Vehicles.

Case 8:25-cv-01949-DOC-KES    Document 1-1    Filed 08/29/25    Page 31 of 211    Page ID
#:31
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 6 of 148

WHEREAS, this Consent Decree is being filed during the COVID-19 pandemic, and all Parties are mindful of the health and safety of the public and of their respective employees, and cognizant of potential and uncertain impacts on work due to travel and social distancing restrictions implemented to limit the spread of COVID-19 during the pandemic, and take these important considerations into account, as described in Paragraph 65 of this Consent Decree.

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties regarding the claims alleged in the Complaints, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 203, 204, and 205 of the Act, 42 U.S.C. §§ 7522, 7523, and 7524, and over the Parties. Venue lies in this District pursuant to 28 U.S.C. § 1391 (b), (c). The Court has supplemental jurisdiction over the California State law claims pursuant to 28 U.S.C. § 1367. For purposes of this Consent Decree, or in any action to enforce this Consent Decree, the Parties agree to and Defendants consent to this Court's jurisdiction over this Consent Decree and over any action to enforce this Consent Decree, and over Defendants, and consent to venue in this judicial district. Defendants reserve the right to challenge and oppose any claims to jurisdiction that do not arise from the Court's jurisdiction over this Consent Decree or an action to enforce this Consent Decree.

Case 8:25-cv-01949-DOC-KES   Document 1-1   Filed 08/29/25   Page 32 of 311   Page ID
#:32
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 7 of 148

2.      For purposes of this Consent Decree only, Defendants agree that the U.S.
Complaint states claims upon which relief may be granted pursuant to Sections 203, 204, and
205 of the Act, 42 U.S.C. §§ 7522, 7523, and 7524, and that the California Complaint states
claims upon which relief may be granted pursuant to California Health and Safety Code sections
43016, 43106, 43151, 43152, 43153, 43205, 43211, and 43212; California Business and
Professions Code § 17200 et seq.; 13 C.C.R. §§ 1961, 1961.2, 1965, 1968.2, and 2037; and 42
U.S.C. § 7604 and 40 C.F.R. § 54.3.

## II.      APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United
States and California, and upon Defendants and any successors, assigns, or other entities or
persons otherwise bound by law.

4.      No transfer of ownership or operation, whether in compliance with the procedures
of this Paragraph or otherwise, shall relieve Defendants of their obligation to ensure that the
terms of this Consent Decree are implemented.  At least 30 Days prior to such transfer,
Defendants shall provide a copy of this Consent Decree to the proposed transferee and shall
simultaneously provide written notice of the prospective transfer, together with a copy of the
proposed written agreement, to the United States and CARB, in accordance with Section XVI
(Notices). Notwithstanding the foregoing, the provisions of this Paragraph do not apply to a
transfer of ownership or operations between or among Daimler group companies.

5.      Defendants shall provide a copy of this Consent Decree to the members of their
respective Board of Management and/or Board of Directors and to their officers and executives
whose duties might reasonably include compliance with, or oversight over compliance with, any
provision of this Consent Decree. Defendants shall also ensure that any contractors retained to

Case 8:25-cv-01949-DOC-KES    Document 1-1    Filed 08/29/25    Page 33 of 211    Page ID
#:33
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 8 of 148

perform work required under the material terms of this Consent Decree, agents, or employees whose duties might reasonably include compliance with any provision of this Consent Decree are made aware of those requirements relevant to their performance. Defendants shall undertake reasonable best efforts to condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of their respective officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree, except in accordance with the provisions of Section XI (Force Majeure), below.

### III.    DEFINITIONS

7.      Capitalized terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Consent Decree. Likewise, where context-appropriate, capitalized terms that are defined in the California Health and Safety Code or in CARB regulations promulgated pursuant to the California Health and Safety Code shall have the meanings assigned to them in the California Health and Safety Code or such regulations, unless otherwise provided in this Consent Decree. Capitalized terms that are defined in this Consent Decree are defined for purposes of this Consent Decree only and are not defined or applicable for any other purpose. Whenever the capitalized terms set forth below are used in this Consent Decree, the following definitions shall apply:

> "20° F FTP" means the FTP conducted at 20° Fahrenheit, as specified in 40 C.F.R. Part 1066, Subpart H.

> "Aftertreatment System" or "ATS," for purposes of Section XI (Force Majeure) and Appendix B, Paragraph 1.e only, means the exhaust system consisting of the diesel oxidation catalyst (DOC), diesel particulate filter (DPF), SCR catalyst,

exhaust temperature sensors, the PM Sensor (where equipped), one $NO_x$ Sensor upstream from the SCR catalyst, and one $NO_x$ Sensor downstream from the SCR catalyst.

"Air Pollution Control Fund" means the fund established by California Health and Safety Code section 43015.

"Approved Emission Modification" means an emission modification submitted by Defendants pursuant to Appendix B, Paragraph 4 and approved by EPA/CARB pursuant to Appendix B, Paragraph 5.a.

"Audit Plan" means the annual plan in which the PSAT will identify topics for internal audit.

"Audit Report" means the report produced by the PSAT after the completion of the audit year, *i.e.*, after completion of the final audit in a series of audits within a designated year.

"Audit Committee of the Supervisory Board" means the committee consisting of four Supervisory Board members elected by a majority vote, which, among other duties, oversees Corporate Audit and external auditors.

"Auxiliary Emission Control Device" or "AECD" has the meaning set forth in 40 C.F.R. § 86.1803-01.

"Bench-aged" means aging that is conducted pursuant to Appendix B, Paragraph 1.e.i.

"Board of Management" or "BoM" means the managerial board of Daimler AG, which is responsible for directing, coordinating, and controlling business activities in accordance with the goals it defines for Daimler in the best interests of the Company.

"Business Day" means a calendar day that does not fall on a Saturday, Sunday, or federal or California holiday. In computing any period of time under this Consent Decree, where the last Day would fall on a Saturday, Sunday, or federal or California holiday, the period shall run until the close of business of the next Business Day.

"Business Partner Integrity Management" means Daimler's program regarding business partner integrity and compliance.

"Business Practices Office" or "BPO" means Daimler's central whistleblower system.

"Buyback," for purposes of Appendix A, Paragraph 18.j only, means the return of an Eligible Vehicle by an Eligible Owner to Defendants, in exchange for a payment that equals or exceeds the National Automobile Dealers Association ("NADA") Clean Retail value of the Eligible Vehicle (adjusted for options, mileage, and NADA region in accordance with the then-current NADA guide) as of January 1, 2020.

Case 8:25-cv-01949-DOC-KES    Document 2-1    Filed 09/29/25    Page 35 of 211    Page ID
#:35
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 10 of 148

"CA AG" means the California Attorney General's Office and any of its successor departments or agencies.

"CALID" means calibration identification for the software installed on any ECU as part of the Approved Emission Modification.

"California" or "CA" means the People of the State of California, acting by and through the California Air Resources Board, and where it is used to refer to specific statutes or regulations only, it means the State of California.

"California Attorney General" means the California Attorney General's Office and any of its successor departments or agencies.

"California Complaint" means the complaint filed by California in this action.

"California Passenger Vehicle EMP Rate" means the 85 percent rate for Passenger Vehicles in California specified in Appendix A, Paragraph 4.

"California Sprinter EMP Rate" means the 85 percent rate for Sprinters in California specified in Appendix A, Paragraph 4.

"CARB" means the California Air Resources Board and any of its successor departments or agencies.

"CBP" means the United States Customs and Border Protection and any of its successor departments or agencies.

"CDCS" means Consolidated Debt Collection System.

"CDX" means Central Data Exchange, the EPA's electronic reporting site which can be found at https://cdx.epa.gov/epa_home.asp.

"Central Powertrain Controller" or "CPC" means the electronic hardware device, together with the software and calibrations installed on the device, that links other control units, such as the ECU and TCU, to the rest of the vehicle and, in conjunction with other control units, controls the vehicle powertrain.

"Certificate of Conformity" means the document that EPA issues to a vehicle manufacturer to certify that a vehicle class conforms to EPA requirements.

"Class 1 Additional OBD Noncompliance" means the OBD Noncompliances described in Paragraph 53.c.ii.A.

"Class 2 Additional OBD Noncompliance" means the OBD Noncompliances described in Paragraph 53.c.ii.B.

"Class Action Settlement" means a consumer class action settlement agreement and release filed in *In re Mercedes-Benz Emissions Litig.*, 2:16-cv-00881 (D.N.J.), by attorneys representing owners and lessees of Subject Vehicles. If a court issues an order granting final approval of a proposed consumer class action settlement agreement and release in *In re Mercedes-Benz Emissions Litig.*, 2:16-

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 36 of 211   Page ID
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 11 of 148
#:36

cv-00881 (D.N.J.), "Class Action Settlement" means that agreement as and in the form it is ultimately approved and entered by the court.

"Clean Air Act" or "Act" means 42 U.S.C. §§ 7401–7671q.

"Clearing Case" means a question or topic submitted into and resolved through the cross-functional decision-making process.

"CO" means carbon monoxide.

"$CO_2$" means carbon dioxide.

"Combined Uphill/Downhill and Highway Route" means the driving route shown and described in Appendix B, Attachment D.

"Committee for Legal Affairs of the Daimler AG Supervisory Board" or "Committee for Legal Affairs" means the special committee of the Daimler AG Supervisory Board, which will direct and supervise the PSAT and retain the ECC.

"Complaints" means the U.S. Complaint and the California Complaint.

"Compliance Awareness Modules" or "CAM" means the integrity and compliance awareness modules provided to Daimler business partners.

"Compliance Board" means the committee led by the Chief Compliance Officer and comprising of the responsible individual for each compliance field as well as the responsible individual for Compliance Management Systems & Processes and Legal Digital Transformation Strategy, which governs Daimler's compliance strategy and steers and harmonizes overarching compliance activities.

"Compliance Management System" or "CMS" means Daimler's overall compliance management system.

"Confidential Business Information" or "CBI" means information protected under 40 C.F.R. Part 2 and/or comparable California law, including California Government Code § 6254(k) and 17 C.C.R. §§ 91000 et seq.

"Consent Decree" or "Decree" means this Consent Decree and all Appendices and Attachments attached hereto.

"Consumer Emission Modification Disclosure" means the disclosure to all affected Eligible Owners and Eligible Lessees required pursuant to Appendix A, Paragraph 15.

"Cooling Phase" means the period of operation in which the ATS is returned to normal operating temperature and shall last for at least the number of seconds specified in the Updated AECD Document for Emission Modification Category 9.

"Corporate Audit" means the independent and objective Company-wide assurance function of Daimler and its affiliates.

"Curb Weight" has the meaning set forth in 40 C.F.R. § 86.1803-01.

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 37 of 211    Page ID
#:37
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 12 of 148

"CVN" means calibration verification number for the software installed on any ECU as part of the Approved Emission Modification.

"Date of Lodging" means the date this Consent Decree is filed for lodging with the Court.

"Day" means a calendar day, unless expressly stated to be a Business Day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or California holiday, the period shall run until the close of business of the next Business Day.

"Dealer" means any entity authorized by MBUSA or DVUSA, subject to a written dealer agreement, to sell and/or service Subject Vehicles in the United States.

"Dealer Emission Modification Disclosure" means the disclosure to all Dealers required pursuant to Appendix A, Paragraph 17.

"Defeat Device" has the meaning provided under 40 C.F.R. § 86.1803-01 and 42 U.S.C. § 7522(a)(3)(B).

"Defendants" means the entities named in the U.S. Complaint and California Complaint, specifically, Daimler AG and Mercedes-Benz USA, LLC.

"Deterioration Factor" or "DF" means the number, determined pursuant to 40 C.F.R. § 86.1823-08, that represents the change in emissions performance during a vehicle's Full Useful Life.

"Diesel Exhaust Fluid" or "DEF" means a liquid reducing agent used in conjunction with selective catalytic reduction to reduce $NO_x$ emissions. DEF is generally understood to be an aqueous solution of urea conforming to the specification of ISO 22241.

"Diesel Oxidation Catalyst System" or "DOC System" means all hardware, components, parts, sensors, subassemblies, software, AECDs, calibrations, and other elements of design that collectively constitute the system for, among other things, controlling emissions of carbon monoxide and hydrocarbons, together with other pollutants, through a chemical reaction accelerated by an oxidation catalyst.

"Diesel Particulate Filter System" or "DPF System" means all hardware, components, parts, sensors, subassemblies, software, AECDs, calibrations, and other elements of design that collectively constitute the system for, among other things, controlling emissions of particulate matter by trapping such particulates in a filter and periodically oxidizing them through thermal regeneration of the filter.

"Dosing Control Unit" or "DCU" means the electronic hardware device, together with the software and calibrations installed on the device, that controls, among other things, the operation of the DEF dosing system in the Subject Vehicles.

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 38 of 211   Page ID
#:38
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 13 of 148

"DPF Regeneration Event" means an event triggered by the ECU that increases exhaust temperature for a limited time period to oxidize particulate matter collected on and within the diesel particulate filter.

"Drivability" means the combination of agile and smooth delivery of power, as demanded by the driver or operator.

"DVUSA" means Daimler Vans USA, LLC.

"E1" means executive level employee directly reporting to a BoM member.

"E2" means senior manager-level employee.

"E3" means manager-level employee, senior to E4.

"E4" means manager-level employee.

"Effective Date" or "Date of Entry" means the date upon which this Consent Decree is entered by the Court or a motion to enter this Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

"Effectiveness Evaluation" means the annual process by which Daimler evaluates the effectiveness of the various aspects of its compliance management systems.

"Eligible Lessee" means (1) the current lessee or lessees of an Eligible Vehicle with an active lease as of the date the Eligible Vehicle receives the Approved Emission Modification; or (2) solely for purposes of any applicable Extended Modification Warranty, the subsequent lessee or lessees of an Eligible Vehicle that has received the Approved Emission Modification.

"Eligible Owner" means the (1) owner or owners of an Eligible Vehicle on the day that the Eligible Vehicle receives or is eligible to receive the Approved Emission Modification or (2) solely for purposes of any applicable Extended Modification Warranty, the subsequent owner or owners of an Eligible Vehicle that has received the Approved Emission Modification.

"Eligible Vehicle" means any vehicle in an Emission Modification Category identified in Appendix B, Attachment I that is (1) registered with a state Department of Motor Vehicles or equivalent agency or held by a Dealer or unaffiliated dealer and located in the United States or its territories; and (2) Operable as of the date the vehicle is brought in for the Approved Emission Modification.

"Emission Control System" has the meaning set forth at 40 C.F.R. § 86.1803-01, and at "California 2001 through 2014 Model Criteria Pollutant Exhaust Emission Standards and Test Procedures and 2009 through 2016 Model Greenhouse Gas Exhaust Emission Standards and Test Procedures for Passenger Cars, Light-Duty Trucks, and Medium-Duty Vehicles," Part I: C.3.3.2 and "California 2015 and Subsequent Model Criteria Pollutant Exhaust Emission Standards and Test Procedures and 2017 and Subsequent Model Greenhouse Gas Exhaust Emission Standards and Test Procedures for Passenger Cars, Light-Duty Trucks, and

Case 8:25-cv-01949-DOC-KES   Document 1-1   Filed 08/29/25   Page 39 of 211   Page ID
#:39
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 14 of 148

Medium-Duty Vehicles," Part I: C.3.3.2, the latter two of which are incorporated by reference in 13 C.C.R. §§ 1961 & 1961(d).

"Emission Control System Extended Modification Warranty" means the warranty provided in Appendix A, Paragraph 18.a.

"Emission-Related" means, for the purpose of Section VII (Corporate Compliance), hardware that is included on the Emission-Related Parts List described in Section VII, Paragraph 30.h.ii or ECU, TCU, DCU, or CPC software or software calibrations.

"Emission Modification Category" means one of the 12 categories of Models and Model Years as identified in the sixth column of Appendix B, Attachment I.

"Emission Modification Configuration" means the update(s) to the Subject Vehicles in an Emission Modification Category, pursuant to the process outlined in Appendix B.

"Emission Modification Database" means a searchable database that Defendants make available online for a minimum of ten years, by which users may conduct a free-of-charge search by vehicle VIN to determine the information required pursuant to Appendix A, Paragraphs 16.c and 16.d.

"Emission Modification Proposal Report" means the report specified in Appendix B, Paragraph 4.a.

"Emission Modification Program" means the program specified in Appendix A, Paragraph 1.

"Emission Standard" means the FUL emission standard specified in the fourth column of Appendix B, Attachment I for the given row. If EPA/CARB approve a proposed Emission Modification Configuration that meets the Emission Standard First Threshold or Emission Standard Upper Threshold, then where this Consent Decree, Test Protocol and other Appendices and Attachments use the term, "Emission Standard," that term shall be replaced with Emission Standard First Threshold or Emission Standard Upper Threshold, as relevant for the AEM for that Emission Modification Category.

"Emission Standard First Threshold" means the FUL emission standard, as follows: Emission Modification Categories 4–8 and 11–12: Tier 2, Bin 6, as set forth in 40 C.F.R. § 86.1811-04(c)(6), Tier 2, LDT4, as set forth in 40 C.F.R. § 86.1811-04(f), Highway NO$_x$ exhaust emission standard, as set forth in 40 C.F.R. § 86.1811-04(j), and LEV II ULEV, as set forth in 13 C.C.R. § 1961.

"Emission Standard Upper Threshold" means the FUL emission standard, as follows:

(1)    Emission Modification Categories 4–8 and 11–12: Tier 2, Bin 7, as set forth in 40 C.F.R. § 86.1811-04(c)(6), Tier 2, LDT4, as set forth in 40 C.F.R. § 86.1811-04(f), Highway NO$_x$ exhaust emission standard, as

Case 8:25-cv-01949-DOC-KES   Document 2-1   Filed 08/29/25   Page 40 of 211   Page ID
#:40
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 15 of 148

set forth in 40 C.F.R. § 86.1811-04(j), and LEV II ULEV, as set forth in 13 C.C.R. § 1961.

(2)   Emission Modification Category 10: Tier 3, Bin 160, as set forth in 40 C.F.R. § 86.1811-17(b), Highway $NO_x$ exhaust emission standard, as set forth in 40 C.F.R. § 86.1811-17(c), and LEV III LEV 160, as set forth in 13 C.C.R. § 1961.2.

"Emission Plus Test Vehicles" or "EPTV" means the Test Vehicles listed in Appendix B, Attachment A, Table 1.

"Emission Plus Test Vehicle 1" or "EPTV 1" means the Emission Plus Test Vehicle tested for the emission, special cycle, and PEMS tests pursuant to Appendix B, Paragraph 2.b.

"Emission Plus Test Vehicle 2" or "EPTV 2" means the Emission Plus Test Vehicle tested for the A-to-B fuel economy testing pursuant to Appendix B, Paragraph 2.c.i, and the A-to-B NVH and A-to-B Drivability testing pursuant to Appendix B, Paragraphs 2.c.ii and 2.c.iii, unless a third vehicle, Emission Plus Test Vehicle 3, is tested for the A-to-B NVH and A-to-B Drivability testing.

"Emission Plus Test Vehicle 3" or "EPTV 3" means an additional Emission Plus Test Vehicle that may be tested for the A-to-B NVH and the A-to-B Drivability testing pursuant to Appendix B, Paragraphs 2.c.ii and 2.c.iii.

"Engine Control Unit" or "ECU" means an electronic hardware device, together with the software and calibrations installed on the device, that controls, among other things, the operation of the Emission Control System in the Subject Vehicles.

"Engineering Practices Board" or "EPB" means the committee consisting of mainly E1-level representatives from IL/P, R&D, Certification, tCMS R&D, Communications, and External Affairs which considers issues escalated from the TCC.

"EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies.

"EPA/CARB" means EPA and CARB jointly, or EPA or CARB, as applicable.

"ETK" means a development tool that includes the functions of an ECU and is an abbreviation for "Emulator Tast Kopf."

"Exhaust Gas Recirculation System" or "EGR System" means all hardware, components, parts, sensors, subassemblies software, AECDs, calibrations, and other elements of design that collectively constitute the system for recirculating gas from the engine's exhaust manifold into the pipe in front of the intake manifold of the engine.

"Executive Order" means an order issued by CARB to certify a particular MY test group in combination with one or more evaporative families that meets CARB

13

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 41 of 211   Page ID
#:41
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 16 of 148

regulatory requirements for importation into and entry into commerce in California.

"Extended Modification Warranty" means the extended warranty specified in Appendix A, Paragraph 18.

"Extended Warranty Period" means the warranty period defined at Appendix A, Paragraph 18.b.

"External Compliance Consultant" or "ECC" means the external individual retained by the Committee for Legal Affairs to advise and assist the Committee for Legal Affairs as it directs and supervises the PSAT.

"Flat File" means a comprehensive file that consists of a series of rows of test records organized in columns of test parameters or variables from dynamometer or portable emission measurement system (PEMS) tests. The unique records are identified in a tabular format by test vehicle, test ID, test type (for dynamometer) or route (for PEMS), and phase number (for dynamometer) or route segment (for PEMS). The tabular file is to be provided in Excel format.

"FLU" means the Financial Litigation Unit of the United States Attorney's Office.

"FTP 72" or "Urban Dynamometer Driving Schedule" or "UDDS" means the drive cycle set forth at 40 C.F.R. Part 86, Appendix I (Dynamometer Schedules).

"FTP 72 Prep Cycle" means a single FTP 72 drive cycle.

"Federal Test Procedure" or "FTP75" means the emission test cycle described in 40 C.F.R. § 86.135-12 and the procedures set forth at 40 C.F.R. §§ 1066.810–1066.820.

"Full Useful Life" or "FUL" has the meaning set forth in 40 C.F.R. § 86.1805-12.

"Functional Group Leader" means an experienced engineer with expertise regarding certain functions who serves as an expert contact for questions, assists with data checks, and confirms compliance of functionalities.

"Gross Vehicle Weight" or "GVW" has the meaning set forth in 40 C.F.R. § 86.1803-01.

"Gross Vehicle Weight Rating" or "GVWR" has the meaning set forth in 40 C.F.R. § 86.1803-01.

"Group Risk Management Committee" or "GRMC" means the committee which evaluates risk to Daimler. The GRMC consists of representatives from the Accounting & Financial Reporting, Legal, Compliance, Legal Product & Technical Compliance, Corporate & Data Security departments, and CFOs of Mercedes-Benz AG, Daimler Truck AG, and Daimler Mobility AG. It is chaired by the BoM Member for Finance & Controlling and the BoM Member for Integrity and Legal Affairs of Daimler AG. Corporate Audit participates in the

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 42 of 211    Page ID
#:42
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 17 of 148

GRMC and delivers material findings on the Internal Control and Risk Management System.

"Heavy Duty Vehicle" or "HDV" has the meaning set forth in 40 C.F.R. § 86.1803-01.

"Highway Fuel Economy Test" or "HWFET" means the emission test cycle described in 40 C.F.R. § 600.109-08(b) and Appendix I (Highway Fuel Economy Driving Schedule) to Part 600 and the procedure described in 40 C.F.R. § 1066.840.

"Hydraulic Control Unit" or "HCU" means the electronic and hydraulic hardware device which consists of the hydraulic switch plate, the Transmission Control Unit, and the electromagnetic valves to control, among other things, the hydraulic pressure for the operation of the transmission in the Subject Vehicles.

"Include" and "Including," as used in this Consent Decree and accompanying Appendices and Attachments, are not limiting terms.

"Infopoint Integrity" means the central hotline accessible Company-wide to all employees, serving as a point of contact for all integrity issues, including questions on technical compliance.

"Infrequent Regeneration Adjustment Factor" or "IRAF" means the additive or upward adjustment factor for each pollutant used to account for increased emissions caused by periodic regeneration of any aftertreatment device. The increased emissions caused by such events are accounted for by adjustment factors, or IRAFs, for the pollutants NMOG, $NO_x$, CO, and PM, as applicable.

"Inspection and Maintenance Mandatory Recall Noncompliance" means the OBD Noncompliances described in Paragraph 53.c.v.

"Integrity and Legal Affairs" or "IL" mean overarching BoM responsibility for legal, integrity, and compliance.

"In-Use Group 1" means, for the purpose of in-use testing pursuant to Paragraph 19.b, Emission Modification Category 1.

"In-Use Group 2" means, for the purpose of in-use testing pursuant to Paragraph 19.b, Emission Modification Categories 9, 10, 11, and 12.

"In-Use Group 3" means, for the purpose of in-use testing pursuant to Paragraph 19.b, Emission Modification Category 3.

"In-Use Group 4" means, for the purpose of in-use testing pursuant to Paragraph 19.b, Emission Modification Categories 4 and 5.

"In-Use Group 5" means, for the purpose of in-use testing pursuant to Paragraph 19.b, Emission Modification Categories 7 and 8.

"IT" means information technology.

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 43 of 211   Page ID
#:43
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 18 of 148

"IUCP" means the in-use confirmatory test plan described in Paragraph 19.b.

"IUCP Vehicles" means vehicles that meet the requirements of Paragraph 19.b.iii.

"IUVT Vehicles" means vehicles that meet the requirements of Paragraph 19.b.i.

"Lease Termination" means, for purposes of Appendix A, Paragraph 18.j only, the return of an Eligible Vehicle by an Eligible Lessee to the lessor, at no cost to the Eligible Lessee and with full cancellation of the remaining terms of the lease with no financial or other penalty, under terms specified in Appendix A, Paragraph 18.j.

"Legal Product & Technical Compliance" or "L/P" mean the department consisting of lawyers, engineers, and business experts, which designs and develops tCMS elements, participates in the cross-functional decision-making process, conducts independent second-line testing of tCMS controls, and provides Daimler-wide tCMS monitoring and improvement initiatives.

"Light Duty Truck" or "LDT" has the meaning set forth in 40 C.F.R. § 86.1803-01.

"Light Duty Vehicle" or "LDV" has the meaning set forth in 40 C.F.R. § 86.1803-01.

"Low-Emission Vehicle III" or "LEV III" means the LEV III emission standards in 13 C.C.R. § 1961.2 and the incorporated test procedures (incorporated by reference in 40 C.F.R. § 86.1(d)(1)(i)).

"Malfunction" means a circumstance where a Test Vehicle experiences a mechanical or electrical problem, including as the result of damage or accident, that (1) renders the vehicle inoperable, (2) presents a safety or environmental hazard if the vehicle continues to be operated (such as an oil leak), or (3) causes an OBD event (for example, recording a pending fault code or illuminating the MIL), except for the following OBD events: (a) OBD events during OBD demonstration testing, (b) DEF/fuel tank level sloshing diagnostics (P21C5), and (c) false detection or MIL illumination due to chassis dynamometer simulation testing, unless such false detection or MIL illumination causes a default action or default strategy that changes the emission performance behavior.

"Materials" means Submissions and other documents, certifications, plans, reports, notifications, statements of position, data, or other information required by or submitted pursuant to this Consent Decree.

"Mercedes-Benz USA, LLC" or "MBUSA" means the U.S. division of Mercedes-Benz Cars.

"Mercedes-Benz Research & Development North America, Inc." or "MBRDNA" means the North American research and development-related service provider for Mercedes-Benz Cars.

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 44 of 211    Page ID
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 19 of 148
#:44

"MIL" means the malfunction indicator light of the OBD system outlined in 13 C.C.R. § 1968.2 that illuminates to notify the vehicle operator of detected malfunctions.

"Mileage" means vehicle mileage recorded on the odometer.

"Model" has the meaning set forth in 40 C.F.R. § 600.002 for "Model type."

"Modified Eligible Vehicle" means an Eligible Vehicle that has received an Approved Emission Modification.

"MPG" means miles per gallon.

"Model Year" or "MY" has the meaning set forth in 40 C.F.R. § 600.002.

"MY16 Six-Cylinder GLE 350ds" means the six OM642 (6-cylinder) MY16 GLE 350d vehicles with VINs 4JGDA2EB1GA598863, 4JGDA2EB8GA755062, 4JGDA2EB7GA754985, 4JGDA2EB3GA755003, 4JGDA2EB0GA754794, and 4JGDA2EBXGA754916 that Defendants sold or offered for sale in, or introduced or delivered for introduction into commerce in the United States, or imported into the United States.

"MY17/18 Sprinters" means the OM642 (6-cylinder) Sprinters that were issued final Certificates of Conformity HMBXD03.0HD1-034-R01, HMBXD03.0HD2-035, HMBXD03.0HD3-036, HMBXD03.0HD4-037, JMBXD03.0HD1-030, JMBXD03.0HD2-031, JMBXD03.0HD3-032, JMBXD03.0HD4-033-R01 in Model Years 2017 and 2018 and issued Executive Orders A-003-0591-1, A-003-0592-1, A-003-0593-1, A-003-0594-1, A-003-0630, A-003-0631, A-003-0632, and A-003-0633.

"NHTSA" means the National Highway Traffic Safety Administration.

"National Passenger Vehicle EMP Rate" means the 85 percent nationwide rate for Passenger Vehicles specified in Appendix A, Paragraph 4.

"National Sprinter EMP Rate" means the 85 percent nationwide rate for Sprinters specified in Appendix A, Paragraph 4.

"Neutral Intermediary" means an independent external attorney available to receive reports to the BPO in Germany.

"Noise, Vibration, and Harshness" or "NVH" means a measure of the noise level heard during driving and in idle, the vibrations felt during driving and in idle, and the acoustic harshness (which is the transition area between tactile vibration and hearable noise) of the ride of the vehicle.

"NMHC" means "non-methane hydrocarbons," *i.e.*, the sum of all hydrocarbon species except methane.

"Normal Mode" means the period of operation in which the ATS is operated at temperatures consistent with normal vehicle operation and shall last for at least

Case 8:25-cv-01949-DOC-KES   Document 1-1   Filed 08/29/25   Page 45 of 211   Page ID
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 20 of 148
#:45

the number of seconds specified in the Updated AECD Document for Emission Modification Category 9.

"NO$_x$" means oxides of nitrogen, *i.e.*, the sum of the nitric oxide and nitrogen dioxide contained in a gas sample as if the nitric oxide were in the form of nitrogen dioxide.

"NO$_x$ Sensor(s)" means a sensor located in a vehicle's exhaust system which directly or indirectly measures NO$_x$ or related characteristics.

"On-board Diagnostic System" or "OBD System" means all hardware, components, parts, sensors, subassemblies, software, AECDs, calibrations, and other elements of design that collectively constitute the system for monitoring all systems and components that must be monitored pursuant to the version of 13 C.C.R. § 1968.2 applicable at the time of certification for the particular Model Year of a Subject Vehicle, for the purpose of identifying and detecting malfunctions of such monitored systems and components, and for alerting the driver of such potential malfunctions by illuminating the MIL.

"OBD Clusters" means the groupings of the Subject Vehicles as identified in the eighth column of Appendix B, Attachment I.

"OBD Demonstration Vehicle" means the Test Vehicles listed in Appendix B, Attachment A, Table 2.

"OBD Infrequent Regeneration Adjustment Factor" or "OBD IRAF" mean the additive or upward adjustment factor for each pollutant used to account for increased emissions caused by periodic regeneration of any aftertreatment device or strategies activated for monitoring faulty components of the control system in order to adjust the emissions results used to determine the malfunction criterion for monitors that are required to indicate a malfunction before emissions exceed the applicable emission threshold.

"OBD Noncompliance" means any of the following terms, as relevant in the context of the Paragraph: Pre-Approved OBD Noncompliances, Class 1 Additional OBD Noncompliances, Class 2 Additional OBD Noncompliances, Section 1968.5 OBD Noncompliances, or Unreported OBD Noncompliances.

"OBD Summary Table" means the table submitted by Defendants to EPA and CARB pursuant to Appendix B, Paragraph 4.a.i.E and that complies with the version of 13 C.C.R. § 1968.2(i)(2.2) applicable at the time of certification for the particular Model Year of a Subject Vehicle. For Emission Modification Categories 1 to 5 and 9, it must include a revised OBD Summary Table for the OBD Cluster associated with the Emission Modification Category that identifies in redline the changes in the OBD system from the certified configuration due to the proposed Emission Modification Configuration, or, if there are no material changes to the OBD system, it must provide a statement that there are no material changes and the basis for this conclusion. The revised OBD Summary Table for Emission Modification Categories 1 to 5 shall be in a format comparable to that

18

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 46 of 211   Page ID
#:46
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 21 of 148

included in the revised OBD Summary Table for Emission Modification Category 9.

"Operable" means that a vehicle so described can be driven under its own engine power.

"Paragraph" means a portion of this Consent Decree or any Appendices attached hereto identified by an Arabic numeral. Unless a subsidiary Paragraph is otherwise specified, if a Paragraph is cross-referenced, the cross-reference shall include all subsidiary Paragraphs (*e.g.*, Paragraph 1, 1.a, 1.b, 1.b.i, 1.b.i.A, 1.c, *etc.*).

"Particulate Matter" or "PM" means particulates formed during the diesel combustion process and measured by the procedures specified in 40 C.F.R. Part 86, Subpart B.

"Particulate Matter Sensor" or "PM Sensor" means a sensor located in a vehicle's exhaust system which directly or indirectly measures Particulate Matter or related characteristics.

"Parties" means the United States, California, and Defendants.

"Passenger Vehicles" means the vehicles in Emission Modification Categories 4–12.

"Payment Transmittal Form" means the form provided by CARB to the addressee listed in Paragraph 10 after the Effective Date of this Consent Decree, to accompany payments made to CARB.

"Personal Information" means (1) information specifically identifying, by reference to name, initials, telephone number, fax number, email, unique position or office, home address, or identification number, an employee of Daimler AG or any of its subsidiaries, except a subsidiary that is incorporated in or has its principal place of business in the United States, and (2) specific information about the health or family status of such an employee. Personal Information shall not include: (1) any information that directly relates to a violation of the terms of this Consent Decree; (2) any information that an employee has agreed may be processed and transferred to Plaintiffs by Daimler AG or any of its subsidiaries as part of that individual's employment agreement, including any collective employment agreements that include such individual; or (3) any information that an employee has otherwise consented may be processed and transferred to Plaintiffs by Daimler AG or any of its subsidiaries.

"Plaintiffs" means the United States and California.

"Portable Emissions Measurement System" or "PEMS" means an emissions measurement system that complies with the field testing specifications of 40 C.F.R. Part 1065, Subpart J, and that measures emissions while a vehicle is driven on the road.

Case 8:25-cv-01949-DOC-KES   Document 2-1   Filed 09/29/25   Page 47 of 211   Page ID
#:47
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 22 of 148

"Post-Settlement Audit Team" or "PSAT" mean the audit department, located within Corporate Audit, consisting of audit teams dedicated specifically to environmental compliance and tCMS, which will conduct internal audits under this Consent Decree.

"Pre-Approved OBD Noncompliance" mean the OBD Noncompliances described in Appendix B, Paragraph 2.f.i.A and Attachment L, and in Paragraph 53.c.i.

"Project Future" means the restructuring plan under which Daimler AG has become the publicly listed parent company of three legally independent entities— Mercedes-Benz AG (including business units Mercedes-Benz Cars and Mercedes-Benz Vans), Daimler Truck AG (including business units Daimler Trucks and Daimler Buses), and Daimler Mobility AG (formerly Daimler Financial Services AG). Daimler AG will perform governance, strategy, and management functions as well as provide Company-wide services.

"PVE" means production vehicle evaluation, which is testing conducted in accordance with the requirements of 13 C.C.R. § 1968.2(j) (2016), as modified by Appendix B.

"QA/QC Reports" or "Quality Assurance/Quality Control Reports" mean records describing actions, measures, and steps taken to ensure the reliability and validation of the data and testing conducted under Appendix B to this Consent Decree. For emissions and fuel economy testing conducted pursuant to Appendix B, the QA/QC Reports will document compliance with 40 C.F.R. Part 1066; for OBD testing conducted pursuant to Appendix B, the QA/QC Reports will document compliance with 40 C.F.R. Part 86.

"Quality Management Department" or "QM" means the department responsible for quality management at Daimler.

"Records" means all non-identical copies of all documents, records, reports, or other information (including documents, records, or other information in electronic form).

"Regeneration Mode" means the period of operation in which the ATS is operated at temperatures consistent with a DPF Regeneration Event and with a minimum temperature and minimum duration specified in the Updated AECD Document for Emission Modification Category 9.

"Remedy Period" has the meaning set forth in Appendix A, Paragraph 18.j.

"Research & Development Department(s)" or "R&D" or "R&D department" mean the research and development departments of Mercedes-Benz Cars and Mercedes-Benz Vans.

"Risk Assessment" means the annual processes to systematically identify and assess the respective compliance risks of all Daimler entities.

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 48 of 211   Page ID
#:48
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 23 of 148

"SC03" means the emission test cycle described in Appendix I, Paragraph (h)
(Dynamometer Schedules) of 40 C.F.R. Part 86 and the procedures set forth in 40
C.F.R. §§ 1066.810 and 1066.835.

"Secondary Emission Plus Test Vehicles" means one or more backup, or
secondary, Emission Plus Test Vehicles for each Emission Modification Category
that meet the requirements of Appendix B, Paragraph 1.c.

"Secondary OBD Demonstration Vehicles" means one or more backup, or
secondary, OBD Demonstration Vehicles for each OBD Cluster that meet the
requirements of Appendix B, Paragraph 1.c.

"Secondary Vehicles" means Secondary Emission Plus Test Vehicles and/or
Secondary OBD Demonstration Vehicles.

"Section" means a portion of this Consent Decree identified by a capitalized
Roman numeral.

"Section 1968.5 OBD Noncompliance" means the OBD Noncompliances
described in Paragraph 53.c.iv.

"Selective Catalytic Reduction System" or "SCR System" means all hardware,
components, parts, sensors, subassemblies, software, AECDs, calibrations, and
other elements of design that collectively constitute the system for controlling
$NO_x$ emissions through catalytic reduction using an ammonia-based DEF as the
reducing agent, including without limitation all hardware, components, parts,
sensors, subassemblies, software, AECDs, calibrations, and other elements of
design relating to (1) the DEF storage tank, (2) the DEF injectors, (3) the dosing
control unit, and (4) the SCR catalyst assembly.

"Sprinters" means the vehicles in Emission Modification Categories 1–3.

"Standard Road Cycle" or "SRC" means the test cycle described in 40 C.F.R. Part
86, Appendix V.

"Statement of Position" means a written statement of position by any Party
regarding a matter in dispute to be resolved through formal dispute resolution
procedures pursuant to Paragraphs 72–75 of this Consent Decree.

"Subject Vehicles" means any vehicles identified in Appendix B, Attachment I
that Defendants sold or offered for sale in, or introduced or delivered for
introduction into commerce in the United States or its Territories, or imported into
the United States or its Territories, and that are or were purported to have been
covered by the EPA test groups and/or CARB test groups listed in Appendix B,
Attachment I.

"Submission" means any plan, report, application, or other item that is required to
be submitted for approval pursuant to this Consent Decree.

"Supervisory Board" means the corporate governance board of Daimler AG,
which monitors and advises the BoM.

Case 8:25-cv-01949-DOC-KES   Document 1-1   Filed 08/29/25   Page 49 of 211   Page ID
#:49
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 24 of 148

"tCMS Multiplier" means a contact person within R&D for technical compliance-related issues.

"tCMS R&D" or "tCMS R&D department" mean the dedicated tCMS units established within R&D (both Mercedes-Benz Passenger Cars and Vans). Both of these units report directly to the respective heads of the R&D departments.

"tCMS Risk Assessment" means the annual Risk Assessment conducted for technical product compliance risks, designed to measure the technical product compliance and environmental risk exposure of R&D departments, and identify the specific risks existing within each of those departments. The tCMS Risk Assessment is conducted by IL/P.

"Technical Compliance Committee" or "TCC" means the committee consisting of mainly E2-level representatives from IL/P, R&D, Certification, tCMS R&D, Communications, and External Affairs, which participates in the cross-functional decision-making process and considers Clearing Cases.

"Technical Compliance Management System" or "tCMS" means Daimler's technical compliance management system, consisting of values, principles, structures, and processes that have the primary objective of addressing all significant technical and environmental risks arising during the product life cycle, including risks related to emissions and certification.

"Test Group" means the basic classification unit within a durability group as determined under 40 C.F.R. § 86.1827-01, used for the purpose of demonstrating compliance with exhaust emission standards in accordance with 40 C.F.R. § 86.1841-01.

"Test Protocol" means Appendix B and all Attachments thereto.

"Test Vehicles" mean vehicles that meet the requirements of Appendix B, Paragraphs 1.a–1.c and Appendix B, Attachment A, and that are tested pursuant to Appendix B.

"THC" means total hydrocarbons.

"Transmission Control Unit" or "TCU" means the electronic hardware device, together with the software and calibrations installed on the device, that controls the operation of the transmission in the Subject Vehicles.

"Ultra Low Emission Vehicle" or "ULEV" means any vehicle certified by CARB as meeting CARB ultra-low-emission vehicle standards, either under 13 C.C.R. § 1961(a)(1) for 2004 through 2019 vehicles certified under the California LEV II exhaust emission standards, or under 13 C.C.R. § 1961.2(a)(1) for 2015 and subsequent model year vehicles certified under the California "LEV III" exhaust emission standards.

"Unified Drive Cycle" or "UDC" means the "Unified Cycle Driving Schedule" defined in Part II of the "California 2015 and Subsequent Model Criteria Pollutant

Exhaust Emission Standards and Test Procedures and 2017 and Subsequent Model Greenhouse Gas Exhaust Emission Standards and Test Procedures for Passenger Cars, Light Duty Trucks, and Medium Duty Vehicles," incorporated by reference in 13 C.C.R. § 1961.2.

"United States" means the United States of America, acting on behalf of EPA.

"United States/California" means the United States and California jointly, or the United States or California, as applicable.

"United States/CARB" means the United States and CARB jointly, or the United States or CARB, as applicable.

"Unreported OBD Noncompliance" means the OBD Noncompliances described in Paragraph 53.c.iii.

"Updated AECD Document" means the document that meets the requirements of Appendix B, Paragraph 4.a.ii.

"U.S. Complaint" means the complaint filed by the United States in this action on September 14, 2020.

"Urban/Downtown Los Angeles Route" means the driving route shown and described in Appendix B, Attachment D.

"US06" means the emission test cycle described in Appendix I, Paragraph (g) (Dynamometer Schedules) of 40 C.F.R. Part 86 and the procedures set forth at 40 C.F.R. §§ 1066.810 and 1066.831.

"VIN" means vehicle identification number, as defined in 49 C.F.R. § 565.12(r).

"WAL" means worst acceptable limit as set forth in 13 C.C.R. § 1968.2(h)(6.4.1) (2016).

"Warrantable Failure" has the meaning set forth in Appendix A, Paragraph 18.j.

## IV.    CIVIL PENALTY

8.      Within 30 Days after the Effective Date, Defendants shall pay the total sum of $875,000,000 as a civil penalty, together with interest accruing from the Date of Lodging at the rate specified in 28 U.S.C. § 1961 as of the Date of Lodging. Defendants are jointly and severally liable for payment of the sum in the prior sentence.

9.      Of the amount set forth in Paragraph 8, Defendants shall pay $743,750,000, plus the interest due thereon, to the United States, by FedWire Electronic Funds Transfer to the U.S.

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 51 of 211    Page ID
#:51
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 26 of 148

Department of Justice account, in accordance with instructions provided to Defendants by the

Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District of

Columbia after the Effective Date. The payment instructions provided by the FLU will include a

CDCS number, which Defendants shall use to identify all payments required to be made in

accordance with this Consent Decree. The FLU will provide the payment instructions to:

> Daimler AG
> z. H. Kurt Schäfer
> Werk 096, HPC Z300
> 70546 Stuttgart, Germany
> Email: kurt.schaefer@daimler.com
> Phone: +49 711 17-92203
>
> Daimler AG
> z. H. Frank Wetter
> Werk 096, HPC Z304
> 70546 Stuttgart, Germany
> Email: frank.wetter@daimler.com
> Phone: +49 711 17-92945

on behalf of Defendants. Defendants may change the individual to receive payment instructions

on its behalf by providing written notice of such change to the United States and EPA in

accordance with Section XVI (Notices).

At the time of payment, Defendants shall send notice that payment has been made: (1) to

EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance

Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (2) to the United States via

email or regular mail in accordance with Section XVI (Notices); (3) to EPA in accordance with

Section XVI (Notices); and (4) to CBP via email in accordance with Section XVI (Notices).

Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent

Decree in *United States v. Daimler AG et al.*, and it shall reference Civ. No. 1:20-cv-2564 the

CDCS Number, and DJ # 90-5-2-1-11788.

Case 8:25-cv-01949-DOC-KES   Document 2-1   Filed 08/29/25   Page 52 of 211   Page ID
#:52
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 27 of 148

10.     Of the amount set forth in Paragraph 8, Defendants shall pay $131,250,000, plus

the interest due thereon, to CARB by check, accompanied by a Payment Transmittal Form

(which CARB will provide to the addressee listed in Paragraph 9 after the Effective Date), with

the check mailed to:

> California Air Resources Board
> Accounting Office
> P.O. Box 1436
> Sacramento, CA 95812-1436;

or by wire transfer, in which case Defendants shall use the following wire transfer information

and send the Payment Transmittal Form to the above address prior to each wire transfer:

> State of California Air Resources Board
> c/o Bank of America, Inter Branch to 0148
> Routing No. 0260-0959-3;  Account No. 01482-80005
> Notice of Transfer: Accounting; Fax: (916) 322-9612
> Reference: CARB Case #C00032.

Defendants are responsible for any bank charges incurred for processing wire transfers, and for

replacing any checks due to a check bouncing or being lost in the mail. Penalties paid to CARB

under this Consent Decree shall be deposited into the Air Pollution Control Fund for the purpose

of enhancing CARB's mobile source emissions control program through additional certification

review, in-use evaluation, real-world testing, enforcement actions, and other CARB activities

related to the control of air pollution.

11.     Defendants shall not deduct any penalties paid under this Consent Decree

pursuant to this Section IV (Civil Penalty) or Section X (Stipulated Penalties) in calculating their

U.S. federal, state, or local income tax.

V.     APPROVAL OF SUBMISSIONS; U.S./EPA/CARB DECISION-MAKING

12.     For purposes of this Consent Decree, unless otherwise specified in this Consent

Decree:

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 53 of 211   Page ID
#:53
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 28 of 148

a.      with respect to any Submission, other obligation that requires approval or other decision by Plaintiffs, or force majeure claim of Defendants that concerns Section VI (Subject Vehicle Compliance) or that concerns Appendix B, EPA/CARB or the United States/CARB shall issue a joint or sole decision, as applicable, concerning the Submission, other obligation, or force majeure claim;

b.      with respect to any Submission, other obligation that requires approval or other decision by Plaintiffs, or force majeure claim of Defendants that concerns Section VIII (Mitigation), EPA or the United States shall issue a decision concerning the Submission, other obligation, or force majeure claim;

c.      with respect to any other Submission, obligation that requires approval or decision by Plaintiffs, or force majeure claim of Defendants under this Consent Decree, the position of EPA or the United States, after consultation with CARB, shall control.

13.     Except as otherwise specified after review of any Submission, EPA/CARB or the United States/CARB shall in writing: (1) approve the Submission; (2) approve the Submission upon specified conditions; (3) approve part of the Submission and disapprove the remainder; or (4) disapprove the Submission.  In the event of an approval upon specified conditions or a disapproval, in full or in part, of any portion of the Submission, if not already provided with the EPA/CARB or the United States/CARB written decision, upon the request of Defendants, EPA/CARB or the United States/CARB will provide in writing the reasons for such specified conditions or disapproval.

Case 8:25-cv-01949-DOC-KES   Document 2-1   Filed 09/29/25   Page 54 of 211   Page ID
#:54
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 29 of 148

14.     If the Submission is approved pursuant to (1) in Paragraph 13 above, Defendants shall take all actions required by the Submission, in accordance with the schedules and requirements of the Submission, as approved. If the Submission is conditionally approved or approved only in part pursuant to (2) or (3) in Paragraph 13 above, Defendants shall, upon written direction from EPA/CARB or the United States/CARB, take all actions required by the Submission that EPA/CARB or the United States/CARB determine(s) are technically severable from any disapproved portions, subject to Defendants' right to dispute only the conditions EPA/CARB or the United States/CARB specified or the disapproved portions, under Section XII (Dispute Resolution).

15.     If the Submission is disapproved, in whole or in part pursuant to (3) or (4) in Paragraph 13 above, Defendants shall, within 45 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the Submission, or disapproved portion thereof, for approval, in accordance with Paragraph 13. If the resubmission is approved in whole or in part, Defendants shall proceed in accordance with Paragraph 14.

16.     If a resubmitted Submission is disapproved, in whole or in part, EPA/CARB or the United States/CARB may again require Defendants to correct any deficiencies, in accordance with Paragraph 15; or EPA/CARB or the United States/CARB may itself/themselves correct any deficiencies, and Defendants shall implement the Submission as modified by EPA/CARB or the United States/CARB, subject to Defendants' right to invoke the dispute resolution procedures set forth in Section XII (Dispute Resolution) and the right of EPA/CARB or the United States/CARB to seek stipulated penalties.

17.     Any stipulated penalties applicable to the original Submission, as provided in Section X (Stipulated Penalties), shall accrue during the 45-Day period or such other time as the

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 55 of 211   Page ID
#:55
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 30 of 148

Parties agreed to in writing pursuant to Paragraph 15, but shall not be payable unless the
resubmission of the original Submission is untimely or is disapproved in whole or in part;
provided that, if EPA or the United States, in consultation with CARB, determines that the
original Submission was so deficient as to constitute a material breach of Defendants'
obligations under this Consent Decree, the stipulated penalties applicable to the original
submission shall be due and payable notwithstanding any subsequent resubmission. In the event
that EPA or the United States seeks stipulated penalties under this Paragraph, upon request of
Defendants, EPA or the United States will provide in writing the reasons for such a finding of
material deficiency, if not already provided with the EPA/CARB or United States/CARB written
decision.

## VI.    SUBJECT VEHICLE COMPLIANCE

18.    <u>Emission Modification Program</u>.  The Parties shall implement the Emission
Modification Program in accordance with the requirements set forth in Appendix A.

      a.    <u>Related Class Action Settlement</u>.  If the United States and CARB find and
provide notice in writing to Defendants that provisions in a related Class
Action Settlement are equivalent to the requirements of Appendix A,
Paragraphs 1, 8–12, 15–16, 18, and 19 and Paragraphs 53.b.i–53.b.iii,
53.b.v (except with respect to Dealer Emissions Modification
Disclosures), 53.b.viii, and 53.b.ix.A of this Consent Decree, Defendants
shall be relieved of those obligations under this Consent Decree without
further amendment to this Decree or action by the Court.  All other terms
of this Consent Decree shall remain in force and effect.

      b.    Paragraph 18.a shall apply only if a United States district court grants a

Case 8:25-cv-01949-DOC-KES    Document 2-1    Filed 08/29/25    Page 56 of 211    Page ID
#:56
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 31 of 148

motion for preliminary approval of the Class Action Settlement.
Defendants shall abide by the terms of this Consent Decree if (1) a United
States district court denies with prejudice a motion for final approval of
the Class Action Settlement; or (2) the equivalent provisions in the Class
Action Settlement are not included in the court's final approval order or
are delayed, reversed, or vacated by an appellate court for any reason,
even if the United States and CARB provided notice to Defendants
pursuant to Paragraph 18.a before an event described in (1) or (2) of this
sentence occurs.

    c.    If the requirements found in Paragraphs 18.a and 18.b are satisfied, and
notice provided accordingly, Defendants are relieved of any obligations
found in Paragraphs 53.b.i–53.b.iii, 53.b.v (except with respect to Dealer
Emissions Modification Disclosures), 53.b.viii, and 53.b.ix.A of this
Consent Decree specified in that notice without further amendment to this
Decree or action by the Court.

19.    <u>Subject Vehicle In-Use Testing</u>.

    a.    <u>OBD In-Use Monitoring Performance Verification and Reporting</u>.  Using
a contractor or Dealer, Defendants shall collect and report in-use
monitoring performance data as required by 13 C.C.R. § 1968.2(j)(3)
(2016) (*i.e.*, verification and reporting of in-use monitoring performance)
from 15 vehicles from each of Emission Modification Categories 1, 2, 3,
4, 5, and 9, and 5 vehicles from each of Emission Modification Categories
6, 7, 8, 10, 11, and 12 that has received the Approved Emission

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 57 of 211   Page ID
#:57
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 32 of 148

Modification, within 360 Days after the first Eligible Vehicle from each Emission Modification Category is modified in accordance with Appendix A. Vehicles shall be selected, for the purposes of this Paragraph only, in accordance with 13 C.C.R. § 1968.2(j)(3) (2016) and 13 C.C.R. § 1968.5(b)(3)(D)(ii) (2016).

b.      In-Use Emission Standard Testing. Defendants shall undertake and complete in-use testing pursuant to this Paragraph 19.b. Defendants shall test according to the following schedule: (1) For Emission Modification Category 1 (also known as In-Use Group 1), begin testing no later than one year after the Effective Date, or one year after the date of approval of the Category 1 Emission Modification in accordance with Appendix B, Paragraph 5, whichever is later, and test each year thereafter; (2) for Emission Modification Category 9, begin testing no later than one year after the Effective Date, or one year after the date of approval of the Category 9 Emission Modification in accordance with Appendix B, Paragraph 5, whichever is later, and for each year thereafter, test from one of Defendants' choice of one of Emission Modification Categories 9, 10, 11, and 12 (collectively, also known as In-Use Group 2); (3) for Emission Modification Category 3 (also known as In-Use Group 3), begin testing no later than one year after the Effective Date, or one year after approval of the Category 3 Emission Modification in accordance with Appendix B, Paragraph 5 , whichever is later, and for each year thereafter; (4) for Defendants' choice of one of Emission Modification Categories 4 and 5

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 58 of 211    Page ID
#:58
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 33 of 148

(collectively, also known as In-Use Group 4), begin testing no later than one year after the Effective Date, or one year after approval of the Category 4 Emission Modification in accordance with Appendix B, Paragraph 5, whichever is later, and for each year thereafter; and (5) for Defendants' choice of one of Emission Modification Categories 7 and 8 (collectively, also known as In-Use Group 5), begin testing no later than one year after the Effective Date, or one year after approval of the Category 7 Emission Modification in accordance with Appendix B, Paragraph 5, whichever is later, and for each year thereafter. Defendants shall undertake and complete in-use emission standard testing in accordance with the requirements of this Paragraph 19.b. Within 9 to 12 months from the Effective Date, and each year thereafter for five years from the Effective Date, Defendants shall repeat the in-use testing required under this Paragraph, except for Subject Vehicles that are the subject of a determination of non-compliance issued pursuant to Paragraph 19.b.v.

i.     <u>In-Use Verification Testing and Vehicle Selection</u>.  Defendants shall select no less than two Subject Vehicles for each Emission Modification Category that have been updated with the Approved Emission Modification for in-use verification testing that meet the requirements of Appendix B, Paragraph 1.b. Defendants may not exclude Subject Vehicles from being selected for in-use verification testing based solely upon the lack of maintenance

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 09/29/25   Page 59 of 211   Page ID
#:59
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 34 of 148

records or a history of multiple owners or repairs. Each Subject
Vehicle shall have between 100,000 and 110,000 miles, and each
Subject Vehicle shall have been driven no less than 1,500 miles
since receiving the Approved Emission Modification. If
Defendants are unable to find such a Subject Vehicle, Defendants
may select a Subject Vehicle with mileage no less than 50,000
miles and no greater than 119,000 miles and driven no less than
1,500 miles since receiving the Approved Emission Modification.
Defendants shall use best reasonable efforts to select a high
mileage vehicle using the criteria above. In selecting vehicles for
In-Use Groups 2, 4, and 5, which are comprised of different
Emission Modification Categories, Defendants shall select and test
a vehicle from a different Emission Modification Category than
that selected for in-use testing in the prior year, provided such a
vehicle can be acquired within the aforementioned mileage range.
In addition, in the case of In-Use Group 4, Defendants shall select
and test a different Model within the chosen Emission
Modification Category than the Model selected for in-use testing in
the prior year, provided such a vehicle can be acquired within the
aforementioned mileage range. If Defendants cannot procure a
high mileage vehicle, Defendants shall select and test a vehicle
from the same Emission Modification Category as that selected for
in-use testing in the prior year, and Defendants shall describe all

efforts made to procure such a vehicle and explain why it could not be reasonably procured under Paragraph 42.b (In-Use Testing). Vehicles that meet the requirements of this Paragraph shall be known as the "IUVT Vehicles."

A.   Evaluation of In-Use Verification Testing.  On each of the IUVT Vehicles selected for in-use verification testing in accordance with Paragraph 19.b.i, above, Defendants shall conduct emissions tests pursuant to Paragraph 19.b.iii.   If, after applying any IRAFs, but not any Deterioration Factors, that applied at the time of certification, either of the IUVT Vehicles exceeds the Emission Standard specified in Appendix B, Attachment I, and the average emissions of IUVT Vehicles tested is equal to or greater than 115 percent of the Emission Standard as a result of the testing specified in Paragraph 19.b.iii.A, Defendants shall undertake in-use confirmatory testing in accordance with Paragraph 19.b.ii.  For purposes of calculating SFTP composite emission levels, Defendants shall include the IUVP FTP emissions, the IUVP US06 emissions, and the values from the SC03 test reported in the Emission Modification Proposal Report, or in the case of In-Use Group 3, the values from the MY20 certification application, if applicable.   If more than one set of SC03

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 61 of 211   Page ID
#:61
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 36 of 148

data exists, Defendants shall choose the SC03 result to use in the calculation from among those data sets using good engineering judgment. The calculations shall be made using the equations prescribed in 40 C.F.R. § 86.164.

ii.  <u>In-Use Confirmatory Testing and Vehicle Selection</u>.  Within 20 Days of submitting in-use verification test results that meet the criteria for in-use confirmatory testing set forth in Paragraph 19.b.i.A, Defendants shall submit to EPA/CARB for review and approval an in-use confirmatory test plan (the "IUCP") to test other Subject Vehicles within the same Emission Modification Category as the IUVT Vehicles that triggered the IUCP.  Defendants' IUCP Vehicles shall comply with the requirements of Appendix B, Paragraph 1.a and Paragraph 1.b, 40 C.F.R. § 86.1846-01(i), and must meet the requirements of Paragraph 19.b.i.  The vehicles specified in IUCP shall be known as the "IUCP Vehicles." Defendants shall commence testing under the IUCP no later than 90 Days from the Day EPA/CARB approve the IUCP, and shall complete testing under the IUCP within 210 Days from the Day EPA/CARB approve the IUCP.  The approved IUCP shall only require Defendants to conduct emissions tests in accordance with Paragraph 19.b.iii.

A.  <u>Evaluation of In-Use Confirmatory Testing</u>.  If, after applying any IRAFs, but not any Deterioration Factors, that

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 62 of 211    Page ID
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 37 of 148
#:62

applied at the time of certification, any IUCP Vehicle
exceeds the Emission Standard specified in Appendix B,
Attachment I for the tests conducted pursuant to Paragraph
19.b.iii.A, Defendants shall conduct an evaluation to
determine the reason(s) for the failure. Defendants shall
submit a report of their findings to EPA/CARB no later
than 90 Days from conclusion of the IUCP. EPA/CARB
may agree, in writing, to extend this deadline.

iii.  <u>Emissions Tests, Data Collection</u>.

A.  For each IUVT Vehicle and any IUCP Vehicle, Defendants
shall conduct FTP75 and HWFET emissions tests in
accordance with Appendix B, Paragraph 2.b.i. In addition,
for each IUVT Vehicle and any IUCP Vehicle in In-Use
Groups 2, 4, and 5, Defendants shall conduct US06
emissions tests in accordance with Appendix B, Paragraph
2.b.i. For each IUVT Vehicle and any IUCP Vehicle in In-
Use Group 3, Defendants shall conduct a modified US06
emissions test in accordance with 13 C.C.R. § 1961.2. All
testing conducted pursuant to this Paragraph shall conform
to the requirements of 40 C.F.R. Part 86, as modified by
Appendix B, and conformity with 40 C.F.R. Part 1066 shall
not be required.

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 63 of 211   Page ID
#:63
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 38 of 148

B.      Defendants shall also perform special cycle and PEMS emissions tests under Appendix B, Paragraphs 2.b.i and 2.b.ii on each IUVT for the first, third, and fifth year of testing required under Paragraph 19.b, and on any IUCP vehicle, provided that the results of special cycle and/or PEMS testing conducted under this Paragraph cannot be the basis for determining a failure to meet the Emission Standard for in-use verification testing pursuant to Paragraph 19.b.i.A, or for determining a failure of in-use confirmatory testing pursuant to Paragraph 19.b.ii.A. Notwithstanding the foregoing, special cycle and PEMS emissions tests pursuant to this Paragraph shall not be required for In-Use Group 1. All testing conducted pursuant to this Paragraph shall conform to the requirements of 40 C.F.R. Part 86, as modified by Appendix B, and conformity with 40 C.F.R. Part 1066 shall not be required.

C.      Prior to EPA or CARB taking any action, including the assessment of stipulated penalties, based on the results of special cycle and/or PEMS emissions tests conducted on in-use vehicles, whether such testing was conducted by Defendants or by EPA/CARB, EPA/CARB must notify Defendants in writing of such planned action. If the in-use

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 64 of 211    Page ID
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 39 of 148
#:64

testing was conducted by EPA and/or CARB, the testing
agency shall concurrently provide Defendants with all
available data, including but not limited to the ECU data
and modal emissions data, for all testing conducted on
vehicles in that In-Use Group.  Thereafter, the parties must
have a meet-and-confer period of no less than 60 Days to
discuss the special cycle and/or PEMS emissions test
results before any stipulated penalty can be assessed or any
other action can be taken.

D.    For all tests conducted under this Paragraph 19.b.iii,
Defendants shall collect data from such tests in accordance
with Appendix B, Paragraphs 4.a.v, 4.a.vi, 4.a.vii, 4.a.xvi,
and 4.a.xvii, except that the requirement to collect ECU
data in Appendix B, Paragraphs 4.a.vi and 4.a.vii shall not
apply and instead, Defendants shall collect ECU data in
accordance with the procedures outlined in Appendix C.
Additionally, for all tests conducted under Paragraph
19.b.iii, in accordance with 13 C.C.R. § 1968.2 (2016),
Defendants shall collect all downloads of all standardized
OBD data from the tested vehicles, both before and after
conducting each test required by Paragraphs 19.b.i and
19.b.ii, except that for PEMS testing, if more than one
PEMS route is conducted in a single day, the downloads

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 65 of 211    Page ID
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 40 of 148
#:65

shall be conducted before the start of the first PEMS route
and after the end of the final PEMS route on that day when
the vehicle has returned to Defendants' testing facility.

iv.      <u>FUL Limitation</u>.  Defendants are not required to test any vehicle
with mileage beyond its FUL.

v.      <u>EPA/CARB Options Following IUCP Testing Failure</u>.  Upon
receipt and consideration of a report pursuant to Paragraph
19.b.ii.A, EPA/CARB shall, in writing: (1) determine that no
further action is required, (2) issue a Determination of In-Use Non-
Compliance due to failure of the Approved Emission Modification
and may assess stipulated penalties pursuant to Paragraph 53.d.iii
(Failure to Comply with Emission Standards), and/or (3) issue a
Determination of In-Use Non-Compliance and follow their
regulatory procedures for determining whether to implement a
recall under 40 C.F.R. Part 85, Subpart S, and 13 C.C.R. §§ 2113
and 2123 or take other appropriate actions under their respective
regulations with respect to all Subject Vehicles identified in the
Determination of In-Use Non-Compliance.  Any administrative
action under (3) in the preceding sentence in this Paragraph 19.b.v
shall not be subject to review under Section XII (Dispute
Resolution) of this Consent Decree. If Defendants miss the
applicable deadline to submit a report pursuant to Paragraph
19.b.ii.A, EPA/CARB may issue a Determination of In-Use Non-

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 66 of 211   Page ID
#:66
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 41 of 148

Compliance without waiting to receive such report from Defendants. Additionally, notwithstanding any other provision of this Consent Decree including Paragraph 86 and Paragraph 87. (concerning effect of settlement), the United States and California reserve all equitable rights to address any non-compliance identified in the Determination of In-Use Non-Compliance under applicable laws and regulations by instituting proceedings in this action or in a new action and/or by pursuing administrative remedies.

vi.   Notification of Testing. Defendants shall notify EPA/CARB at least 15 Days prior to commencing testing in accordance with Paragraph 19.b.i.A (In-Use Verification Testing), Paragraph 19.b.ii (In-Use Confirmatory Testing), and, as applicable, Paragraph 19.b.ii.A (Evaluation of In-Use Confirmatory Testing) so that EPA/CARB may observe the testing.

c.   Reporting. In-use testing under Paragraph 19.a and 19.b.i shall be reported in the next semi-annual report, in accordance with Paragraph 42.b (In-Use Testing). In-use testing under Paragraphs 19.b.ii and 19.b.ii.A shall be reported in accordance with those subparagraphs. If any IUVT Vehicle or IUCP Vehicle in an Emission Modification Category fails the Emission Standard specified in Appendix B, Attachment I, Defendants shall notify the persons designated in Section XVI (Notices) for EPA/CARB within 72 hours of such event.

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 67 of 211    Page ID
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 42 of 148
#:67

d.    <u>Publication of Data</u>. For any IUVT Vehicle, within 30 Days of submitting the applicable semi-annual report, Defendants shall post an emissions test report containing the bag results, and all second-by-second modal (continuous) emissions data for NOx, total hydrocarbons, carbon monoxide, carbon dioxide, and non-methane hydrocarbons for each emissions test required pursuant to Paragraph 19.b.iii.A, and each test required by Paragraph 19.b.iii.B, on the public website required by Appendix A, Paragraph 16. For any IUCP Vehicle, within 30 Days of receipt of the EPA/CARB written response pursuant to Paragraph 19.b.v, Defendants shall post an emissions test report containing the bag results, and all second-by-second modal (continuous) emissions data for NOx, total hydrocarbons, carbon monoxide, carbon dioxide, and non-methane hydrocarbons for each emissions test required pursuant to Paragraph 19.b.iii.A, and each test required by Paragraph 19.b.iii.B, on the public website required by Appendix A, Paragraph 16. Defendants shall provide the modal (continuous) emissions data specified in this Paragraph in a format that can be imported into a spreadsheet. Defendants shall not be required to post, pursuant to this Paragraph, any data that has been invalidated pursuant to Appendix B, Paragraph 2.a.iv. The Parties agree and acknowledge that neither United States nor California law sets forth a standard by which PEMS and off-cycle dynamometer testing can be used to determine compliance for purposes of certification under Title II of the Clean Air Act.

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 68 of 211    Page ID
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 43 of 148
#:68

VII.    CORPORATE COMPLIANCE

20.      Defendants shall undertake the Corporate Compliance provisions of this Consent

Decree in conjunction with their existing corporate and compliance management activities with

the goal to:

      a.     Prevent environmental compliance problems related to United States or

           California environmental laws and regulations from arising in the first

           instance;

      b.     Detect any environmental compliance problems related to United States or

           California environmental laws and regulations that do arise; and

      c.     Respond to any environmental compliance problems related to United

           States or California environmental laws and regulations that arise,

           including modifying broader policies, processes, controls or any other

           activities that allowed the problem to arise, and self-disclose, as

           appropriate, to EPA and CARB where disclosure should have occurred in

           the first instance.

To meet the goals of this Section VII, Defendants have designed the measures described in

Paragraphs 28–30 to target compliance with United States and California laws and regulations

governing light- and medium-duty vehicle emission and certification.

21.      Defendants have developed and are continuing to implement and enhance existing

various corporate governance policies and practices in the areas of integrity, business ethics, and

environmental compliance. Defendants describe these policies and practices in their Operating

Plan for Technical and Environmental Product Compliance ("Compliance Operating Plan"),

attached hereto as Appendix D. These efforts include: (1) compliance-related corporate

41

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 69 of 211   Page ID
#:69
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 44 of 148

organizations; (2) a compliance management system ("CMS") to detect and address Company-wide compliance risks; (3) a technical compliance management system ("tCMS"), which focuses specifically in part on vehicle environmental compliance; (4) technical compliance and certification control measures to detect and address Company-wide vehicle environmental compliance risks; and (5) external communication of Daimler's compliance efforts. Defendants will conduct both (1) internal audits and (2) a third-party review to evaluate these efforts.

22.      Defendants shall implement both the policies and practices contained in their Compliance Operating Plan and the requirements contained in this Section VII (Corporate Compliance).

23.      Segregation of Duties. Defendants shall maintain the separation of individuals and organizational units within the company that deal with: vehicle certification; vehicle research and development; and internal corporate audits. Each of these organizational units shall primarily report to a different Board of Management member.

24.      Integrity Code. Defendants have modified their Integrity Code's environmental protection and technical compliance provisions to emphasize the reduction of air emissions and the improvement of air quality by, in part, emphasizing compliance with environmental laws and regulations. By September 30, 2020, Defendants shall inform and train their employees regarding the modified Code.

25.      Employee Discipline and Compensation. Defendants shall continue to factor environmental compliance into the integrity factor for the variable compensation structure of their relevant middle- and senior-level managers, and shall periodically assess any additional adjustments to how this compliance factors into compensation. Defendants shall continue to

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 09/29/25   Page 70 of 211   Page ID
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 45 of 148
#:70

subject employees who violate any environmental compliance requirement to appropriate internal disciplinary measures.

26.    <u>Whistleblower System</u>.

a.    Defendants shall continue to implement their existing Business Practices Office ("BPO") (their whistleblower office) to report, investigate, and mitigate any environmental compliance issues. Defendants' BPO shall continue to be centralized and available to all of Defendants' employees, and shall maintain the ability to report anonymously in Germany and the United States, and otherwise as permitted by local law, possible environmental compliance issues. Employees in Germany shall continue to have the option to make reports to the Neutral Intermediary, an independent external attorney, who shall be available to receive and forward anonymous BPO reports.

b.    Defendants have trained the BPO Neutral Intermediary on vehicle emissions and certification compliance issues and have provided the Intermediary with an independent tCMS expert contact point to clarify vehicle emissions and certification compliance questions. Defendants' BPO Neutral Intermediary has participated in an expert-level dialogue with IL/P and an external technical expert regarding vehicle emissions and certification compliance risks.

c.    By December 31, 2020, Defendants shall clarify in their Treatment of Violations Policy used by the BPO, and in related training, that environmental noncompliance of a product within the United States

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 71 of 211    Page ID
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 46 of 148
#:71

always constitutes "serious risk."

d.  Defendants have formalized and documented the requirement that BPO employees assigned to review any reported potential environmental compliance violation discuss the reported violation with the head of the BPO in person.

e.  Defendants have launched a communication campaign within research and development ("R&D") to promote the BPO. This campaign shall last until at least December 31, 2021.

f.  By December 31, 2020, Defendants shall test and measure the actual reach of the communication campaign by way of a dedicated anonymous survey among all addressed audiences. The survey's results shall be used for further development of additional communication and improvement of the BPO.

g.  Defendants have fully implemented an embedded IT system control that ensures that a BPO case cannot be closed without review by at least two BPO employees.

27.  <u>Risk Assessment</u>. Defendants shall continue to perform their annual compliance Risk Assessment. Defendants shall complete their compliance Risk Assessment for 2019, and shall assign any mitigating measures by December 31, 2019. Defendants shall complete compliance Risk Assessments by December 31 of every year for the duration of this Consent Decree. Defendants shall implement any mitigation measures assigned to address compliance risks and shall track completion of new mitigation measures for material risks, including risks

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 72 of 211   Page ID
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 47 of 148
#:72

related to compliance with U.S. and California laws and regulations governing vehicle emissions and certification.

      28.    <u>Business Partner and Supplier Integrity Management</u>.

        a.     As described in this Paragraph 28, Defendants shall continue to evaluate their business partners' environmental compliance and the effects that those partners' compliance could have on Defendants' own environmental compliance. For purposes of this Section VII (Corporate Compliance), unless otherwise specified herein, "suppliers" shall refer to suppliers which Defendants have a contractual relationship with and which directly provide to Defendants Emission-Related software, Emission-Related software calibrations, or Emission-Related hardware parts for use in vehicles intended for certification in the United States or California.

        b.     Defendants have enhanced their screening process to identify suppliers that have potentially violated environmental regulatory requirements.

        c.     By December 31, 2020, Defendants shall enhance the general terms and conditions in their standard supplier contracts to include an explicit requirement to comply with technical regulations and laws, which include laws and regulations governing vehicle emissions and certification, and will undertake reasonable best efforts to include the requirement to comply with technical regulations into contracts entered into with suppliers. Defendants shall undertake reasonable best efforts to include a requirement in supplier contracts to document or notify Defendants in writing when the supplier determines that the supply of an Emission-

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 73 of 211    Page ID
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 48 of 148
#:73

Related part or performance of an Emission-Related service will result in
Defendants violating U.S. or California vehicle emissions or certification
regulations or laws, except where deficiencies under 13 C.C.R. §§ 1968.2
or 1968.5 may be permitted with appropriate disclosure to EPA or CARB.

d.    Defendants shall undertake reasonable best efforts to have its suppliers
include in their contracts entered into with other suppliers that provide
Emission-Related software, Emission-Related software calibrations,
and/or or Emission-Related hardware parts for the ultimate use by
Defendants in vehicles intended for certification in the United States or
California terms that require these suppliers to document or notify the
Defendants' direct supplier in writing when it determines that the supply
of an Emission-Related part or performance of an Emission-Related
service will result in Defendants violating U.S. or California vehicle
emissions or certification regulations or laws, except where deficiencies
under 13 C.C.R. §§ 1968.2 or 1968.5 may be permitted with appropriate
disclosure to EPA or CARB.

e.    From June 30, 2020, onward, Defendants shall establish and maintain a
list of suppliers that provide an Emission-Related part or Emission-
Related service that, to Defendants' knowledge, result in Defendants
violating U.S. or California vehicle emissions or certification regulations
or laws, except where deficiencies are permitted with appropriate
disclosure to EPA or CARB. Additionally, Defendants shall include on
such a list suppliers that have been found by a governmental

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 74 of 211    Page ID
#:74
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 49 of 148

environmental agency to have violated U.S. or California vehicle
emissions or certification regulations or laws in an administrative
agreement, consent decree, settlement agreement, or other formal
judgment or adjudication.   Such list shall identify both the supplier of the
Emission-Related parts or service and the individual Emission-Related
part or service which resulted in the violation.

f.    By December 31, 2019, Defendants shall update their Compliance
Awareness Module ("CAM") for sales business partners that sell
Defendants' vehicles or vehicle parts ("Sales Business Partners") to
include information for those Sales Business Partners on environmental
compliance topics and contact information for Defendants' BPO.

   i.    By December 31, 2019 Defendants shall begin rollout of the
updated CAM to Sales Business Partners.

   ii.    By December 31, 2020 Defendants shall implement an automatic
CAM invitation process for every new Sales Business Partner.

   iii.    Defendants have implemented an automatic CAM invitation
process for every new supplier.

g.    By December 31, 2019, Defendants shall identify relevant suppliers that
are supplying Emission-Related parts or services to "High-risk"
departments (according to the tCMS Risk Assessment described in
Paragraph 29.e) and shall provide to those suppliers an additional tCMS
awareness presentation.

h.    Defendants have identified and conducted an in-person workshop with

Case 8:25-cv-01949-DOC-KES    Document 1-1    Filed 09/29/25    Page 75 of 211    Page ID
#:75
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 50 of 148

suppliers that provide products or services directly relating to compliance with United States or California vehicle emissions or certification laws or regulations, to detail Defendants' expectations regarding environmental compliance.

    i.    By June 30, 2020 Defendants shall establish environmental compliance-related communications and escalation processes with suppliers that provide products or services directly relating to compliance with United States or California vehicle emissions or certification laws or regulations, and, by June 30, 2020, Defendants shall develop and provide a platform and guidance for these suppliers to evaluate their own environmental compliance systems and Emission-Related development processes.

    j.    By December 31, 2019, Defendants shall develop and begin providing specific web-based training on United States and California vehicle emissions and certification laws and regulations to suppliers that provide products or services directly relating to compliance with United States or California vehicle emissions or certification laws and regulations.

29.    <u>Compliance Management System and Technical Compliance Management System</u>.

    a.    Defendants shall continue to implement and evaluate both their corporate-wide CMS and their tCMS to prevent, detect, and respond to information that may lead to issues regarding environmental compliance.

    b.    By December 31, 2019, and annually thereafter, Defendants shall conduct a CMS effectiveness evaluation.

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 76 of 211   Page ID
#:76
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 51 of 148

c.      By December 31, 2019 and annually thereafter, Defendants shall conduct

a tCMS effectiveness evaluation, that includes, among other things,

interviews of relevant employees, self-assessments, and evaluation of

feedback received through consultation channels such as the tCMS

multiplier network or via the BPO, which provides a channel for

employees to provide anonymous feedback that may be relevant to the

Effectiveness Evaluation, to determine if the tCMS program elements are

designed and implemented effectively and, if they are not, to assign

measures to improve the tCMS program. All tCMS effectiveness

evaluations will be presented to the Compliance Board, the Group Risk

Management Committee, the Board of Management ("BoM"), and the

Audit Committee of the Supervisory Board.

d.      tCMS Training.

i.      Defendants have required face-to-face tCMS training of all

relevant existing employees within R&D departments. Defendants

shall require face-to-face tCMS training with all relevant new

employees within R&D departments. Defendants have

implemented web-based tCMS training and shall require ongoing

web-based tCMS training with relevant existing and new R&D

employees.

ii.     By December 31, 2019, and annually thereafter, Defendants shall

provide specific mandatory training on United States and

California emissions and certification regulations and laws,

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 77 of 211   Page ID
#:77
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 52 of 148

including OBD, AECDs, and defeat devices to relevant R&D

department employees. Defendants shall, on a risk basis,

periodically evaluate which employees should receive this training.

    iii.    Defendants have distributed their AECD Documentation

Guidelines to all Certification and R&D department employees

that deal with these issues, and shall continue to annually distribute

their AECD Documentation Guidelines to all Certification and

R&D department employees that deal with these issues.

e.    <u>tCMS Risk Assessment and Control Objectives</u>.

    i.    By December 31, 2019, and annually thereafter, Defendants shall

conduct an annual tCMS Risk Assessment that includes, among

other things, evaluation of feedback regarding environmental

compliance risks and suggested improvements provided via

established consultation channels such as the tCMS multiplier

network, and/or via the BPO, to measure the risk exposure of R&D

departments. By December 31, 2020, Daimler shall include in the

tCMS Risk Assessment survey a statement inviting anonymous

feedback through the BPO. As part of these tCMS Risk

Assessments, Defendants shall assign mitigating measures. As

part of the tCMS Risk Assessment process, Defendants shall

conduct sample checks of mitigation measures to evaluate the

effectiveness of mitigation measures and annually update the

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 78 of 211    Page ID
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 53 of 148
#:78

tCMS Risk Assessment to improve the identification of risks and the completion of mitigation measures.

ii.   In conjunction with each annual tCMS Risk Assessment beginning with the 2020 calendar year, Defendants shall determine the effectiveness of prior year Assessments, and refine the following year Assessment based on this determination.

iii.  By December 31, 2019, and annually thereafter, Defendants shall identify tCMS control objectives to monitor processes used for environmental and technical compliance including detecting and disclosing AECDs and detecting and preventing defeat devices, and shall, as part of the Effectiveness Evaluation process, evaluate whether the objectives are being met.

30.   <u>Technical Compliance and Certification Control Measures</u>.

a.   <u>Regulatory Monitoring Meeting</u>.  By December 31, 2019, and quarterly thereafter, Defendants shall hold cross-functional Regulatory Monitoring Meetings in which Defendants shall aggregate developments on emerging United States or California emissions laws and regulations from various inputs and provide one consolidated source of information that is distributed on a management level within R&D departments.

b.   <u>Enhanced Regulatory Database</u>.  By December 31, 2021, Defendants shall finalize an Enhanced Regulatory Database accessible to all R&D department employees which will contain, in addition to other material, environmental compliance requirements arising from United States or

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 79 of 211   Page ID
#:79
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 54 of 148

California laws, regulations, or guidance.

c.      <u>Systematic Derivation of Technical Specifications.</u>   By December 31,
2020, Defendants shall develop and establish an enhanced process for
systematically deriving technical specifications from United States or
California regulatory requirements for technical or environmental
compliance. The systematic derivation of technical specifications is
intended to take the regulatory requirements for vehicle emissions and
certification compliance and turn them into parameters or limits for engine
or aftertreatment performance, which are then applied to the design of
software. Following December 31, 2020, derivation of these technical
specifications will be a mandatory step in the development of powertrains
for use in vehicles to be certified as light- and medium duty vehicles.

d.      <u>Software Compliance Guide.</u>   Defendants shall maintain and update their
Software Compliance Guide and provide electronic access to the Guide to
all R&D department employees. Defendants' Software Compliance Guide
shall require, at a minimum, that all software not detect or respond in any
way to United States or California test cycles or test cycle parameters and
that all software be designed independent from any such regulatory test
cycles and test cycle parameters.

e.      <u>Disclosure-Relevant Control Parameters.</u> By June 30, 2020, Defendants
shall implement a process to identify, track, and list all disclosure-relevant
control parameters to ensure that any changes that materially affect such
control parameters are reflected in AECD disclosure documents as

Case 8:25-cv-01949-DOC-KES   Document 1-1   Filed 08/29/25   Page 80 of 211   Page ID
#:80
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 55 of 148

required by United States or California laws, regulations, or guidance. After June 30, 2020 Defendants shall continually revise and update this list of disclosure-relevant control parameters.

f.      <u>Compliance Check by Functional Group Leaders</u>. Defendants are establishing and implementing the role of Functional Group Leaders and a tool-based requirement that Functional Group Leaders approve any new software functions developed or requested by Daimler to be used in ECUs, TCUs, CPCs, and DCUs in light-or medium-duty vehicles intended for certification in the United States or California.

   i.      Defendants have established the role of Functional Group Leaders and have established a tool-based requirement that Functional Group Leaders approve any new software functions developed or requested by Daimler to be used in ECUs, TCUs, or CPCs in Mercedes-Benz Passenger Car vehicles to be certified as light- or medium duty that have been assigned to respective Functional Groups.

   ii.     By July 1, 2020, Defendants shall implement the role of Functional Group Leader and implement this tool-based requirement that Functional Group Leaders approve any new software functions developed or requested by Daimler to be used in ECUs, TCUs, and CPCs in Mercedes-Benz Passenger Car vehicles that have been assigned to respective functional groups.

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 81 of 211   Page ID
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 56 of 148
#:81

iii. By July 1, 2020, Defendants shall establish the role of Functional Group Leader and establish a tool-based requirement that Functional Group Leaders approve any new software functions developed or requested by Daimler to be used in ECUs, TCUs, and CPCs in Mercedes-Benz Van and AMG vehicles, that have been assigned to respective functional groups.

iv. By December 1, 2021, Defendants shall implement this tool-based requirement that Functional Group Leaders approve any new software functions developed or requested by Daimler to be used in ECUs, TCUs, CPCs, and DCUs in light-or medium-duty vehicles, that have been assigned to respective functional groups.

g. <u>Software Screening</u>.

i. <u>Screening of Functions for Review</u>. By December 31, 2020, Defendants shall develop and establish a Tool-Supported Screening Process designed to identify functions that may qualify as AECDs during software development so that the functions will be further evaluated.

ii. By March 31, 2021, and continuing thereafter, Defendants shall use a Tool-Supported Screening Process to screen all new U.S. powertrain projects to identify software functions that may qualify as AECDs.

iii. <u>Tool-Supported Calibration Check</u>. By December 31, 2019, Defendants shall use their Tool-Supported Calibration Check to

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 82 of 211   Page ID
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 57 of 148
#:82

screen calibrations in ECU and TCU software of all gasoline and diesel vehicles intended for certification as light- and medium-duty vehicle models in the United States and shall use their Tool-Supported Calibration Check to screen ECU- and TCU- relevant software changes (running changes or changes implemented via field measures) developed or requested by Daimler to light- and medium-duty diesel vehicle models issued Certificates of Conformity or Executive Orders.

iv.      Beginning with MY2021, Defendants shall use their Tool-Supported Calibration Check to screen calibrations in DCU and CPC software of all vehicles intended for certification as light- and medium-duty diesel vehicle models in the United States and use their Tool-Supported Calibration Check to screen calibrations in CPC software of two light- or medium-duty gasoline vehicle models intended for certification in the United States.

v.      Beginning with MY2022 Defendants shall use their Tool-Supported Calibration Check to screen calibrations in CPC software of all vehicles intended for certification as light- and medium-duty gasoline vehicle models in the United States.

vi.      Beginning with MY2022, Defendants shall use their Tool-Supported Calibration Check to screen DCU- and CPC-relevant software changes (running changes or changes implemented via

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 83 of 211   Page ID
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 58 of 148
#:83

field measures) to vehicles issued Certificates of Conformity or
Executive Orders as light-duty and medium-duty diesel vehicles.

h.     <u>Controls on the Certification Process.</u>

    i.     <u>Off-Cycle Testing Prior to Certification.</u>

      A.     <u>Diesel</u>. Defendants shall continue to conduct PEMS and
off-cycle dynamometer testing as specified in Appendix A
to the MY2017 OM642 Sprinter AECD documentation for
any new vehicles issued Certificates of Conformity or
Executive Orders through and including MY2023 as light-
or medium-duty diesel models.

      B.     <u>Gasoline</u>. Defendants shall conduct PEMS testing to
demonstrate off-cycle tailpipe emissions and screen for
undisclosed AECDs or defeat devices on three vehicles
certified as light- or medium-duty gasoline Test Groups per
Model Year from MY2021 through and including
MY2024. Defendants shall select the Test Groups based on
sales volume, selecting the highest volume Test Groups per
Model Year using the projected 50 states' sales volumes
prepared for NMOG + NOx fleet averages under Tier 3,
except that Defendants shall not repeat testing of any Test
Group during the duration of the Consent Decree.
Defendants shall conduct the PEMS testing over the
Combined Freeway and Uphill/Downhill Route and the

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 84 of 211    Page ID
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 59 of 148
#:84

Urban/Downtown Los Angeles Route, specified in
Appendix B, Attachment D, as follows: (1) multiple PEMS
tests on the test vehicle may be conducted in the same Day;
(2) the first PEMS test on each Day shall be started after a
soak of at least 6 hours. The test vehicle may be parked
outdoors in Los Angeles for the soak period, or indoors at
an ambient temperature of between 68°F and 86°F; (3) if it
is not possible to park the vehicle at the start of the PEMS
route for the soak period, the vehicle may be cold-started at
another location, provided that the emissions results and
PEMS testing data are collected from engine-on and a map
of the route is provided along with the other data reported
under this Paragraph 30.h.i.B. Defendants have completed
the required PEMS testing and submitted corresponding
reports for MY2021. For each PEMS test conducted for
MY2022 through and including MY2024, Defendants shall
collect and report the following to EPA and CARB: (1) all
raw data generated for speed, load, second-by-second
emissions data, and the signals and parameters listed in
Appendix E in a .CSV file format and in the native format
of the PEMS unit, the AVL iFile; (2) average emissions
results for NOx and $CO_2$, ambient temperature and other
information related to environmental conditions during the

57

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 09/29/25    Page 85 of 211    Page ID
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 60 of 148
#:85

test; (3) average emissions results for THC and CO,
ambient temperature and other information related to
environmental conditions during the test; and (4) a Flat File
of each test that includes vehicle identification information,
the VIN, a test identification number, and average
emissions results per route segment (parsing). Post-
processing of PEMS data shall be carried out as follows:
(1) drift correction shall be performed in accordance with
40 C.F.R. § 1065.672; (2) wet/dry correction shall be
performed in accordance with 40 C.F.R. § 1065.655; and
(3) humidity correction shall be performed in accordance
with 40 C.F.R. § 1065.670. Defendants shall also collect
data for the signals and parameters listed at Appendix E.
Defendants shall submit the PEMS testing emissions data
to the certification departments at EPA and CARB, in the
format specified by those certification departments, no later
than, for EPA, three months prior to the submission of the
Request for Certificate for the Test Group application for
certification, and, for CARB, no later than 30 days after
submission of the request for an Executive Order.

C.    Public posting of data. Within 30 Days of introduction to
commerce of the first vehicle in each Test Group covered
by Paragraphs 30.h.i.A and 30.h.i.B (*i.e.*, after approval of

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 86 of 211   Page ID
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 61 of 148
#:86

certification of the Test Group), or within 30 Days of the
Effective Date, whichever comes later, Defendants shall
post the PEMS data described in Paragraphs 30.h.i.A and
30.h.i.B (redacted of any CBI or PII, the disclosure of
which is restricted by applicable law, provided that no
emissions test methods, data, or results may be claimed as
CBI) on the public website required by Paragraph 16 of
Appendix A, except that Defendants shall not be required
to post the raw data generated for speed, load, second-by-
second emissions data, and the signals and parameters
listed in Appendix E.

D.     Testing entity.  A team located in Los Angeles, California,
and independent from Defendants' product development,
shall conduct the testing required by this Paragraph.

E.     The Parties agree and acknowledge that neither United
States nor California law sets forth a standard by which
PEMS and off-cycle dynamometer testing can be used to
determine compliance for purposes of certification under
Title II of the Clean Air Act.

ii.     Emission-Related Parts List.  As required by Appendix D, Section
V, Paragraph C.2, Defendants shall maintain a list of Emission-
Related parts in vehicles certified as light- and medium-duty
vehicles, and update the list annually by December 31 to ensure

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 87 of 211   Page ID
#:87
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 62 of 148

that the parts list complies with applicable regulatory guidelines while incorporating technological developments.

iii. <u>AECD Documentation, Approval, and Review</u>. Beginning with MY2021, Defendants' shall require their Certification department to conduct checks of ECU datasets as an independent check that calibration values in the dataset match the values disclosed in AECD disclosure documentation to be submitted to EPA and CARB for vehicles intended to be certified as light- and medium-duty gasoline and diesel vehicles in the United States.

i. <u>Lifecycle Management Control</u>.

i. <u>Tracking and Recording of Certified Configuration</u>. Beginning with MY2021, Defendants shall require their Certification department to retain certified software configurations for vehicles issued Certificates of Conformity as light-duty and medium-duty vehicles in the United States or Executive Orders in California in a centralized database.

ii. <u>Software Change Process</u>. Defendants shall require that all software changes to ECUs, TCUs, DCUs, or CPCs in light- and medium-duty vehicles issued Certificates of Conformity or Executive Orders be submitted to, and approved, or not approved by their Certification department.

iii. By December 31, 2019, and continuing thereafter, Defendants shall have their Certification department conduct a dataset check of

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 88 of 211   Page ID
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 63 of 148
#:88

all proposed software changes to emissions-relevant functions in

light-duty vehicle ECUs, TCUs (NAG3, 7-DCT, and 8-DCT),

DCUs, or CPCs issued Certificates of Conformity or Executive

Orders, in which that department will compare the software

datasets before and after the proposed change to ensure that any

proposed change is accurately described in the submissions to

regulatory authorities.

iv.  By December 31, 2020, and continuing thereafter, Defendants

shall have their Certification department conduct a dataset check of

all proposed software changes to emissions-relevant functions in

medium-duty vehicle ECUs, TCUs (NAG3, 7-DCT, and 8-DCT),

DCUs, or CPCs issued Certificates of Conformity or Executive

Orders, in which that department will compare the software

datasets before and after the proposed change to ensure that any

proposed change is accurately described in the submissions to

regulatory authorities.

v.  Field Software Control.  By December 31, 2019, Defendants shall

have their tCMS R&D department select and conduct sample

checks of the software configurations of three vehicles certified as

light- or medium-duty gasoline models in the field in the United

States to determine whether such software configurations are

consistent with each vehicle's certified configuration and confirm

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 89 of 211   Page ID
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 64 of 148
#:89

that any changes to the certified configuration were made in

accordance with regulatory requirements.

vi.       Beginning with MY2020, and continuing thereafter, Defendants

shall require their tCMS R&D department to randomly select and

conduct sample checks of vehicle software configurations of

vehicles certified as light- or medium-duty in the field in the

United States to determine whether such software configurations

are consistent with each vehicle's certified configuration as

reported to EPA and CARB, and to confirm that any changes to the

certified configuration were made in accordance with United States

and California regulatory requirements, as applicable.

31.      <u>Reporting of Corporate Compliance</u>.  Defendants shall report on their compliance

with Paragraphs 20–30 on an annual basis consistent with the requirements of Section IX

(Reporting).  Any violations of Paragraphs 20–30 shall be reported in the semi-annual reports

consistent with the requirements of Section IX (Reporting).  Defendants shall report on any

audits undertaken pursuant to Paragraphs 32 or 33 consistent with those requirements of this

Consent Decree.  In reports submitted to EPA, and only in the copy of a report sent to EPA,

Defendants shall exclude any material dealing with this Section VII (Corporate Compliance),

with the exception of information required by Paragraphs 30.h.i and 30.h.ii, which shall be

submitted to EPA.

32.      <u>Internal Audits</u>.

a.      Defendants shall maintain the organizational independence of their

Corporate Audit by continuing to have the department report to the

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 90 of 211    Page ID
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 65 of 148
#:90

Chairman of the BoM, the BoM member for IL, and, in addition to the Audit Committee of the Supervisory Board. This reporting is governed by Defendants' Corporate Audit Charter and must comprise both periodic and ad-hoc reporting, and ensure direct access to the ultimate governing and supervisory bodies of Defendants' present and any future corporate structure. Defendants will also maintain the organizational independence of their Corporate Audit by continuing to maintain a structure where Corporate Audit sets its budget with the ultimate oversight of the Audit Committee and in which Corporate Audit selects its own issues for audits, determines the scope of those audits, and adopts methods necessary for accomplishing its audit objectives.

b.  By September 1, 2020, Defendants shall designate an audit department with audit teams within Corporate Audit dedicated specifically to environmental compliance and tCMS, hereinafter the Post-Settlement Audit Team ("PSAT"). The PSAT shall have the expertise, responsibility, independence, and authority to assess environmental compliance with United States and California regulations and laws concerning vehicle emissions and certification. Defendants shall ensure that personnel on these audit teams have and retain the capability and qualifications to evaluate Defendants' tCMS and R&D processes, certification activities, and software development and, as necessary, have the ability to retain internal or external technical consultants to assist in an audit. Defendants shall ensure that all current and future PSAT members and all external

Case 8:25-cv-01949-DOC-KES     Document 1     Filed 08/29/25     Page 91 of 211     Page ID
Case 1:20-cv-02564     Document 2-1     Filed 09/14/20     Page 66 of 148
#:91

technical consultants are free from conflicts of interest regarding former

employment, contract, or consulting work for suppliers listed as required

by Paragraph 28.e.

c.      Defendants shall select the leader of the PSAT in consultation with the

United States and California.   The PSAT leader shall have the expertise,

responsibility, independence, and authority to direct and supervise the

activities of the PSAT.

d.      The PSAT, through the PSAT leader, shall report directly to the

Committee for Legal Affairs of the Daimler AG Supervisory Board (the

"Committee for Legal Affairs") in addition to the BoM member for IL.

The PSAT leader's reporting must comprise both periodic and ad-hoc

reporting, and ensure direct access to the ultimate governing and

supervisory bodies of Defendants' present and any future corporate

structure.  Regardless of any future corporate structure, Defendants shall

ensure that the PSAT continues to function as described herein, with all

relevant authority and obligations.   The Committee for Legal Affairs shall

have authority to direct and supervise the PSAT.  The removal or

discipline of the PSAT leader or PSAT members shall be subject to the

approval of the Committee for Legal Affairs.  No member of the BoM

shall have the authority to direct or restrict the activities of the PSAT, or to

remove or discipline the PSAT leader or PSAT members, without

approval of the Committee for Legal Affairs.

e.      The PSAT shall operate under the terms of this Consent Decree until the

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 92 of 211   Page ID
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 67 of 148
#:92

PSAT has submitted a fourth Audit Report pursuant to Paragraph 32.n.

    f.    Beginning on the Effective Date the PSAT shall, on a risk basis, identify in annual Audit Plans aspects of the following to audit, and shall complete said audits:

        i.    the design, implementation status, and effectiveness of relevant tCMS processes, including certification processes, software development, compliance with United States and California environmental regulations and certification limits concerning vehicle emissions and certification;

        ii.    compliance with the terms of this Consent Decree, and

        iii.    the capabilities of individuals or organizational units to carry out tasks assigned to them regarding tCMS processes or compliance with the terms of this Consent Decree.

    g.    The first annual audit shall include a review of the process used by Defendants to develop proposed Emission Modification Configurations and draft Emission Modification Proposal Reports pursuant to Appendix B of this Consent Decree. The audit shall specifically include a review of the coordination between the Mercedes-Benz Passenger Cars and Mercedes-Benz Van organizational units and any other organizational unit with responsibilities under Appendix B to ensure development of full and complete Emission Modification Proposal Reports, and it shall evaluate the accuracy of Emission Modification Proposal Reports already submitted to the United States, EPA, and CARB.

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 93 of 211   Page ID
#:93
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 68 of 148

h.      As described in Paragraph 33.e, Audit Plans shall be submitted to the Committee for Legal Affairs. No member of the BoM shall have the authority to direct or control the content of Audit Plans.

i.      The PSAT shall conduct audits based on:

    i.      the review of relevant documents and procedures, including anonymous feedback submitted through the BPO, and awareness of United States and California laws and regulations concerning vehicle emissions and certification;

    ii.     on-site observation of selected systems and procedures, including internal controls and record-keeping procedures;

    iii.    meetings with and interviews of relevant employees;

    iv.     analyses, studies, and testing of Defendants' environmental compliance under United States and California laws and regulations concerning vehicle emissions and certification and tCMS, including the review of software;

    v.      all standards and guidance for internal auditing as applicable provided by the Institute for Internal Auditors; and

    vi.     any reporting conducted by Defendants to the United States or California pursuant to the terms of this Consent Decree.

j.      The PSAT, as a part of Corporate Audit, shall have unrestricted access to all relevant corporate information, including but not limited to records, property, IT systems including software, and personnel.

k.      The PSAT shall complete the first audit (*i.e.*, completion of the final audit

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 94 of 211   Page ID
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 89 of 148
#:94

in a series of audits) within one year of the Effective Date, and shall complete each subsequent audit (*i.e.*, completion of the final audit in a series of audits) on a recurring annual basis from the date of the first Audit Report under Paragraph 32.n.

l.    After the completion of the annual audit year (*i.e.*, after completion of the final audit in a series of audits within an audit year), the PSAT shall produce an Audit Report which contains:

    i.    a description of the audit or audits, including a description of the purpose of each audit;

    ii.    who conducted each audit, including the competencies of the members of the PSAT;

    iii.    how each audit was conducted including the information obtained and reviewed, and, if applicable, a description of any information that was unavailable;

    iv.    the results, conclusions and recommendations of any such audits;

    v.    to whom within Defendants' organization the results of such audits were provided;

    vi.    if applicable, whether previous audit recommendations were adopted and corrective measures timely taken and whether any previous audit concerns remain;

    vii.    any recommended changes or enhancements to the audits; and

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 95 of 211   Page ID
#:95
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 70 of 148

viii.         a declaration signed by two signatories, including the PSAT leader, that the audit was conducted in accordance with this Consent Decree.

m.      As described in Paragraph 33.f, within 30 Days after the completion of the final audit in a series of audits within each audit year, the PSAT shall produce a draft annual Audit Report to the Committee for Legal Affairs. No member of the BoM shall have the authority to direct or control the content of Audit Reports or drafts thereof.

n.      Within 60 days after the completion of each annual audit year the PSAT shall submit to the United States and California a final annual Audit Report, pursuant to Section XVI (Notices).

o.      The Committee for Legal Affairs shall submit, along with each annual Audit Report, a declaration, signed by each member of the Committee for Legal Affairs, regarding the efficacy of the PSAT's activities and Defendants' compliance with the Consent Decree, based on the annual audit(s).

p.      Within 60 days after receiving a final annual Audit Report containing a finding of noncompliance, Defendants shall submit a response to the PSAT that contains recommendations and a schedule for corrective action. Such schedule shall include an action plan to implement corrective measures as expeditiously as practicable, or an explanation of why corrective measures are not being implemented or, in the case of previous recommendations, corrective measures were not timely implemented.

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 96 of 211   Page ID
#:96
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 71 of 148

Defendants shall implement any such corrective measures. After
Defendants have completed implementation of the corrective measures, if
any, Defendants shall provide, pursuant to Section XVI (Notices), a report
to the United States and California with a certification that the work has
been completed and that the work was conducted in accordance with the
terms of this Consent Decree, as applicable, and consistent with the Audit
Report and Defendants' response.

q.    The PSAT shall coordinate and communicate on a regular basis with the
Committee for Legal Affairs.

r.    The PSAT shall consider any comments received from the United States
or CARB in developing annual Audit Plans.

33.   <u>External Compliance Consultant</u>.

a.    Within 180 Days after the Effective Date, the Committee for Legal Affairs
shall select and retain an individual to serve as the External Compliance
Consultant ("ECC") to the Committee for Legal Affairs. The ECC shall
advise and assist the Committee for Legal Affairs as the Committee for
Legal Affairs fulfills its obligations under Paragraph 32. Within
Defendants' organization, the ECC shall report solely to the Committee
for Legal Affairs.

b.    <u>Selection and Retention</u>.  Defendants shall:

i.    Request that ECC candidates submit a resume, biographical
information, and any relevant material concerning each of the
candidate's competence and qualifications to serve as the ECC;

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 97 of 211   Page ID
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 72 of 148
#:97

ii.        Request that ECC candidates describe any past, present, or future business or financial relationship that the candidate has with Defendants, Defendants' suppliers or contractors, EPA, or CARB. The ECC shall not be an employee or an agent of Defendants, Defendants' subsidiaries, the United States or California, nor will he or she be currently engaged in any work for, or in representation of, Defendants;

iii.      Verify that, to Defendants' best knowledge and based on the reasonably available information, either the ECC candidate has no conflicts of interest with regard to this matter or any actual or apparent conflict has been waived by Defendants;

iv.      Verify that the ECC candidate has agreed not to be employed by Defendants, or Defendants' subsidiaries, for a minimum of two years after conclusion of work as the ECC; and

v.        Retain the ECC until the PSAT has submitted its final annual Audit Report.

c.    <u>Compensation.</u>  Defendants shall be responsible for compensating the ECC in accordance with the terms agreed upon by the Committee for Legal Affairs of the Supervisory Board and the selected ECC and at a level of compensation and resources sufficient for the ECC to perform the duties outlined herein. Such terms of agreement shall state that the ECC is retained by the Daimler AG Supervisory Board, but is not an employee of Defendants.

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 98 of 211    Page ID
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 73 of 148
#:98

d.    <u>Role, Duties, and Access Rights</u>.  The ECC shall be retained to advise and assist the Committee for Legal Affairs acting in its role supervising the PSAT's activities pursuant to Paragraph 32.  The ECC shall provide objective and fair assessments of the PSAT's activities under Paragraph 32 and Defendants' compliance with the terms of this Consent Decree to the Committee for Legal Affairs.  The ECC shall promptly report to the Committee for Legal Affairs any violations of this Consent Decree.  The PSAT shall fully cooperate with the ECC in exchanging relevant information in a timely manner.

e.    Prior to conducting an audit under Paragraph 32, the PSAT shall submit each annual Audit Plan to the Committee for Legal Affairs.  The ECC shall review each Audit Plan and provide recommendations to the Committee for Legal Affairs within 30 Days. The Committee for Legal Affairs shall have the discretion whether to adopt such recommendations and whether to require modifications to the annual Audit Plan.  Upon request, Defendants shall provide the United States a copy of any formal ECC recommendations, and a report on whether the Committee for Legal Affairs required modifications to the annual Audit Plan.  Defendants shall provide CARB a copy on any ECC recommendations within 30 days of the receipt by the Committee for Legal Affairs, and a subsequent report on whether the Committee required modifications to the annual Audit Plan.

f.    The PSAT shall produce draft Audit Reports to the Committee for Legal Affairs within 30 Days of completion of the final audit in a series of audits

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 99 of 211   Page ID
#:99
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 74 of 148

within an audit year.  The ECC shall review such draft Audit Reports and provide to the Committee for Legal Affairs any recommendations for modification regarding the content of the Audit Report or subsequent activities undertaken by the PSAT pursuant to Paragraph 32.  The Committee for Legal Affairs shall have the discretion whether to adopt such recommendations and whether to require modifications or amendments to the Audit Report.  The PSAT shall produce final Audit Reports to the Committee for Legal Affairs when it submits such Reports to the United States and California pursuant to Paragraph 32.n.  Upon request, Defendants shall provide the United States or California any formal ECC recommendations on draft Audit Reports and a report on whether the Committee for Legal Affairs required modifications or amendments to an Audit Report.

g.   The Committee for Legal Affairs shall require full transparency from the PSAT with regard to its activities and findings under Paragraph 32.  Additionally, the Committee for Legal Affairs may, at its discretion, empower the ECC to review this information.   In such circumstances, the ECC shall report any observations or recommendations to the Committee for Legal Affairs.  The Committee for Legal Affairs shall have the discretion whether to adopt such recommendations.   Upon request, Defendants shall provide the United States or California any formal ECC recommendations on PSAT activities and a report on whether the Committee for Legal Affairs adopted any ECC recommendations.

Case 8:25-cv-01948-DOC-KES    Document 1    Filed 08/29/25    Page 100 of 211    Page
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 75 of 148
ID #:100

34.     The Committee for Legal Affairs may otherwise request the assistance of the ECC in the course of carrying out its supervisory duties under Paragraph 32.

## VIII.   MITIGATION

35.     U.S. Mitigation Program. As set forth in this Section, Defendants shall mitigate NOx emissions from Subject Vehicles (other than NOx emissions from Subject Vehicles in California), by implementing a program to reduce emissions from older locomotives (the "U.S. Mitigation Program").

a.     Pursuant to the U.S. Mitigation Program, by no later than 40 months from the Effective Date, Defendants shall fund, in whole, the repowering of 15 unregulated, Tier 0, Tier 0+, Tier 1, or Tier 1+ line-haul locomotives as defined in 40 C.F.R. § 1033.901.  "Repowering" refers to replacing the existing engines with engines certified to EPA Tier 4 or more stringent locomotive emission standards.  Defendants may satisfy this obligation by funding the repowering aspect of a locomotive rebuild.  "Rebuild" refers to the complete down-to-frame rebuild of the entire locomotive.

b.     These projects shall be referred to as "Environmental Mitigation Projects." Defendants shall provide evidence of the progress and completion of Environmental Mitigation Projects and other information as set forth in Paragraph 42.c.i. Defendants' implementation of the U.S. Mitigation Program will be deemed to fully mitigate the total lifetime excess $NO_x$ emissions from Subject Vehicles in the United States, excluding California, as claimed by the United States.

c.     Selection Criteria. Defendants or their implementing Third Party or Third

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 101 of 211   Page
ID #:101
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 76 of 148

Parties shall use the following selection criteria when implementing the
U.S. Mitigation Program.

    i.      In selecting line-haul locomotives, Defendant shall use reasonable
best efforts to preferentially repower/rebuild locomotives that are
likely to run long distances to geographically diverse locations
across the continental United States, except that Defendants shall
not be required to repower/rebuild locomotives located in or
traveling to California.

    ii.      In selecting suppliers or manufacturers of Tier 4 engines, or when
selecting recipients of the engines: (1) Defendants shall not
preferentially select manufacturers that are Daimler-AG controlled
entities over other manufacturers or suppliers; and (2) Defendants
shall use reasonable best efforts to not preferentially select public
or governmental entities over private entities.

36.     Defendants, in their sole discretion, may satisfy the obligations in Paragraph 35
by funding Environmental Mitigation Projects that are to be implemented by one or more state,
local, tribal, independent non-profit organizations, or other third party entities (each a "Third
Party"). If Defendants use a state, local, tribal, or independent non-profit organization to
implement an Environmental Mitigation Project, Defendants shall require the state, local, tribal,
or independent non-profit organization to identify, in writing: (1) its legal authority for accepting
such funding; and (2) its legal authority to conduct the Environmental Mitigation Project for
which Defendants contribute the funds. The use of a Third Party to carry out the requirements
herein shall in no way alter the Defendants' obligations under the Consent Decree. In selecting a

Case 8:25-cv-01948-DOC-KES   Document 1   Filed 08/29/25   Page 102 of 211   Page
ID #:102
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 77 of 148

Third Party or Third Parties, Defendants shall consider whether a bidding or application program would ensure a fair process and would be practical. If Defendants undertake such a bidding or application program, the deadlines for implementation of the U.S. Mitigation Program contained in Paragraph 35 shall be amended so that Defendants must implement the U.S. Mitigation Program by repowering/rebuilding 15 locomotives by no later than 45 months from the Effective Date.

37.     Defendants shall require, or shall instruct any Third Parties to require, that any recipients receiving funds or equipment under the U.S. Mitigation Program shall provide to Defendants or to the Third Party a written certification that the recipient will, within a reasonable time, permanently destroy or salvage for parts the replaced locomotive engines upon acceptance of such funds or equipment. For avoidance of doubt, the crankshaft and block shall be destroyed.

38.     In the event that Defendants determine that it is impractical to complete the U.S. Mitigation Program identified in Paragraph 35, Defendants shall notify the United States in accordance with Section XVI. Within 21 Days of providing notice, Defendants shall submit to the United States a supplemental mitigation plan ("Supplemental Mitigation Plan") for review and approval in accordance with Section V (Approval of Submissions; U.S./CARB Decision-Making). The Supplemental Mitigation Plan shall provide:

     a.      A description of the proposed Supplemental Mitigation Project(s);

     b.      A plan for implementing the Supplemental Mitigation Project(s);

     c.      A proposed number of Supplemental Environmental Project(s) to conduct; and

Case 8:25-cv-01948-DOC-KES   Document 1   Filed 08/29/25   Page 103 of 211   Page
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 78 of 148
ID #:103

        d.      The proposed schedule for implementation of the Supplemental Mitigation

Plan.

39.     The United States shall respond to Defendants' proposed Supplemental

Mitigation Plan pursuant to Paragraph 13 within 30 Days. If the United States fails to make a

determination within 30 Days of receipt of the proposal, Defendants may, at their discretion,

consider the plan to be denied for the purpose of invoking Dispute Resolution pursuant to

Section XII (Dispute Resolution) of this Consent Decree. The Parties shall otherwise adhere to

the requirements set forth in Section V (Approval of Submissions; U.S./CARB Decision-

Making). Upon approval, conditional approval, or partial approval by the United States,

Defendants shall implement the Supplemental Mitigation Plan according to the schedule for

implementation contained therein. Such a schedule for implementation shall supersede the

schedule for implementation contained in Paragraphs 35 and 36.

40.     Defendants shall continue to implement the U.S. Mitigation Program and submit

semi-annual reports under Paragraph 42.c.i until evidence is provided that 15 line-haul

locomotives have been repowered in accordance with Paragraph 35.a.

41.     <u>California Mitigation Program</u>. Defendants have entered into a separate

agreement with California, which is intended to fully mitigate the total lifetime excess $NO_x$

emissions from the Subject Vehicles in California as claimed by California. That agreement is

set forth in a separate proposed consent decree between Defendants and California (the

"California Partial Consent Decree") that has been lodged contemporaneously with this Consent

Decree.

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 104 of 211   Page
ID #:104
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 79 of 148

## IX.    REPORTING REQUIREMENTS

42.    <u>Consent Decree Compliance Reports</u>.  Defendants shall submit separate semi-annual Consent Decree compliance reports to the United States, EPA, and CARB that include the content specified in the subparagraphs below.  An agency shall not receive the content of a subparagraph unless the agency is specifically identified in the subparagraph or the agency otherwise requests the content.

    a.    <u>Emission Modification Program</u>.

        i.    To CARB only:  Each Eligible Vehicle, listed by Emission Modification Category, VIN, Model, Model Year, and Test Group that has received an Approved Emission Modification in California and the date of such modification pursuant to Appendix A, Paragraph 3 (Modification of Eligible Vehicles with Approved Emission Modification) since the last semi-annual report submitted by Defendants, which information shall be reported in an Excel data spreadsheet;

        ii.    To CARB only:  Defendants' progress toward reaching the California Passenger Vehicle EMP Rate and California Sprinter EMP Rate since the last semi-annual report submitted by Defendants;

        iii.    To CARB only:  Each Subject Vehicle registered in California at the time of the report, listed by Emission Modification Category, VIN, Model, Model Year, and Test Group that, based on current information available to Defendants, has been resold or, exported,

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 105 of 211   Page
ID #:105
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 80 of 148

and the date of such resale or export, pursuant to Appendix A,
Paragraph 6 (Resale and Export of Subject Vehicles) since the last
semi-annual report submitted by Defendants, or which has been
rendered permanently inoperable or destroyed, and the date of such
rendering or destruction since the last semi-annual report submitted
by Defendants, which information shall be reported in an Excel
data spreadsheet;

iv.     To CARB only: Any Eligible Vehicle by Emission Modification
Category, VIN, Model, Model Year, and Test Group for which the
Approved Emission Modification was sought by an Eligible Owner
or Eligible Lessee in California, but not applied, and the date on
which the modification was sought, pursuant to Appendix A,
Paragraph 8 (Grounds for Refusal to Apply the Modification to an
Eligible Vehicle), and the grounds for Defendants' decision not to
install the Approved Emission Modification since the last semi-
annual report submitted by Defendants, which information shall be
reported in an Excel data spreadsheet;

v.     To CARB only: A compilation of all notices and information
distributed to Eligible Owners or Eligible Lessees in California
pursuant to Appendix A, Paragraph 15 (Consumer Emission
Modification Disclosure) since the last semi-annual report
submitted by Defendants, including any updates to the public

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 106 of 211   Page
ID #:106
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 81 of 148

website specified in Appendix A, Paragraph 16 (Online Access to Information);

vi.   To CARB only: A compilation of all notices and information distributed to Dealers in California pursuant to Appendix A, Paragraph 17 (Dealer Disclosures) since the last semi-annual report submitted by Defendants;

vii.   To the United States, EPA, and CARB: Additionally, Defendants shall provide the United States, EPA, and CARB with any information reasonably requested and in the possession of Defendants related to Defendants' compliance with the Emission Modification Program requirements within 30 Days of the request by the agency or agencies, or longer with the requesting Party's agreement. Defendants shall provide the information only to the requesting agency or agencies.

viii.   To the United States, EPA, and CARB: For each of the National Sprinter EMP Rate, the National Passenger Vehicle EMP Rate, the California Sprinter EMP Rate, and the California Passenger Vehicle EMP Rate, in the semi-annual Consent Decree compliance report following the earlier of the applicable date specified in Appendix A, Paragraph 4 or the date Defendants meet the respective EMP Rate, Defendants shall provide an assessment as to whether Defendants have met the respective EMP Rate, and they shall provide a list in an Excel data spreadsheet, by VIN and

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 107 of 211   Page
ID #:107
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 82 of 148

separated by vehicles located within California and outside of California, of: (1) every Subject Vehicle that Defendants assert has received an AEM under the terms of this Consent Decree; (2) every Subject Vehicle that Defendants assert has been permanently removed from commerce; and (3) every Subject Vehicle that Defendants assert has been purchased by Defendants by the date specified in Appendix A, Paragraph 4.

b.    <u>In-Use Testing</u>.

    i.    To EPA and CARB: A summary of all activities since the last semi-annual report submitted by Defendants, if any, relating to in-use testing under Paragraph 19, including the selection and screening of Subject Vehicles, in-use verification testing of IUVT Vehicles, and in-use confirmatory testing of IUCP Vehicles.

    ii.    To EPA and CARB: Any data required by Paragraph 19.a and Paragraph 19.b.i.A.

c.    <u>Mitigation</u>.

    i.    Defendants shall submit to the United States semi-annual reports that identify the number of Environmental Mitigation Projects in progress and completed by the date of the submission of each semi-annual report.

    ii.    The parties agree that until termination of the Consent Decree in accordance with Section XX, any information submitted under Section VIII that provides the identity or any identifying

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 108 of 211   Page
ID #:108
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 83 of 148

information of any Third Party or locomotive owner, as well as any information reported pursuant to Paragraph 42.c.i, shall be treated as CBI, provided that Defendants follow the procedures set forth in Paragraph 84 and 40 C.F.R. Part 2. Further, Defendants shall take reasonable measures to protect the confidentiality of such information.

iii.  <u>Additional Certification</u>. In the first semi-annual report required by Paragraph 42.c.i, Defendants shall certify in accordance with Paragraph 48 that:

A.   They are not required to perform the U.S. Mitigation Program by any federal, state, or local law or regulation or by any agreement, grant, or as injunctive relief awarded in any other action in any forum;

B.   Defendants are unaware of any other person who is required by law to, or, as of the Date of Lodging, otherwise planned or intended to, construct, perform, or implement the U.S. Mitigation Program.

C.   The U.S. Mitigation Program is not a project that Defendants were planning or intending to construct, perform, or implement other than in settlement of the claims resolved in the Consent Decree;

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 109 of 211    Page
ID #:109
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 84 of 148

        D.       Defendants have not received and will not receive credit for the U.S. Mitigation Program in any other enforcement action; and

        E.       Defendants will not receive any reimbursement for any of the costs they expend implementing the U.S. Mitigation Program from any person, except to the extent that Defendants reimburse each other for the costs of implementing the U.S. Mitigation Program.

    d.    <u>Data</u>. All data shall be reported using the number of significant figures in which the pertinent standard, limit, or requirement is expressed.

43.    <u>Timing of Reports</u>. Unless otherwise specified in this Consent Decree, or the Parties otherwise agree in writing:

    a.    To the extent semi-annual or annual reporting is required under this Consent Decree, Defendants shall submit each report one month after the end of the applicable prior six-month period (*i.e.*, by January 31 or July 31) or annual calendar period (*i.e.*, by January 31), that shall cover the prior six-month period or prior annual calendar period, respectively, and the items specified elsewhere in this Consent Decree.

    b.    The first report shall be due by the last Day of the month following the end of the first six-month period, or annual calendar period, as applicable, after this Consent Decree is entered. However, if this Consent Decree is entered fewer than 45 Days before the end of the first six-month period, the first report shall not be due until the last Day of the month following

the end of the second six-month period after entry. Reporting shall
continue until this Consent Decree is terminated in accordance with
Section XX (Termination).

44.    <u>Reporting of Violations</u>.

a.    <u>Reporting of Violations</u>.  If Defendants violate, or reasonably believe they
may violate, a requirement of this Consent Decree for which a stipulated
penalty applies under Paragraph 53, and Defendants have not remedied or
will not remedy the violation within ten Business Days of the Day
Defendants reasonably learn that the violation occurred or may occur,
Defendants shall notify the United States and CARB of such violation and
its likely duration, in writing, within ten Business Days of the Day
Defendants first reasonably learn that the violation occurred or may occur,
with an explanation of the violation's likely cause. Within an additional
four Business Days, Defendants shall notify the United States and CARB
in writing of the remedial steps taken, or to be taken, to prevent or
minimize such violation, and the dates on which such remedial steps are to
be, or have been taken. If Defendants believe the cause of a violation
cannot be fully explained at the time the report is due, Defendants shall so
state in the report. Defendants shall investigate the cause of the violation
and shall then submit an amendment to the report, including a full
explanation of the cause of the violation, within 30 Days of the Day
Defendants reasonably believe they have determined the cause of the
violation.  Nothing in this Paragraph or the following Paragraph relieves

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 111 of 211   Page
ID #:111
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 86 of 148

Defendants of their obligation to provide the notice required by Section XI (Force Majeure).

b.  <u>Semi-Annual Report of Violations.</u>  On January 31 and July 31 of each year, Defendants shall submit a summary to the United States and CARB of any violations of this Consent Decree that occurred during the preceding six months (or potentially shorter period for the first semi-annual report).  The summary shall include: (1) the date of the violation; (2) a brief description of the violation; (3) a brief description of steps taken to remedy the violation; and (4) for violations Defendants are required to report under Paragraph 44.a, a list of violations previously reported and the date the notice of violation was sent.  If no violations occurred during the reporting period, Defendants shall submit a statement that no violations occurred.

45.    Whenever Defendants reasonably believe any violation of this Consent Decree or any other event affecting Defendants' performance under this Consent Decree may pose an immediate threat to the public health or welfare or the environment, Defendants shall notify EPA and CARB by telephone and email as soon as possible, but no later than 24 hours after Defendants first reasonably believe the violation or event may pose an immediate threat to the public health or welfare or the environment.  This procedure is in addition to the notice requirements set forth in Paragraph 44.

46.    Unless specified elsewhere in this Consent Decree, all reports shall be submitted to the persons designated in Section XVI (Notices).

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 112 of 211    Page
ID #:112
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 87 of 148

47.     All information required to be posted to a public web page by this Consent Decree shall be accessible on the public web page that Defendants use to administer the Emission Modification Program pursuant to Appendix A, Paragraph 16, and a link to such web page shall be accessible from Defendants' primary consumer website in the United States. This web page link shall be provided to EPA and CARB with Defendants' signature pages to this Consent Decree, and Defendants shall send any new web page link to EPA and CARB within ten Business Days if the web page is moved.

48.     Each report submitted by Defendants under this Section shall be signed by an officer or Director of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, correct, and complete. I have no personal knowledge that the information submitted is other than true, correct, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

49.     Defendants agree that the certification required by Paragraph 48 is subject to 18 U.S.C. §§ 1001(a) and 1621, and California Penal Code §§ 115, 118, and 132.

50.     The certification requirement in Paragraph 48 does not apply to emergency or similar notifications where compliance would be impractical.

51.     The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

Case 8:25-cv-01948-DOC-KES   Document 1   Filed 08/29/25   Page 113 of 211   Page
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 88 of 148
ID #:113

52.     Any information provided pursuant to this Consent Decree may be used by the
United States or California in any proceeding to enforce the provisions of this Consent Decree
and as otherwise permitted by law.

## X.     STIPULATED PENALTIES

53.     Defendants shall be liable for stipulated penalties to the United States and
California for violations of this Consent Decree as specified in this Section, unless excused under
Section XI (Force Majeure). There shall be only one stipulated penalty assessed per violation
against the Defendants, for which they shall be jointly and severally liable. A violation includes
failing to perform any obligation required by the terms of this Consent Decree, including any
work plan or schedule approved under this Consent Decree, according to all applicable
requirements of this Consent Decree and within the specified time schedules established by or
approved under this Consent Decree.

    a.     <u>Late Payment of Civil Penalty</u>. If Defendants fail to pay the civil penalty
required under Section IV (Civil Penalty) of this Consent Decree when
due, Defendants shall pay stipulated penalties as follows for each Day the
payment is late:

| Penalty per Day | Period of Noncompliance |
| --- | --- |
| Interest | 1st through 4th Day (per 28 U.S.C. § 1961) |
| $50,000 | 5th through 30th Day |
| $100,000 | 31st through 45th Day |
| $200,000 | 46th Day and beyond. |

    b.     <u>Injunctive Relief Requirements: Section VI, Paragraph 18 (Emission
Modification Program), Appendices A and B, and their Attachments</u>.

        i.     <u>Failure to Establish Emission Modification Program Call Center</u>.
If Defendants fail to establish and maintain an Emission

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 114 of 211   Page
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 89 of 148
ID #:114

Modification Program call center as required by Appendix A,
Paragraph 1, Defendants shall pay the following stipulated
penalties for each Day that the call center is delayed:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 10th Day |
| $4,000 | 11th through 30th Day |
| $15,000 | 31st Day and beyond. |

ii.  Failure to Establish Emission Modification Program Website. If
Defendants fail to establish and maintain a website for the
Emission Modification Program as required by Appendix A,
Paragraphs 1 and 16, Defendants shall pay the following stipulated
penalties for each Day the website is not maintained:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $2,000 | 1st through 14th Day |
| $10,000 | 15th through 30th Day |
| $50,000 | 31st Day and beyond. |

iii.  Failure to Timely Initiate Offer of AEM. If Defendants fail to
make an Approved Emission Modification available within 15
Business Days of the date specified in Appendix A, Paragraph
15.a, Defendants shall pay the following stipulated penalties for
each Day the offer is delayed:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $10,000 | 1st through 14th Day |
| $20,000 | 15th through 30th Day |
| $35,000 | 31st Day and beyond. |

iv.  Early Termination of Emission Modification Program. If
Defendants terminate an Emission Modification Program for any

Eligible Vehicle prior to the date specified in Appendix A, Paragraph 7 (15 years after the Model Year of the Subject Vehicle or 8 years after the approval of the applicable Approved Emission Modification), Defendants shall pay the following stipulated penalty for each Day on which the Emission Modification Program should have been offered but was not:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $4,000 | 1st through 30th Day |
| $10,000 | 31st through 60th Day |
| $20,000 | 61st Day and beyond. |

v.  Failure to Provide Emission Modification Program Disclosures. If Defendants fail to execute the disclosures as required by Appendix A, Paragraph 15 or Paragraph 17, Defendants shall pay the following stipulated penalties for each Day such disclosure is not provided:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $2,000 | 1st through 14th Day |
| $5,000 | 15th through 30th Day |
| $10,000 | 31st Day and beyond. |

vi.  Misleading Disclosures or Advertisements. If Defendants provide any materially misleading or inaccurate disclosure to any Eligible Owner or Eligible Lessee regarding the individual owner or lessee's rights or available remedies under the Emission Modification Program, including, but not limited to, any rights or available remedies under the Warranty provisions set forth in

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 116 of 211    Page
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 91 of 148
ID #:116

Appendix A, Paragraphs 18–20, Defendants shall have 30 Days to correct such disclosure after EPA or CARB advise Defendants that the disclosure is materially misleading or inaccurate. If Defendants fail to correct the disclosure within 30 Days after such notification, the following stipulated penalty shall apply per Day the disclosure is not corrected after the 30 Days:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $10,000 | 1st through 14th Day |
| $25,000 | 15th through 30th Day |
| $50,000 | 31st Day and beyond. |

vii. <u>Failure to Comply with Labeling Requirements</u>. If Defendants fail to ensure that any Eligible Vehicle that receives the Approved Emission Modification is affixed with a label, as required by Appendix A, Paragraph 13, before such vehicle is sold, leased, offered for sale or lease, otherwise introduced into commerce, or returned to the Eligible Owner or Eligible Lessee, or if the information included in any such label is incorrect, Defendants shall pay a stipulated penalty of $1,000 per label, per vehicle, provided that no stipulated penalty shall accrue for the first 15 Days that the label is not affixed.

viii. <u>No Release of Private Party Claims</u>. If Defendants require any release of liability for any legal claims that an Eligible Owner or Eligible Lessee may have against Defendants or any other person solely in exchange for receiving the Approved Emission

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 117 of 211   Page
ID #:117
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 92 of 148

Modification, or if Defendants require any customer payment or release of any Eligible Owner's or Eligible Lessee's right in exchange for performing the Approved Emission Modification, in violation of Appendix A, Paragraphs 7 and 11, Defendants shall pay a stipulated penalty of $7,500 per affected vehicle.

ix.   <u>Failure to Honor Warranties</u>.

A.   If Defendants fail to honor or cause any Dealer to fail to honor the Extended Modification Warranty described in Appendix A, Paragraph 18, Defendants shall pay a stipulated penalty of $20,000 for each vehicle for which the Extended Modification Warranty was not properly honored. In addition, Defendants shall reimburse the affected Eligible Owner or Eligible Lessee any amount paid by the Eligible Owner or the Eligible Lessee to Defendants or to a Dealer because of the failure to honor the Extended Modification Warranty. Defendants' liability for stipulated penalties for failure to honor the Extended Modification Warranty shall not accrue unless and until there have been 100 instances of action or inaction that would give rise to a stipulated penalty. Once the threshold number of instances is reached, Defendants shall be liable for every instance of failure to honor the Extended Modification Warranty.

B.     Notwithstanding the requirements of Paragraph 53.b.ix.A above, if the requirements of Paragraph 18.a and 18.b are satisfied, Defendants shall not be liable for any stipulated penalty for failure to honor the Extended Modification Warranty described in Appendix A, Paragraph 18, unless and until the Class Action Settlement claims review committee considers and finally adjudicates a warranty claim dispute and finds in favor of the Eligible Owner or the Eligible Lessee in accordance with the process required in the Class Action Settlement. In such a case, Defendants shall pay a stipulated penalty of $20,000 for each warranty claim dispute that the Class Action Settlement review committee considers and finally adjudicates in favor of the Eligible Owner or the Eligible Lessee in accordance with the process required in the Class Action Settlement. In addition, Defendants shall reimburse the Eligible Owner or the Eligible Lessee any amount paid by the Eligible Owner or the Eligible Lessee to Defendants or to a Dealer because of the failure to honor the Extended Modification Warranty. Defendants' liability for failure to honor the Extended Modification Warranty shall not accrue until there have been 100 instances in which the Class Action Settlement claims review committee considers and finally

adjudicates a warranty claim dispute in favor of the Eligible Owner or the Eligible Lessee in accordance with the process required in the Class Action Settlement. Once the threshold number of instances is reached, Defendants shall be liable for every instance in which the Class Action Settlement review committee considers and finally adjudicates a warranty claim dispute in favor of the Eligible Owner or the Eligible Lessee in accordance with the process required in the Class Action Settlement.

x.      <u>Penalties for Export, Sale, or Re-Sale of Unmodified Vehicles</u>.  If, after the Date of Lodging of this Consent Decree or after the date of approval of the applicable Emission Modification, whichever is later, Defendants sell, lease, introduce into commerce, or cause or arrange for any Dealer or other entity to do the foregoing, or fail to instruct its Dealers not to sell, lease, or introduce into commerce any Subject Vehicle that has not received an Approved Emission Modification in violation of the requirements of Appendix A, Paragraphs 5 or 6, Defendants shall pay $25,000 per affected Subject Vehicle.  If, after the Date of Lodging of this Consent Decree, Defendants export, or fail to instruct Dealers not to export, from the United States to another country, any Subject Vehicle that has not received an Approved Emission Modification in violation of the requirements of Appendix A, Paragraph 6, except where that

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 120 of 211   Page
ID #:120
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 95 of 148

Subject Vehicle is exported to Germany as permitted by Appendix A, Paragraph 6, Defendants shall pay $25,000 per affected Subject Vehicle.

xi.   <u>Failure to Submit a Complete Emission Modification Proposal Report or OBD Interim Report</u>. If Defendants fail to timely submit or resubmit a complete proposed Emission Modification Proposal Report as required under Appendix B, Paragraph 4, or fail to timely submit or resubmit a complete OBD Interim Report as required under Appendix B, Paragraph 3 (which shall include failure to submit any required content in either the Emission Modification Proposal Report or the OBD Interim Report, or to complete testing in accordance with Appendix B), the following stipulated penalties shall accrue for each Day the report remains incomplete:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $2,000 | 1st through 14th Day |
| $10,000 | 15th through 30th Day |
| $50,000 | 31st Day and beyond. |

xii.   <u>Failure to Submit an Emission Modification Proposal Report that Meets the Emission Standard, Emission Standard First Threshold, or Emission Standard Upper Threshold</u>. If Defendants' proposed Emission Modification fails to meet the Emission Standard for the relevant Emission Modification Category, Defendants shall pay the following stipulated penalties per Eligible Vehicle as of the date

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 121 of 211   Page
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 96 of 148
ID #:121

specified in Appendix A, Paragraph 4 in that Emission

Modification Category (but not per Day):

(1)     below the Emission Standard First Threshold, but
above the Emission Standard: $7,000

(2)     below the Emission Standard Upper Threshold, but
above the Emission Standard First Threshold:
$16,000

(3)     above the Emission Standard Upper Threshold:
$25,000.

xiii.     <u>Failure to Provide EPA or CARB with Test Vehicles, Equipment,
or Software</u>. If Defendants fail to provide a Test Vehicle,
equipment, or software within 45 Days of a request by
EPA/CARB, as provided in Appendix B, Paragraph 5.b,
Defendants shall pay the following stipulated penalty per Test
Vehicle for each Day the Test Vehicle is not provided:

| Penalty per Day | Period of Noncompliance |
| --- | --- |
| $5,000 | 1st through 14th Day |
| $20,000 | 15th through 30th Day |
| $50,000 | 31st Day and beyond. |

xiv.     <u>Failure to Comply with Prohibition on Defeat Devices</u>. If
Defendants propose to modify, modify, or cause to be modified, a
Subject Vehicle after the Effective Date by updating such vehicle
with a configuration of software and calibrations that contains a
Defeat Device, Defendants must pay a stipulated penalty to the
United States and CARB of $20,000,000 per Defeat Device (but
not per vehicle).

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 122 of 211   Page
ID #:122
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 97 of 148

xv.      <u>Failure to Disclose AECDs</u>. If a proposed Emission Modification or Approved Emission Modification includes an AECD that Defendants have not listed and described in the Updated AECD Document for that Emission Modification Category as of the date of submission of the relevant Emission Modification Proposal Report, Defendants shall pay the following stipulated penalties:

(1)     $1,000,000 per undisclosed AECD that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use (but not per vehicle), and

(2)     $100,000 per undisclosed AECD that is wholly emissions neutral or that improves the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use (but not per vehicle).

xvi.      <u>Failure to Comply with Post-Entry Provisions Related to Modification of the Subject Vehicles Updated with the AEM</u>. If, after implementing the Approved Emission Modification, Defendants fail to follow the procedures in Appendix A, Paragraph 14 for modifying the Subject Vehicles, Defendants shall pay to the United States and CARB a stipulated penalty of:

(1)     $900,000 for each failure to submit a proposal in accordance with the requirements in Appendix A, Paragraph 14.a (but not per vehicle); and

(2)     $500,000 for each failure to submit a report to EPA and CARB in accordance with the requirements of Appendix A, Paragraph 14.b (but not per vehicle).

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 123 of 211   Page
ID #:123
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 98 of 148

xvii.      <u>Failure to Meet the Emission Modification Program Rate</u>. If

Defendants fail to achieve an Emission Modification Program Rate

by the dates required in Appendix A, Paragraph 4, Defendants

shall pay a stipulated penalty of:

      (1)    $9,137,866.78 for each percentage point that the
National Sprinter EMP Rate falls short of 85
percent;

      (2)    $6,445,600.34 for each percentage point that the
National Passenger EMP Rate falls short of 85
percent;

      (3)    $1,485,665.16 for each percentage point that the
California Sprinter EMP Rate falls short of 85
percent; and

      (4)    $1,325,908.64 for each percentage point that the
California Passenger EMP Rate falls short of 85
percent.

In calculating any payment under this Paragraph 53.b.xvii, each

Emission Modification Program Rate shall be rounded to the

nearest percentage point, except that any number between 84

percent and 85 percent shall be considered a one percent shortfall

for calculation of the relevant stipulated penalty.

c.      <u>Injunctive Relief Requirements: Section VI, Paragraphs 18 and 18.a (OBD</u>

<u>Requirements)</u>.

i.      <u>Pre-Approved OBD Noncompliances</u>.  Within 30 Days of the

Effective Date, Defendants shall pay to CARB $35,436,600 for the

Cluster 1 Pre-Approved OBD Noncompliances and $7,271,300 for

the Cluster 5 Pre-Approved OBD Noncompliances.  Within 30

Days of the Effective Date, Defendants shall pay to the United States $21,804,800 for the Cluster 1 Pre-Approved OBD Noncompliances and $5,796,000 for the Cluster 5 Pre-Approved OBD Noncompliances.  Defendants shall also follow the additional extended warranty provisions of Appendix A, Paragraph 18.d.i.A and with respect to ten Cluster 1 Pre-Approved OBD Noncompliances, as determined by EPA/CARB, and with respect to seven Cluster 5 Pre-Approved OBD Noncompliances, as determined by EPA/CARB.

ii.     <u>Additional OBD Noncompliances.</u>  Within 30 Days of EPA/CARB's approval of the Emission Modification Proposal Report of each EMC in an OBD Cluster, Defendants shall pay to CARB the stipulated penalty required under Paragraph 53.c.ii.A or 53.c.ii.B, as applicable, per OBD Noncompliance determined by EPA/CARB in the approval of the Report.  In the event that Defendants report any OBD Noncompliance in an Emission Modification Proposal Report of an EMC that was not present in a previously submitted EMC Emission Modification Proposal Report within the same OBD Cluster, Defendants shall pay to CARB the amount provided for under Paragraph 53.c.ii.A or 53.c.ii.B, as applicable, for that newly-reported OBD Noncompliance, even if the number of OBD Noncompliances is the same for each EMC within a Cluster.

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 125 of 211    Page
ID #:125
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 100 of 148

A.    <u>Class 1 Additional OBD Noncompliances</u>.  If EPA/CARB

determine that one or more Subject Vehicles fail to comply

with the OBD requirements in the applicable version of

13 C.C.R. § 1968.2, and if such failure is not a Pre-

Approved OBD Noncompliance under Appendix B,

Paragraph 2.f.i.A or a DOC OBD Noncompliance under

Paragraph 12 or 13 of the California Partial Consent

Decree, and Defendants disclose the failure to comply in

the respective Emission Modification Proposal Report for

each Emission Modification Category to which the failure

to comply applies, such failure shall be known as a Class 1

Additional OBD Noncompliance, and Defendants shall pay

to CARB a stipulated penalty per OBD Cluster, per OBD

Noncompliance of:

(1)    $339,900 per OBD Noncompliance for
        Cluster 2;
(2)    $214,850 per OBD Noncompliance for
        Cluster 3; and
(3)    $224,650 per OBD Noncompliance for
        Cluster 4.

For avoidance of doubt, this subparagraph also applies if

Defendants report any failure to comply in the respective

Emission Modification Proposal Report for the Emission

Modification Category to which the failure applies that

Defendants would also report under Paragraphs 19.a and

19.c.

B.      Class 2 Additional OBD Noncompliances.  If EPA/CARB determine that one or more Subject Vehicles fail to comply with the OBD requirements in the applicable version of 13 C.C.R. § 1968.2, and if such failure is not a Pre-Approved OBD Noncompliance under Appendix B, Paragraph 2.f.i.A or listed in Appendix B, Attachment L, a Class 1 Additional OBD Noncompliance, or a DOC OBD Noncompliance under Paragraph 12 or 13 of the California Partial Consent Decree, and Defendants disclose the failure to comply in the respective Emission Modification Proposal Report for each Emission Modification Category to which the failure applies, such failure shall be known as a Class 2 Additional OBD Noncompliance, and Defendants shall pay to CARB a stipulated penalty per OBD Cluster, per OBD Noncompliance of:

(1)     $509,850 per OBD Noncompliance for Cluster 2;

(2)     $322,275 per OBD Noncompliance for Cluster 3;

(3)     $336,975 per OBD Noncompliance for Cluster 4; and

(4)     $337,050 per OBD Noncompliance for Cluster 5.

For avoidance of doubt, this subparagraph also applies if Defendants report any failure to comply in the respective Emission Modification Proposal Report for the Emission Modification Category to which the failure applies that

99

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 127 of 211    Page
ID #:127
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 102 of 148

Defendants would also report under Paragraph 19.a.

iii.     <u>Unreported OBD Noncompliances</u>.  If EPA and CARB determine

that one or more Subject Vehicles fail to comply with the OBD

requirements in the applicable version of 13 C.C.R. § 1968.2 and

Defendants do not disclose such failure to comply in the Emission

Modification Proposal Report for each Emission Modification

Category, and if such failure is not a Pre-Approved OBD

Noncompliance, Class 1 or Class 2 Additional OBD

Noncompliance, or DOC OBD Noncompliance under Paragraph

12 or 13 of the California Partial Consent Decree, Defendants shall

pay to the United States and CARB a stipulated penalty per OBD

Cluster, per OBD Noncompliance of:

(1)    $10,902,400 per OBD Noncompliance for Cluster
        1;
(2)    $3,881,400 per OBD Noncompliance for Cluster 2;
(3)    $2,271,900 per OBD Noncompliance for Cluster 3;
(4)    $2,072,000 per OBD Noncompliance for Cluster 4;
        and
(5)    $1,932,000 per OBD Noncompliance for Cluster 5.

For avoidance of doubt, this subparagraph also applies in the event

that Defendants report any failure to comply under Paragraph 19.a

and the failure is not a Pre-Approved OBD Noncompliance, a

Class 1 or Class 2 Additional OBD Noncompliance, or a DOC

OBD Noncompliance under Paragraph 12 or 13 of the California

Partial Consent Decree.

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 128 of 211   Page
ID #:128
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 103 of 148

iv. <u>Section 1968.5 OBD Noncompliances</u>.  If an Approved Emission
Modification fails to comply with the applicable version of
13 C.C.R. § 1968.5(b)(6) (except 13 C.C.R. § 1968.5(b)(6)(C)(ii),
(c)(3), (c)(4) (2016), and except for a DOC OBD Noncompliance
under Paragraph 12 or 13 of the California Partial Consent
Decree), Defendants shall pay to the United States and CARB a
stipulated penalty of $1,000 per Subject Vehicle as of the date in
Appendix A, Paragraph 4, per Section 1968.5 OBD
Noncompliance, and may, within 30 Days of receiving EPA's and
CARB's determination of 13 C.C.R. § 1968.5 Noncompliances,
seek EPA's and CARB's approval for a modification related to the
Approved Emission Modification under Appendix A, Paragraph 14
to remedy the failure to comply with the applicable version of
13 C.C.R. § 1968.5(b)(6).

v. <u>Inspection and Maintenance Mandatory Recall</u>.  If an Approved
Emission Modification contains an OBD Noncompliance
referenced in the applicable version of 13 C.C.R.
§ 1968.5(b)(6)(C)(ii), except for a DOC OBD Noncompliance
under Paragraph 12 or 13 of the California Partial Consent Decree,
Defendants shall pay to the United States and CARB a stipulated
penalty per OBD Cluster, per OBD Noncompliance of:

(1)  $10,902,400 per OBD Noncompliance for Cluster
1;
(2)  $3,881,400 per OBD Noncompliance for Cluster 2;
(3)  $2,271,900 per OBD Noncompliance for Cluster 3;

(4)     $2,072,000 per OBD Noncompliance for Cluster 4; and

(5)     $1,932,000 per OBD Noncompliance for Cluster 5.

Additionally, Defendants shall submit to EPA and CARB for review and approval a remedial plan in accordance with 13 C.C.R. § 1968.5(d) to address each Noncompliance, and shall recall each affected Eligible Vehicle consistent with 13 C.C.R. § 1968.5(d) and this Consent Decree. Defendants shall not be subject to the OBD recall provisions if an Eligible Vehicle fails or is otherwise not able to complete the Inspection and Maintenance program because insufficient miles have been accumulated on the vehicle to clear any fault codes or Inspection and Maintenance readiness flags following application of the Approved Emission Modification.

d.    <u>Injunctive Relief Requirements: Section VI, Paragraph 19 (Subject Vehicle In-Use Testing).</u>

i.    <u>Failure to Complete In-Use Testing Requirements.</u>  If Defendants fail to complete In-Use Testing in accordance with Paragraphs 19.a or 19.b of this Consent Decree, Defendants shall pay to the United States and CARB a stipulated penalty for each Day of such failure:

| Penalty per Day | Period of Noncompliance |
| --- | --- |
| $5,000 | 1st through 14th Day |
| $20,000 | 15th through 30th Day |
| $50,000 | 31st Day and beyond. |

Case 8:25-cv-01948-DOC-KES   Document 1   Filed 08/29/25   Page 130 of 211   Page
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 105 of 148
ID #:130

ii.    <u>Failure to Provide Notice in Advance of In-Use Testing</u>.  If
Defendants fail to notify EPA/CARB of testing in accordance with
Paragraph 19.b.vi (Notification of Testing), Defendants shall pay
to the United States and CARB a stipulated penalty for each Day
of such failure:

| <u>Penalty per Day</u> | <u>Period of Noncompliance</u> |
|---|---|
| $2,000 | 1st through 14th Day |
| $3,000 | 15th through 30th Day |
| $10,000 | 31st Day and beyond. |

iii.    <u>Failure to Comply with Emission Standard, Emission Standard
First Threshold, or Emission Standard Upper Threshold</u>.  If, as
determined in accordance with Paragraph 19.b.v, Eligible Vehicles
updated with the Approved Emission Modification fail to meet the
Emission Standard, Emission Standard First Threshold, or the
Emission Standard Upper Threshold for the relevant Emission
Modification Category approved in the Emission Modification
Proposal Report for the relevant Emission Modification Category,
Defendants shall pay the following stipulated penalties, as
applicable, per Eligible Vehicle in that Emission Modification
Category (but not per Day):

(1)    below the Emission Standard First Threshold, but
above the Emission Standard: $7,350

(2)    below the Emission Standard Upper Threshold, but
above the Emission Standard First Threshold:
$16,800

(3)    above the Emission Standard Upper Threshold:
$26,250.

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 131 of 211   Page
ID #:131
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 106 of 148

e.    <u>Injunctive Relief Requirements: Section VII (Corporate Compliance)</u>.

    i.    <u>Corporate Compliance Obligations</u>.  Defendants shall pay stipulated penalties per Day for each Day that Defendants fail to meet the requirements for compliance with the provisions of Section VII. In the event that a failure to meet a requirement is covered by a specific stipulated penalty listed below, Defendants shall only pay the stipulated penalties as required by that specific subparagraph. If no specific stipulated penalty is listed for a failure to meet a particular requirement, Defendants shall pay stipulated penalties for failing to meet that requirement as follows:

| Penalty per Day | Period of Noncompliance |
| --- | --- |
| $1,000 | 1st through 14th Day |
| $2,500 | 15th through 30th Day |
| $10,000 | 31st Day and beyond. |

    ii.    <u>Segregation of Duties</u>.  Defendants shall pay stipulated penalties per Day for each Day that Defendants fail to implement and maintain any segregation of duty requirement in Paragraph 23 as follows:

| Penalty per Day | Period of Noncompliance |
| --- | --- |
| $2,000 | 1st through 14th Day |
| $10,000 | 15th through 30th Day |
| $50,000 | 31st Day and beyond. |

    iii.    <u>Integrity Code</u>.  Defendants shall pay stipulated penalties per Day for each Day that the modification to their Integrity Code is

Case 8:25-cv-01948-DOC-KES   Document 1   Filed 08/29/25   Page 132 of 211   Page
ID #:132
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 107 of 148

overdue or is otherwise not in accordance with the requirements in

Paragraph 24 as follows:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,500 | 15th through 30th Day |
| $10,000 | 31st Day and beyond. |

iv.     <u>Employee Discipline and Compensation</u>.   Defendants shall pay

stipulated penalties per Day for each Day that they fail to

implement and maintain any employee discipline and

compensation requirement in Paragraph 25 as follows:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,500 | 15th through 30th Day |
| $10,000 | 31st Day and beyond. |

v.      <u>Whistleblower System</u>.  Defendants shall pay stipulated penalties

per Day for each Day that they fail to implement and maintain any

BPO system requirement in Paragraph 26 as follows:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $2,000 | 1st through 14th Day |
| $5,000 | 15th through 30th Day |
| $10,000 | 31st Day and beyond. |

vi.     <u>Risk Assessment</u>. Defendants shall pay stipulated penalties per

Day for each Day that they fail to comply with any requirement

concerning risk assessments in Paragraph 27 as follows:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,500 | 15th through 30th Day |

105

$10,000              31st Day and beyond.

vii.     <u>Business Partner and Supplier Integrity Management</u>.  Defendants

shall pay stipulated penalties per Day for each Day that they fail to

comply with any requirement concerning business partner and

supplier integrity management in Paragraph 28 as follows:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,500 | 15th through 30th Day |
| $10,000 | 31st Day and beyond. |

viii.    <u>Compliance Management System and Technical Compliance</u>

<u>Management System</u>.  Defendants shall pay stipulated penalties

per Day for each Day that they fail to comply with any requirement

concerning their compliance management system and technical

compliance management system in Paragraph 29 as follows:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,500 | 15th through 30th Day |
| $10,000 | 31st Day and beyond. |

ix.      <u>Technical Compliance and Certification Control Measures</u>.

Defendants shall pay stipulated penalties per Day for each Day that

they fail to comply with any requirement concerning technical

compliance and certification control measures, including, but not

limited to, PEMs testing, in Paragraph 30 as follows:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $2,000 | 1st through 14th Day |
| $5,000 | 15th through 30th Day |

Case 8:25-cv-01948-DOC-KES    Document 1    Filed 08/29/25    Page 134 of 211    Page
ID #:134
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 109 of 148

$10,000               31st Day and beyond.

x.      Reporting of Corporate Compliance.  Defendants shall pay

stipulated penalties per Day for each Day that they fail to report on

corporate compliance measures, including, but not limited to,

failing to include corporate compliance information in other

reports, as required in Paragraph 31 as follows:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,500 | 15th through 30th Day |
| $10,000 | 31st Day and beyond. |

xi.     Internal Audits.  Defendants shall pay stipulated penalties per Day

for each Day that they fail to comply with any requirement

concerning internal audits, including, but not limited to, the

implementation of corrective measures, in Paragraph 32 as

follows:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 30th Day |
| $2,500 | 31st through 60th Day |
| $10,000 | 61st Day and beyond. |

xii.    External Compliance Consultant.  Defendants shall pay stipulated

penalties per Day for each Day that they fail to comply with any

requirement concerning the External Compliance Consultant in

Paragraph 33 as follows:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $2,000 | 1st through 30th Day |

Case 8:25-cv-01948-DOC-KES   Document 1   Filed 08/29/25   Page 135 of 211   Page
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 110 of 148
ID #:135

|        |                        |
|--------|------------------------|
| $10,000 | 31st through 60th Day |
| $35,000 | 61st Day and beyond.   |

f.   <u>Injunctive Relief Requirements: Section VIII (Mitigation).</u>

    i.   If Defendants fail to repower or rebuild 15 non-Tier 4 compliant line-haul locomotives as required by Paragraph 35 by the specified deadlines contained in Paragraph 35.a and 36, Defendants shall pay the following stipulated penalties per violation per Day, unless Defendants submit and implement a Supplemental Mitigation Plan pursuant to Paragraphs 38 and 39:

| Penalty per Day | Period of Noncompliance |
|-----------------|-------------------------|
| $5,000          | 1st through 14th Day     |
| $10,000         | 15th through 30th Day    |
| $20,000         | 31st Day and beyond      |

    ii.   In the event Defendants determine that it is impractical to complete the U.S. Mitigation Program pursuant to Paragraph 38, if Defendants fail to submit a Supplemental Mitigation Plan that complies with the requirements of Paragraph 38, or fail to take all actions required by the Supplemental Mitigation Plan in accordance with the schedules and requirements of the Supplemental Mitigation Plan as required by Paragraph 38, Defendants shall pay the following stipulated penalties per violation per Day, provided that no stipulated penalty shall accrue for failure to take an action required by the Supplemental Mitigation Plan in accordance with the schedules and requirements of the Supplemental Mitigation Plan if Defendants have

resubmitted, in whole or in part, the Supplemental Mitigation Plan
as required by Paragraph 38:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $5,000 | 1st through 14th Day |
| $10,000 | 15th through 30th Day |
| $20,000 | 31st Day and beyond |

g.     Reporting and Certification Requirements: Section IX (Reporting
Requirements).

i.     Timing, Content of Reports. The following stipulated penalties
shall accrue per violation per Day for each violation of the
requirements of Paragraph 43 (Timing of Reports) and Paragraph
42 (Consent Decree Compliance Reports):

| Penalty per Day | Period of Noncompliance |
|---|---|
| $2,000 | 1st through 14th Day |
| $5,000 | 15th through 30th Day |
| $10,000 | 31st Day and beyond. |

ii.     Reporting of Violations. The following stipulated penalties shall
accrue per violation per Day for each violation of the requirements
of Paragraph 44 (Reporting of Violations):

| Penalty per Day | Period of Noncompliance |
|---|---|
| $2,000 | 1st through 14th Day |
| $5,000 | 15th through 30th Day |
| $10,000 | 31st Day and beyond. |

iii.     Certification Requirements. For each violation of the certification
requirements of Paragraph 48 of this Consent Decree and
Appendix B, Paragraph 4.a.i.P, except for false statements as

described in Paragraph 53.g.iv, below, for which the stipulated penalty shall be as provided therein, Defendants shall have one opportunity to self-correct the violation within 15 Days of the applicable Submission, after which time, Defendants shall pay a stipulated penalty of $200,000 for each violation.

iv.    <u>False Statements</u>.  Defendants shall pay a stipulated penalty of $1,000,000 for each Submission required to be submitted pursuant to this Consent Decree that contains a knowingly false, fictitious, or fraudulent statement or representation of material fact.

h.    <u>Information Collection and Retention Requirements: Section XIII (Information Collection and Retention)</u>.

i.    If Defendant Mercedes-Benz USA fails to maintain within the United States a copy of all Records as required to be retained within the United States pursuant to Paragraph 81, Defendants shall pay stipulated penalties per Day for each Day that Defendant Mercedes-Benz USA fails to maintain such Records in the United States:

| Penalty per Day | Period of Noncompliance |
| --- | --- |
| $2,000 | 1st through 14th Day |
| $5,000 | 15th through 30th Day |
| $10,000 | 31st Day and beyond. |

ii.    If Defendants fail to provide the United States or CARB with an unredacted copy of a Record upon request, as required by

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 138 of 211   Page
ID #:138
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 113 of 148

Paragraph 82, Defendants shall pay stipulated penalties per Day for each Day that Defendants fail to provide such a Record:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,500 | 15th through 30th Day |
| $10,000 | 31st Day and beyond. |

54.     Stipulated penalties shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree, provided that there shall be only one stipulated penalty assessed per violation against the Defendants.

55.     The United States, in consultation with CARB, shall issue any demand for stipulated penalties in writing to Defendants, except for violations of Paragraph 53.c.ii, for which CARB shall issue any demand for stipulated penalties in writing to Defendants. The written demand for payment of stipulated penalties shall specifically identify the violation.

56.     Defendants shall pay any stipulated penalties to the United States and CARB, as applicable, within 30 Days of receiving the written demand. Defendants shall pay 75 percent of the total stipulated penalty amount due to the United States and 25 percent to CARB, except for violations of Paragraphs 53.c.iii to 53.c.v, for which Defendants shall pay 50 percent of the total stipulated penalty amount due to the United States and 50 percent to CARB, and violations of Paragraph 53.c.ii, for which Defendants shall pay the entire stipulated penalty amount to CARB.

57.     Either the United States or CARB may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

Case 8:25-cv-01948-DOC-KES   Document 1   Filed 08/29/25   Page 139 of 211   Page
ID #:139
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 114 of 148

However, no action by either the United States or CARB may reduce or waive stipulated penalties due the other.

58.     Stipulated penalties continue to accrue as provided in Paragraph 54 during any dispute resolution period, but need not be paid unless determined to be owing and until the following:

      a.     If the dispute is resolved by agreement of the Parties or by a decision of EPA/CARB that is not appealed to the District Court, Defendants shall pay accrued penalties determined to be owing, together with interest as provided in Paragraph 62, to the United States and CARB, as applicable, within 30 Days after the effective date of the agreement or the receipt of EPA's/CARB's decision or order.

      b.     If the dispute is appealed to the District Court and the United States/California prevail(s) in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest as provided in Paragraph 62, to the United States and CARB, as applicable, within 60 Days of receiving the Court's decision or order, except as provided in Paragraph 58.c, below.

      c.     If any Party appeals the District Court's decision and the United States/California prevail(s) in whole or in part, Defendants shall pay all accrued penalties determined by the federal appellate court to be owing, together with interest as provided in Paragraph 62, to the United States and CARB, as applicable, within 15 Days of receiving the final appellate court decision.

Case 8:25-cv-01948-DOC-KES    Document 1    Filed 08/29/25    Page 140 of 211    Page
ID #:140
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 115 of 148

59.    <u>Obligations from Date of Lodging to the Effective Date</u>. Upon the Effective Date, the stipulated penalty provisions of this Consent Decree shall be retroactively enforceable with regard to any and all violations of Appendix A, Paragraph 6 and Appendix B, Paragraphs 3, 4, and 5.b that have occurred from the Date of Lodging to the Effective Date, provided that stipulated penalties that may have accrued between the Date of Lodging and the Effective Date may not be collected unless and until this Consent Decree is entered by the Court.

60.    Defendants shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 9, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

61.    Defendants shall pay stipulated penalties owing to CARB by check, accompanied by a Payment Transmittal Form (which CARB will provide to the addressee listed in Paragraph 9 after the Effective Date), with each check mailed to:

> California Air Resources Board
> Accounting Office
> P.O. Box 1436
> Sacramento, CA 95812-1436;

or by wire transfer, in which case Defendants shall use the following wire transfer information and send the Payment Transmittal Form to the above address prior to each wire transfer:

> State of California Air Resources Board
> c/o Bank of America, Inter Branch to 0148
> Routing No. 0260-0959-3 Account No. 01482-80005
> Notice of Transfer: Accounting; Fax: (916) 322-9612
> Reference: ARB Case # C00032.

Defendants are responsible for any bank charges incurred for processing wire transfers. Stipulated penalties paid to CARB under this Consent Decree shall be deposited into the Air Pollution Control Fund for the purpose of enhancing CARB's mobile source emissions control

Case 8:25-cv-01948-DOC-KES   Document 1   Filed 08/29/25   Page 141 of 211   Page
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 116 of 148
ID #:141

program through additional certification review, in-use evaluation, real-world testing,

enforcement actions, and other CARB activities related to the control of air pollution.

62.     If Defendants fail to pay stipulated penalties according to the terms of this

Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in

28 U.S.C. § 1961, accruing as of the date payment became due and continuing until payment has

been made in full. Nothing in this Paragraph shall be construed to limit the United States or

California from seeking any remedy otherwise provided by law for Defendants' failure to pay

any stipulated penalties.

63.     The payment of stipulated penalties and interest, if any, shall not alter in any way

Defendants' obligation to complete the performance of the requirements of this Consent Decree,

unless otherwise agreed to by the Parties in writing.

64.     <u>Non-Exclusivity of Remedy</u>. Stipulated penalties are not the United States' or

California's exclusive remedy for violations of this Consent Decree, including violations of this

Consent Decree that are also violations of law. Subject to the provisions of Section XIV (Effect

of Settlement/Reservation of Rights), the United States and California expressly reserve the right

to seek any other relief they deem appropriate for Defendants' violation of this Consent Decree

or applicable law, including but not limited to an action against Defendants for statutory

penalties where applicable, additional injunctive relief, mitigation or offset measures and/or

contempt. However, the amount of any statutory penalty assessed for a violation of this Consent

Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and

paid pursuant to this Consent Decree (to the United States or to CARB, respectively).

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 142 of 211   Page
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 117 of 148
ID #:142

## XI.    FORCE MAJEURE

65.    "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation.   The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (1) as it is occurring and (2) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized.   "Force majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree. Notwithstanding the foregoing, any failure by any supplier to deliver the Aftertreatment System hardware necessary for an Approved Emission Modification which delays or prevents the performance of any obligation under Section VI (Subject Vehicle Compliance), Appendix A, or Appendix B of this Consent Decree shall constitute "force majeure," and any COVID-19 public health crisis event—even though COVID-19 is already under way—which delays or prevents an obligation under Section VI (Subject Vehicle Compliance), Section VII (Corporate Compliance), Section VIII (Mitigation) (except Paragraph 41), Appendix A, or Appendix B may constitute "force majeure," provided in either instance that Defendants otherwise meet the requirements for force majeure under this Consent Decree.

66.    If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, for which Defendants intend or may intend to assert a claim of force majeure, whether or not caused by a force majeure event, Defendants shall provide notice by email and telephone to EPA/CARB, within seven Business Days of when

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 143 of 211   Page
ID #:143
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 118 of 148

Defendants first knew that the event might cause a delay. Within 14 Days thereafter, Defendants shall provide in writing to EPA/CARB an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay or the effect of the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare, or the environment. Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the requirements in this Paragraph shall preclude Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. For purposes of this Paragraph, Defendants shall be deemed to know of any circumstance of which Defendants, any entity controlled by Defendants, or Defendants' contractors (excluding any supplier delivering Aftertreatment System hardware necessary for an Approved Emission Modification) knew or should have known.

67.     If EPA/CARB agree that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA/CARB, as applicable, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA/CARB will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 144 of 211    Page
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 119 of 148
ID #:144

68.     If EPA/CARB do(es) not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA/CARB will notify Defendants in writing of its/their decision.  If EPA/CARB do(es) not provide a response within 30 Days after receipt of Defendants' written force majeure notice, Defendants may treat the absence of a response as a denial of the written force majeure notice.

69.     If Defendants elect to invoke the dispute resolution procedures set forth in Section XII (Dispute Resolution), they shall do so no later than 15 Days after receipt of EPA's/CARB's written notice or 15 Days after the 30 Day period referenced in the preceding Paragraph, as applicable.  In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of Paragraphs 65 and 66.  If Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree identified to EPA/CARB and the Court, as applicable.

XII.     DISPUTE RESOLUTION

70.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising between the Parties under or with respect to this Consent Decree.  Failure by the Defendants to seek resolution of a dispute under this Section shall preclude Defendants from raising any such issue as a defense to an action by the United States or California to enforce any obligation of Defendants arising under this Consent Decree.

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 145 of 211   Page
ID #:145
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 120 of 148

71.     <u>Informal Dispute Resolution.</u>  Any dispute subject to dispute resolution under this Consent Decree shall first be the subject of informal negotiations.   The dispute shall be considered to have arisen when Defendants send the United States and CARB a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute, including, where applicable, whether the dispute arises from a decision made by EPA and CARB jointly, or EPA or CARB individually.   The period of informal negotiations shall last for 30 Days after the date the Notice of Dispute is received by Plaintiffs, unless that period is modified by written agreement signed by all Parties.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States/CARB shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

72.     <u>Formal Dispute Resolution.</u>  Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States/CARB a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

73.     The United States/CARB shall serve its/their Statement of Position within 45 Days of receipt of Defendants' Statement of Position.  The United States'/CARB's Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States/CARB. The United States'/CARB's Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

Case 8:25-cv-01948-DOC-KES   Document 1   Filed 08/29/25   Page 146 of 211   Page
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 121 of 148
ID #:146

74.     Defendants may seek judicial review of the dispute by filing with the Court and

serving on the United States/CARB, in accordance with Section XVI (Notices), a motion

requesting judicial resolution of the dispute.  The motion must be filed within 30 Days of receipt

of the United States'/CARB's Statement of Position pursuant to the preceding Paragraph.  The

motion shall contain a written statement of Defendants' position on the matter in dispute,

including any supporting factual data, analysis, opinion, or documentation, and shall set forth the

relief requested and any schedule within which the dispute must be resolved for orderly

implementation of this Consent Decree.  The motion may not raise any issue not raised in

informal dispute resolution pursuant to Paragraph 71, unless the Plaintiffs raise a new issue of

law or fact in the Statement of Position.  If Defendants wish to raise in their motion seeking

judicial resolution of the dispute new facts that became available after the completion of the

informal dispute resolution process, Defendants shall re-initiate the dispute resolution process in

accordance with Paragraph 71 and include the new facts in the Notice of Dispute.

75.     The United States/California shall respond to Defendants' motion within the time

period allowed by the Local Rules of this Court.  Defendants may file a reply memorandum, to

the extent permitted by the Local Rules.

76.     <u>Standard of Review</u>

a.      <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as

otherwise provided in this Consent Decree, in any dispute brought

pursuant to Paragraph 74 that pertains to (1) the adequacy or

appropriateness of plans or procedures to implement plans, schedules, or

any other item that requires approval by EPA/CARB under this Consent

Decree, (2) the adequacy of the performance of work undertaken pursuant

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 147 of 211    Page
ID #:147
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 122 of 148

to this Consent Decree, and (3) all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendants shall have the burden of demonstrating, based on the administrative record, that the position of EPA/CARB is arbitrary and capricious or otherwise not in accordance with law based on the administrative record. For purposes of this Paragraph, EPA/CARB will maintain an administrative record of the dispute, which will contain all statements of position, including supporting documentation, submitted pursuant to this Section. Prior to the filing of any motion, the Parties may submit additional materials to be part of the administrative record pursuant to applicable principles of administrative law.

b.  <u>Other Disputes</u>. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 72, Defendants shall bear the burden of demonstrating by a preponderance of the evidence that their position complies with this Consent Decree.

77.  In any disputes brought under this Section, it is hereby expressly acknowledged and agreed that this Consent Decree was jointly drafted in good faith by the United States, California, and Defendants. Accordingly, the Parties hereby agree that any and all rules of construction to the effect that ambiguity is construed against the drafting party shall be inapplicable in any dispute concerning the terms, meaning, or interpretation of this Consent Decree.

78.  The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 148 of 211   Page
ID #:148
Case 1:20-cv-02564   Document 1   Filed 09/14/20   Page 123 of 148

Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 58. If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section X (Stipulated Penalties).

## XIII.   INFORMATION COLLECTION AND RETENTION

79.     The United States, CARB, and their representatives, including attorneys, contractors, and consultants (collectively, "Agency Representatives"), shall have the right of entry, upon presentation of credentials, at all reasonable times into any of Defendants' offices, plants, or facilities:

a.     to monitor the progress of activities required under this Consent Decree;

b.     to verify any data or information submitted to the United States or CARB in accordance with the terms of this Consent Decree;

c.     to inspect records related to this Consent Decree;

d.     to conduct or observe testing related to this Consent Decree, whereupon a representative of Defendants shall be given the opportunity to accompany the Agency Representatives conducting such testing;

e.     to obtain documentary evidence, including photographs and similar data, related to this Consent Decree;

f.     to assess Defendants' compliance with this Consent Decree; and

g.     for other purposes as set forth in 42 U.S.C. § 7542(b) and Cal. Gov't Code § 11180 et seq.

80.     Upon request, and for purposes of evaluating compliance with this Consent Decree, Defendants shall, as soon as is reasonably practicable, provide to EPA/CARB or the Agency Representatives at locations to be designated by EPA/CARB:

a.      a reasonable number of vehicles matching the configuration of the proposed Emission Modification in the applicable Emission Modification Proposal Report, pursuant to Appendix B, Paragraph 5.b hereto, for emissions testing;

b.      specified software, hardware, and related documentation for vehicles matching the configuration of the proposed Emission Modification in the applicable Emission Modification Proposal Report, pursuant to Appendix B, Paragraph 5.b hereto, including any tools needed for testing;

c.      reasonable requests for English translations of software or Defendants' documents; or

d.      other items or information that could be requested pursuant to 42 U.S.C. § 7542(a) or Cal. Gov't Code § 11180 et seq.

81.     Until three years after the termination of this Consent Decree, Defendants shall retain, and shall instruct their contractors and agents to preserve, all Records in their or their contractors' or agents' possession or control, or that come into their or their contractors' or agents' possession or control, that relate to Defendants' performance of their obligations under this Consent Decree. The United States and CARB have an interest in these Records, which are necessary to their ability to oversee and assess Defendants' compliance with the terms of this Consent Decree resolving the United States' and CARB's allegations in their respective Complaints.   Defendant Mercedes-Benz USA shall maintain within the United States a copy of

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 150 of 211    Page
ID #:150
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 125 of 148

all Records required to be retained by Defendants pursuant to this Paragraph, except for Records

that relate solely to Defendant Daimler AG's performance of its obligations under Section VII

(Corporate Compliance) to the extent that such Records are retained by Daimler AG pursuant to

this Paragraph. These information-retention requirements shall apply regardless of any contrary

corporate or institutional policies or procedures. Nothing in this Paragraph shall apply to any

documents in the possession, custody, or control of any outside legal counsel retained by

Defendants in connection with this Consent Decree or of any contractors or agents retained by

such outside legal counsel solely to assist in the legal representation of Defendants.

      82.     At any time during the three-year information-retention period of Paragraph 81,

upon request by the United States or CARB, a Defendant receiving a request shall provide to the

requesting Plaintiff copies of any Records required to be maintained under that Paragraph.

Defendant Daimler AG alone may apply reasonable redactions to Personal Information

contained in Records that relate to its performance of its obligations under this Consent Decree,

provided that Daimler AG retains original copies of such Records. However, Defendant Daimler

AG may not redact (1) the names of auditors who participated in any corporate audit conducted

pursuant to the requirements of Section VII (Corporate Compliance); or (2) the name of the

External Compliance Consultant retained pursuant to the requirements of Section VII (Corporate

Compliance). Upon request by the United States or CARB, Defendant Daimler AG shall provide

unredacted copies of such Records.

      83.     Defendants may assert that certain Records are privileged or protected as

provided under federal or California law. If Defendants assert such a privilege or protection,

they shall provide the following in writing: (1) the title of the Record; (2) the date of the Record;

(3) the name and title of each author of the Record; (4) the name and title of each addressee and

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 151 of 211   Page
ID #:151
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 126 of 148

recipient; (5) a description of the subject of the Record; and (6) the privilege or protection asserted by Defendants. However, Defendants may make no claim of privilege or protection regarding: (1) any data regarding the Subject Vehicles that Defendants are required to create or generate pursuant to this Consent Decree; or (2) the final version of a portion of any Record that Defendants are required to create or generate pursuant to this Consent Decree.

84.     Confidential Business Information.  Defendants may also assert that Records required to be provided under this Section or Section IX (Reporting Requirements) are protected as CBI under 40 C.F.R. Part 2 or 17 C.C.R. §§ 91000 et seq. As to any Record that Defendants seek to protect as CBI, Defendants and the United States and/or California, as applicable, shall follow the procedures set forth in 40 C.F.R. Part 2, and, for California, in 17 C.C.R. §§ 91000 et seq.

85.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or California pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain Records imposed by applicable federal or state laws, regulations, or permits.

## XIV.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

86.     Subject to the reservations of rights in this Section, this Consent Decree shall resolve and settle all of the United States' civil claims for civil penalties and injunctive relief against Defendants through the Date of Lodging for: (1) the violations alleged in the U.S. Complaint, (2) violations arising from or relating to the software, calibrations, and/or functions of the emission control system, combustion system, and transmission system for the Subject Vehicles, and (3) violations arising from or relating to Defendants' applications for a certificate

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 152 of 211    Page
ID #:152
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 127 of 148

of conformity for the Subject Vehicles and any information provided to EPA for the purpose of securing such certificates. Payment of the civil penalty described in Paragraph 9 above also resolves the civil claims of CBP, as set forth in the separate settlement agreement between Defendants and CBP.

87.     Subject to the reservations of rights in this Section, this Consent Decree shall resolve and settle all of California's civil claims for civil penalties and injunctive relief against Defendants through the Date of Lodging for: (1) the violations alleged in the California Complaint or any other allegations asserted by CARB before March 31, 2017, (2) violations arising from or relating to the software, calibrations, and/or functions of the emission control system, combustion system, and transmission system for the Subject Vehicles, and (3) violations arising from or relating to Defendants' applications for an executive order for the Subject Vehicles and any information provided to CARB for the purpose of securing such executive orders.

88.     Neither this Consent Decree nor Defendants' consent to its entry constitutes an admission by Defendants of violations alleged by EPA or CARB in the Complaints or any other allegations asserted by CARB before March 31, 2017, related to the Subject Vehicles. Defendants reserve all defenses and all rights and remedies, legal and equitable, available to them in any action by a non-party pertaining to the Act, or any other federal, state, or local statute, rule, or regulation.

89.     The United States and California reserve all legal and equitable remedies to enforce the provisions of this Consent Decree. The United States further reserves any claim(s) of any agency of the United States, other than EPA.

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 153 of 211   Page
ID #:153
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 128 of 148

90.     California further reserves, and this Consent Decree is without prejudice to any and all civil claims, rights, and remedies against Defendants with respect to:

    a.    Further injunctive relief, including prohibitory and mandatory injunctive provisions intended to enjoin, prevent, and deter future misconduct, and/or incentivize its detection, disclosure, and/or prosecution; or to enjoin false advertising, violation of environmental laws, violation of consumer laws, the making of false statements, or the use or employment of any practice that constitutes unfair competition;

    b.    Further injunctive relief pursuant to California Health and Safety Code as alleged in the California Complaint to mitigate the total lifetime excess emissions in California from the Subject Vehicles, which injunctive relief is fully set forth in and resolved by the California Partial Consent Decree, lodged concurrently with this Consent Decree;

    c.    Any part of any claims for the violation of securities or false claims laws;

    d.    Any criminal liability;

    e.    Any and all other claim(s) of any officer or agency of the State of California, other than CARB;

    f.    Any and all claims for relief to customers, including claims for restitution, refunds, rescission, damages, disgorgement;

    g.    Any and all claims of the California Attorney General, except those claims released and/or resolved by the California Partial Consent Decree, lodged concurrently with this Consent Decree; and

    h.    Any and all claims held by individual consumers.

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 154 of 211   Page
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 129 of 148
ID #:154

91.     This Consent Decree shall not be construed to limit the rights of the United States or California to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as specifically provided in Paragraphs 86–87. The United States and California further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at any of Defendants' facilities, or posed by Defendants' Subject Vehicles, whether related to the violations addressed in this Consent Decree or otherwise.

92.     In any subsequent administrative or judicial proceeding initiated by the United States or California for injunctive relief, civil penalties, or other appropriate relief relating to Defendants' violations, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or California in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraphs 86–87.

93.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and California do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 155 of 211    Page
ID #:155
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 130 of 148

Decree will result in compliance with provisions of the Act, or with any other provisions of federal, state, or local laws, regulations, or permits.

94.     This Consent Decree does not limit or affect the rights of Defendants or of the United States or California against any third parties not party to this Consent Decree, nor does it limit or affect the rights of third parties not party to this Consent Decree against Defendants, except as otherwise provided by law.

95.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XV.    COSTS

96.     The Parties shall bear their own costs of this action, including attorneys' fees, subject to Paragraph 90.e, except that the United States and California shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty, mitigation, or stipulated penalties due under this Consent Decree but not paid by Defendants.

## XVI.    NOTICES

97.     Unless otherwise specified in this Consent Decree, Materials shall be accompanied by a cover letter and submitted electronically as described below, unless such notices are unable to be uploaded to the CDX electronic system (in the case of EPA) or transmitted by email (in the case of any other party). For all notices to EPA, Defendants shall register for the CDX electronic system and upload such notices at https://cdx.epa.gov/epa_home.asp. All Emission Modification Proposal Reports, OBD Interim Reports, documents and data submitted pursuant to Paragraph 19 (Subject Vehicle In-Use Testing), and all revisions and amendments thereto, shall be submitted (1) on an electronic data

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 156 of 211   Page
ID #:156
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 131 of 148

site hosted by Daimler AG that is accessible to the United States, EPA, CARB, and California at all times until 60 Days after Termination of this Consent Decree, and from which the United States, EPA, CARB, and California are able to download all data hosted on that site; and (2) on a hard disk that must be mailed to the addresses specified below no later than the date that the next set of semi-annual reports are due after the relevant data has been uploaded to the data site, and an email specifying the method of mailing and tracking information shall be sent to the addressed below. If there is any discrepancy between the information submitted to the electronic data site and the information submitted on the hard disk, the information submitted to the data site shall control. Any notice that cannot be uploaded to CDX or the Daimler-hosted electronic data site or transmitted via email or via a secure server shall be provided in writing via overnight mail (and if any attachment is voluminous, it shall be provided on a disk, hard drive, or other equivalent successor technology) to the addresses below:

| | |
|---|---|
| As to the United States: | DOJ at the email, or if necessary, the mail addresses below<br>**and**<br>EPA (via CDX or the mail address below if CDX is not possible) |
| As to DOJ by email: | eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-5-2-1-11788 |
| As to DOJ by U.S. mail: | EES Case Management Unit<br>Environment and Natural Resources Division<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, D.C. 20044-7611<br>Re: DJ # 90-5-2-1-11788 |
| As to DOJ by overnight mail: | 4 Constitution Square<br>150 M Street, N. E.<br>Suite 2.900<br>Washington, D.C. 20002<br>Re: DJ # 90-5-2-1-11788 |

| As to EPA by email: | ortega.kellie@epa.gov |
| As to EPA by mail: | Director, Air Enforcement Division<br>1200 Pennsylvania Avenue NW<br>William J Clinton South Building<br>MC 2242A<br>Washington, D.C. 20460 |

Emission Modification Proposal Reports, OBD Interim Reports, documents and data submitted pursuant to Paragraph 18.a19 (Subject Vehicle In-Use Testing), and all revisions and amendments thereto sent via hard drive shall be further labelled, "Attn: Gregory Orehowsky," and "Time Sensitive."

Emission Modification Proposal Reports, OBD Interim Reports, documents and data submitted pursuant to Paragraph 19 (Subject Vehicle In-Use Testing), and all revisions and amendments thereto shall also be sent to OTAQ via hard drive at the following address:

Director, Compliance Division
USEPA National Vehicle and Fuel Emissions Laboratory
2565 Plymouth Road
Ann Arbor, MI 48105

Submissions to OTAQ shall be labelled, "Attn: Paul Dekraker" and "Time Sensitive."

| As to EPA by telephone: | 202-564-0652 |
| As to CBP by email: | Marta.Williams@cbp.dhs.gov |
| As to California: | CARB **and** CA AG at the email or mail addresses below, as applicable |
| As to CARB by email: | DaimlerCD@arb.ca.gov |
| As to CARB by telephone: | (916) 322-2884 |
| As to CARB by mail: | Chief Counsel<br>California Air Resources Board<br>Legal Office |

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 158 of 211   Page
ID #:158
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 133 of 148

|                          | 1001 I Street |
|--------------------------|---------------|
|                          | Sacramento, California 95814 |

| As to CA AG by email:    | gary.tavetian@doj.ca.gov |
|                          | josh.caplan@doj.ca.gov |

john.sasaki@doj.ca.gov

| As to CA AG by mail:     | Gary Tavetian |
|                          | Supervising Deputy Attorney General |
|                          | Natural Resources Law Section |
|                          | California Department of Justice |
|                          | 300 South Spring Street |
|                          | Los Angeles, CA 90013 |

Robert Byrne
Senior Assistant Attorney General
Natural Resources Section
Office of the Attorney General
P.O. Box 944255
Sacramento, CA 94244-2550

As to Defendants:        Gibson, Dunn & Crutcher, LLP, at the email or mail
                         addresses below, as applicable

                         Daimler AG, at the email or mail addresses below,
                         as applicable

                         MBUSA, LLC, at the email or mail addresses
                         below, as applicable

As to one or more of the
Defendants by email:     rludwiszewski@gibsondunn.com
                         sfletcher@gibsondunn.com
                         dirk.lindemann@daimler.com
                         hendrik.heitsch@daimler.com
                         matthew.j.everitt@mbusa.com
                         anthony.zepf@mbusa.com

As to one or more of the
Defendants by mail:      Raymond B. Ludwiszewski
                         Stacie B. Fletcher
                         GIBSON, DUNN & CRUTCHER LLP
                         1050 Connecticut Avenue Northwest
                         Washington, District of Columbia 20036
                         Telephone: (202) 955-8500

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 159 of 211    Page
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 134 of 148
ID #:159

Facsimile: (202) 467-0539

Dirk Lindemann
Hendrik Heitsch
DAIMLER AG
Mercedesstraße 120
Building 120, Floor 8
(HPC 096 – F 387)
70327 Stuttgart

Matthew J. Everitt
Anthony D. Zepf
MERCEDES-BENZ USA, LLC
One Mercedes-Benz Drive
Sandy Springs, GA 30328-4312

98.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided in the immediately preceding Paragraph.

99.     Materials submitted pursuant to this Section shall be deemed submitted upon uploading electronically, emailing, or mailing as required, except as provided elsewhere in this Consent Decree or by mutual agreement of the Parties in writing.

## XVII.  EFFECTIVE DATE

100.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter this Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Defendant hereby agrees that it shall be bound to perform duties scheduled to occur between the Date of Lodging and the Effective Date, and shall perform those duties pursuant to this Consent Decree. In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter this Consent Decree, then the preceding requirement to perform duties scheduled to occur between the Date of Lodging and the Effective Date shall terminate.

## XVIII. RETENTION OF JURISDICTION

101.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Consent Decree or entering orders modifying this Consent Decree, pursuant to Sections XII (Dispute Resolution) and XIX (Modification), or effectuating or enforcing compliance with the terms of this Consent Decree.

## XIX.    MODIFICATION

102.    Except as otherwise set forth in this Section or in Appendix A, Paragraph 14, the terms of this Consent Decree, including any attached Appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Consent Decree, it shall be effective only upon approval by the Court.

103.    The United States or California, as applicable, will file any non-material modifications with the Court. Once the non-material modification has been filed, Defendants shall post the filed version (with ECF stamp) on the website required by Appendix A, Paragraph 16 (Online Access to Information). The following modifications will be considered non-material: (1) changes to the method of submission of Materials unless this Consent Decree originally mandated that a Material be made public and the proposed change involves changing that method of submission to make it non-public; (2) extensions of time not to exceed 90 Days at a time or 180 Days cumulatively; and (3) corrections of scrivener's errors.

104.    Any disputes concerning modification of this Consent Decree shall be resolved pursuant to Section XII (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 76, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 161 of 211    Page
ID #:161
Case 1:20-cv-02564    Document 2-1    Filed 09/14/20    Page 136 of 148

## XX.   TERMINATION

105.    No earlier than five years after the Effective Date, after Defendants have

completed the requirements of Section VI (Subject Vehicle Compliance) and Section VIII

(Mitigation),  and Appendices A and B, have demonstrated that they are in compliance with the

requirements of Section VII (Corporate Compliance),  have complied with all other requirements

of this Consent Decree, and have paid the civil penalty and any accrued stipulated penalties as

required by this Consent Decree, Defendants may serve upon the United States and California a

request for termination,  stating that Defendants have satisfied those requirements,  together with

all necessary supporting  documentation.   Defendants may serve such a request for termination

notwithstanding  the requirements  of Appendix A, Paragraph 5 (Prohibition  on Sales of Vehicles

that Have Not Entered into Commerce); Appendix A, Paragraph 6 (Resale and Export of Subject

Vehicles); Appendix A, Paragraph 7 (Emission Modification  Available at No Cost); Appendix

A, Paragraph 16 (Online Access to Information);  and Appendix A, Paragraphs 18.a–e, 18.h, and

18.i (Extended Warranty for Modified Eligible  Vehicles).

106.    Following receipt by the United States and California  of Defendants' request for

termination,  the Parties shall confer informally  concerning the request and any disagreement  that

the Parties may have as to whether Defendants have satisfactorily complied  with the

requirements for termination  of this Consent Decree. If the United States, after consultation  with

California,  agrees that this Consent Decree may be terminated, the United States will file a

motion to terminate this Consent Decree, provided,  however, that the provisions  associated with

effectuating and enforcing Appendix A, Paragraph 5 (Prohibition  on Sales of Vehicles that Have

Not Entered into Commerce) and Appendix A, Paragraph 6 (Resale and Export of Subject

Vehicles) shall continue  in full force and effect for ten years from the Effective Date; and the

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 162 of 211    Page
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 137 of 148
ID #:162

provisions associated with effectuating and enforcing Appendix A, Paragraph 7 (Emission Modification Available at No Cost), Appendix A, Paragraph 16 (Online Access to Information), and Appendix A, Paragraphs 18.a–e, 18.h, and 18.i (Extended Warranty for Modified Eligible Vehicles) shall continue in full force and effect until those provisions terminate by their own terms.

107.    If the United States, after consultation with California, does not agree that this Consent Decree may be terminated, Defendants may invoke Dispute Resolution under Section XII. However, Defendants shall not seek Dispute Resolution of any dispute regarding termination until 45 Days after service of their request for termination.

## XXI.    PUBLIC PARTICIPATION

108.    This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding this Consent Decree disclose facts or considerations indicating that this Consent Decree is inappropriate, improper, or inadequate. California reserves the right to withdraw or withhold its consent if the United States does so. Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of this Consent Decree, unless the United States has notified Defendants in writing that it no longer supports entry of this Consent Decree.

## XXII.    SIGNATORIES/SERVICE

109.    Each undersigned representative of Defendants and California and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 163 of 211    Page
ID #:163
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 138 of 148

Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

110.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. For purposes of this Consent Decree, a signature page that is transmitted electronically (*e.g.*, by facsimile or emailed "PDF") shall have the same effect as an original.

111.    Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree, in which case Defendants' answer would be due 30 Days following the Court's order.

## XXIII. INTEGRATION

112.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Consent Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than deliverables that are subsequently submitted and approved pursuant to this Consent Decree, the Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 164 of 211   Page
ID #:164
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 139 of 148

## XXIV. 26 U.S.C. § 162(f)(2)(A)(ii)  IDENTIFICATION

113.    For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), the performance by Defendants of Section II (Applicability), Paragraph 5; Section V (Approval of Submissions; U.S./EPA/CARB Decision-Making), Paragraph 14; Section VI (Subject Vehicle Compliance), Paragraphs 18–19, and related Appendices A and B; Section VII (Corporate Compliance), Paragraphs 20–34, and related Appendix D; Section VIII (Mitigation), Paragraphs 35–40; Section IX (Reporting Requirements), Paragraphs 42–44 and 46–48; and Section XIII (Information Collection and Retention), Paragraphs 79–82, is restitution or required to come into compliance with law.

## XXV.  FINAL JUDGMENT

114.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, California, and Defendants.

## XXVI. HEADINGS

115.    Headings to the Sections and Subsections of this Consent Decree are provided for convenience and do not affect the meaning or interpretation of the provisions of this Consent Decree.

## XXVII.    APPENDICES

116.    The following Appendices are attached to and part of this Consent Decree:

Appendix A is the Emission Modification Program;

Appendix A, Attachment A is the Approved Label for Emission Modification Category 1;

Appendix A, Attachment B is the Approved Consumer Emission Modification Disclosures for Categories 1 and 9;

Appendix A, Attachment C is the Approved Dealer Emission Modification Disclosures for Emission Modification Categories 1 and 9;

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 165 of 211    Page
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 140 of 148
ID #:165

Appendix B is Protocol for Assessment of Proposed Emission Modification (Test Protocol);

Appendix B, Attachment A is Emission Plus Test Vehicles and OBD Demonstration Vehicles;

Appendix B, Attachment B is Sample Signal Data;

Appendix B, Attachment C is Special Cycles;

Appendix B, Attachment D is PEMS Routes;

Appendix B, Attachment E is Data Parameters for Flat Files;

Appendix B, Attachment F is Emission, Special Cycle and Fuel Economy Testing Overview;

Appendix B, Attachment G is NVH Protocol;

Appendix B, Attachment H is Drivability Protocol;

Appendix B, Attachment I is Emission Modification Configuration Components (table);

Appendix C is ECU Signals for In-Use Vehicle Testing with Production ECU;

Appendix D is Defendants' Compliance Operating Plan; and

Appendix E is Information and Parameters Reported for Gasoline Vehicles Prior to Certification.

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 166 of 211   Page
ID #:166
Case 1:20-cv-02564   Document 1   Filed 09/14/20   Page 141 of 148

Dated and entered this __ Day of _____, 2020,


_____
UNITED STATES DISTRICT JUDGE

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 167 of 211    Page
ID #:167
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 142 of 148

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. Daimler AG & Mercedes-Benz USA, LLC*

FOR THE UNITED STATES OF AMERICA:

9/11/2020
Date

JEFFREY BOSSERT CLARK
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


LORI JONAS
Assistant Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice


STEFAN J. BACHMAN
Trial Attorney
STEVEN O'ROURKE
Senior Attorney
JEROME MacLAUGHLIN
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC 20044-7611

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 168 of 211   Page
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 143 of 148
ID #:168

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. Daimler AG & Mercedes-Benz USA, LLC*

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

_9/10/2020_
Date

SUSAN PARKER BODINE
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC  20460


ROSEMARIE A. KELLEY
Director, Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC  20460


EVAN BELSER
Acting Director, Air Enforcement Division,
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC  20460


BRIANNA IDDINGS
KELLIE ORTEGA
Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., NW
Washington, DC  20460

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 169 of 211   Page
ID #:169
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 144 of 148

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *California v. Daimler AG & Mercedes-Benz USA, LLC*

FOR THE PEOPLE OF THE STATE OF CALIFORNIA BY AND THROUGH THE CALIFORNIA AIR RESOURCES BOARD:

GARY E. TAVETIAN
Supervising Deputy Attorney General
JOSHUA M. CAPLAN
JOHN SASAKI
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
600 West Broadway, Suite 1800
San Diego, CA 92101

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 170 of 211    Page
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 145 of 148
ID #:170

THE UNDERSIGNED PARTY enters into the Consent Decree in the matter of *California v. Daimler AG & Mercedes-Benz USA, LLC*

FOR THE CALIFORNIA AIR RESOURCES BOARD:

9/9/2020
Date

MARY D. NICHOLS
Chair
California Air Resources Board
1001 I Street
Sacramento CA 95814

RICHARD W. COREY
Executive Officer
California Air Resources Board
1001 I Street
Sacramento CA 95814

ELLEN M. PETER
Chief Counsel
D. ARON LIVINGSTON
Assistant Chief Counsel
ALEXANDRA KAMEL
Senior Attorney
Legal Office
California Air Resources Board
1001 I Street
Sacramento CA 95814

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 171 of 211   Page
Case 1:20-cv-02564   Document 2-1   Filed 09/14/20   Page 146 of 148
ID #:171

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. Daimler AG & Mercedes-Benz USA, LLC* and in the matter of *California v. Daimler AG & Mercedes-Benz USA, LLC*

FOR DAIMLER AG:

13.8.2020
—————————
Date

ppa _(signature)_

DR. JÜRGEN GLEICHAUF
Vice President Legal Product
DAIMLER AG
Mercedesstraße 120
Building 120, Floor 8
(HPC 096 – F 387)
70327 Stuttgart

ppa _(signature)_

DR. TORSTEN EDER
Vice President Mercedes-Benz Powertrain
DAIMLER AG
Mercedesstraße 137
Building 128, Floor 9
(HPC 019 – C 750)
70327 Stuttgart

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. Daimler AG & Mercedes-Benz USA, LLC* and in the matter of *California v. Daimler AG & Mercedes-Benz USA, LLC*

FOR MERCEDES-BENZ USA, LLC:

*13 Aug 2020*
Date

MATTHEW EVERITT
Vice President and General Counsel
MERCEDES-BENZ USA, LLC
One Mercedes-Benz Drive
Sandy Springs, GA 30328-4312

CHRISTIAN TREIBER
Vice President Customer Service
MERCEDES-BENZ USA, LLC
One Mercedes-Benz Drive
Sandy Springs, GA 30328-4312

145

Case 8:25-cv-01949-DOC-KES   Document 1   Filed 08/29/25   Page 173 of 211   Page
ID #:173
Case 1:20-cv-02564   Document 1-1   Filed 09/14/20   Page 148 of 148

COUNSEL FOR DAIMLER AG
AND MERCEDES-BENZ USA,
LLC

8/14/20
Date

RAYMOND B. LUDWISZEWSKI
STACIE B. FLETCHER
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue Northwest
Washington, District of Columbia 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539
rludwiszewski@gibsondunn.com
sfletcher@gibsondunn.com

**Sincerely,**
Brian Conway
27662 Aliso Creek Rd. #10111
beiwulf1976@gmail.com
949.828.7995
[Quoted text hidden]

---

**Dorais, Patrick@DCA** <Patrick.Dorais@dca.ca.gov>                                        Tue, Mar 18, 2025 at 2:51 PM
To: Brian Conway <beiwulf1976@gmail.com>
Cc: "Hughes, Edward@DCA" <Edward.Hughes@dca.ca.gov>, David Austin <david.austin@austinllp.com>

Good afternoon, Mr. Conway,

The Bureau of Automotive Repair (BAR) appreciates your inquiry and the opportunity to respond. We recognize the frustrations you
are experiencing in getting to the root cause of the issues with your Mercedes Benz. Unfortunately, BAR does not have statutory
authority over an automobile manufacturer's warranty provisions and we cannot compel Mercedes Benz of America to provide any
benefit under the warranty. Program Representative Hughes was correct in identifying this dispute as something that will likely need
to be resolved in court.

Please see below responses to your questions.

1. **Why did BAR not require FJMB to provide diagnostic documentation, as mandated by BPC § 9884.9?**

  Business and Professions Code section 9884.9 establishes the requirements for an Automotive Repair Dealer (ARD) to provide an
estimate to and obtain authorization from a consumer prior to commencing repairs. There is not a provision requiring an ARD to
provide diagnostic documentation to a consumer. The only requirement for diagnostic results is established by Title 16, California
Code of Regulations (CCR) section 3356, which requires an ARD to list, describe and identify any diagnosis on the final invoice,
which Fletcher Jones did in this instance.

2. **Why did BAR allow FJMB to impose storage fees despite Title 16, CCR § 3353?**

  CCR section 3353 establishes further estimate requirements pursuant to BPC section 9884.9 and does not speak to storage.
Currently, BAR has not finalized any regulations relevant to storage. In this transaction, it appears Fletcher Jones is following the
provisions of Civil Code section 3068 in charging storage fees.

3. **Does BAR officially consider Title 16, CCR § 3353 inapplicable in this case? If so, what legal basis supports this
position?**

  CCR section 3353 is applicable to every automotive repair transaction conducted in the State of California and it appears Fletcher
Jones complied with the estimate and authorization requirements therein during the transactions reviewed by BAR in response to
this complaint.

4. **Why did BAR categorize this as a "civil matter" rather than exercising regulatory authority?**

  BAR's complaint process focuses on investigating and facilitating a resolution to a dispute between the parties to      an
automotive repair transaction. If we are unsuccessful in that endeavor, the parties may choose to pursue other avenues   to obtain a
resolution to the dispute, including the courts. BAR does not have statutory authority to compel either   party to take a specific action.
Only the courts can issue such orders. Any contemplation of enforcement action is separate and apart from the complaint process
and not subject to disclosure until and if formal discipline is sought.

5. **Was BAR leadership involved in the decision to close this case without enforcement?**

  As stated above, any contemplation of enforcement action is separate and apart from the complaint process and not subject to
disclosure until and if formal discipline is sought. The actions of Program Representative Hughes in handling this complaint were
within BAR's statutory authority and further review is unnecessary.


Thank you again for the opportunity to respond to your inquiry.


Sincerely,

**EXHIBIT B**
**eMail from Patrick Dorais, Cheif of the Bureau of Automotive Repair**
**dated; 18 MAR 2025**

PATRICK DORAIS

Dear Trustee Kosmala,

I respectfully submit this notice in advance of my §341(a) Meeting of Creditors to ensure clarity regarding my vehicle loan and related access issues:

1. **Vehicle Loan with Capital One Auto Finance**
   - o I have a Mercedes-Benz vehicle financed through **Capital One Auto Finance**.
   - o It is my intent to **reaffirm this obligation** and retain the vehicle.

2. **Payment Portal Access**
   - o My **online payment portal has been blocked by Capital One**.
   - o Based on my communications and experience, I believe this is to ensure that no inadvertent violation of the **automatic stay** occurs during my bankruptcy case.
   - o I understand that once the bankruptcy concludes, portal access will be restored and I will be able to resume regular online payments.

3. **Reaffirmation Agreement Documents**
   - o The reaffirmation paperwork, along with other financial records, is inside my residence at 27662 Aliso Creek Road.
   - o On August 21, 2025, the Orange County Sheriff executed a post-petition lockout in violation of the automatic stay, and I currently cannot access my residence.
   - o Once turnover or access is restored, I will promptly retrieve the reaffirmation paperwork or request duplicate forms directly from Capital One if necessary.

4. **Request for Trustee Acknowledgment**
   - o I wish to be transparent regarding these circumstances so there is no misunderstanding of my intent to reaffirm.
   - o I respectfully request that the estate recognize both the vehicle and my reaffirmation intent, and note the ongoing barriers (creditor-controlled portal suspension and post-petition lockout) as circumstances outside my control.

I appreciate your attention to this matter and will be prepared to answer any related questions under oath at the §341(a) meeting.

Respectfully submitted,
**Brian Conway**
Debtor, Pro Se
27662 Aliso Creek Rd, Unit 10111
Aliso Viejo, CA 92656
Phone: 949-828-7995
Email: beiwulf@yahoo.com

8/27/25, 1:40 PM    Gmail - Formal Complaint to the U.S. Environmental Protection Agency – Mercedes-Benz USA AEM Warranty Violations & Emission…

Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 176 of 211    Page ID #:176

- **Requests for emissions compliance documentation that MBUSA has refused to provide.**

I request a formal review of this complaint and look forward to EPA's response regarding this matter. Please contact me at your earliest convenience for further documentation or supporting evidence.

**Sincerely,**
Brian Conway
949.828.7995
WDDHF2EBXBA449406

---

**4 attachments**

📄 **30JAN2025 - email to Alex Kniazuk @ Fletcher Jones regarding RCA request and more information.pdf**
815K

📄 **20250130 - email sent to public relations mercedes benz north america.pdf**
456K

📄 **MBUSA_certified letter with email to Alex Kniazuk Fletcher Jones MB RCA request and more.pdf**
550K

📄 **Repair Records Request_legal obligation.pdf**
198K

---

**ComplianceInfo** <ComplianceInfo@epa.gov>                                    Mon, Feb 3, 2025 at 5:40 AM
To: Brian Conway <beiwulf1976@gmail.com>, ComplianceInfo <ComplianceInfo@epa.gov>


Hello Mr. Conway,

Your complaint is being sent to the Office of Enforcement and Compliance (OECA). You will receive communications from that office.


Kind regards,

Susan Myers

Office of Transportation and Air Quality

Implementation, Analysis and Compliance Division

**Supporting the US EPA through a Cooperative Agreement with the Center for Workforce Inclusion**


---

**From:** Brian Conway <beiwulf1976@gmail.com>
**Sent:** Friday, January 31, 2025 4:21 PM
**To:** ComplianceInfo <ComplianceInfo@epa.gov>
**Subject:** Formal Complaint to the U.S. Environmental Protection Agency – Mercedes-Benz USA AEM Warranty Violations & Emissions Noncompliance

**EXHIBIT C**
**U.S. Environmental Protection Agency - eMail Acknowledgement**
**dated: 4 FEB 2025**
**Confirming complaint forwarded to the Office of Enforcement and Complaiance Assurance (OECA)**

**Caution:** This email originated from outside EPA, please exercise additional caution when deciding whether to open attachments or click on provided links.

**To:** U.S. Environmental Protection Agency (EPA) – Compliance Division

[Quoted text hidden]

[Quoted text hidden]

---

**Brian Conway** <beiwulf1976@gmail.com>                                           Tue, Feb 4, 2025 at 12:08 PM
To: "Meisenbach, Caitlin" <Meisenbach.Caitlin@epa.gov>

Hello Ms. Meisenbach,

Please see below for the requested information.

VIN: WDDHF2EBXBA449406

Thank you for viewing this information and escalating to the appropriate department. I also appreciate the information shared and will also proceed with suggested avenues and anything else that avails itself to me regarding sorting this matter out properly.

Respectfully,
Brian Conway
949.828.7995
[Quoted text hidden]

---

**Meisenbach, Caitlin** <Meisenbach.Caitlin@epa.gov>                               Tue, Feb 4, 2025 at 12:32 PM
To: Brian Conway <beiwulf1976@gmail.com>

Thank you! I have passed that along.

Caitlin Kelleher Meisenbach

[Quoted text hidden]
[Quoted text hidden]

---

**Brian Conway** <beiwulf1976@gmail.com>                                           Thu, Feb 13, 2025 at 3:31 PM
To: "Meisenbach, Caitlin" <Meisenbach.Caitlin@epa.gov>

**Subject:** Follow-Up on AEM Warranty Inquiry – Difficulty Reaching Class Action Counsel

Dear Ms. Meisenbach,

I appreciate your response to my formal complaint and your guidance regarding potential avenues for assistance. Following your recommendation, I have attempted to contact Steve Berman's office at Hagens Berman Sobol Shapiro LLP regarding the Mercedes-Benz AEM warranty and emissions issues.

Despite multiple calls over the past week, including leaving messages, I have not received a response. Today, I was transferred to Jessica Thompson, who informed me she is no longer handling this matter. She then directed me to Shelby Smith, providing the same general office number I had initially dialed. Upon calling, I was sent directly to voicemail without further assistance.

**EXHIBIT C**

**U.S. Environmental Protection Agency - eMail Acknowledgement**
**dated: 4 FEB 2025**
**Confirming complaint forwarded to the Office of Enforcement and Complaiance Assurance (OECA)**

# Multi Point Inspection                $1043.00 🛒

🔴 4 Wheel Alignment (Non Distronic)

Comments: 4 Wheel Alignment (Non Distronic) WITH NEW TIRES

Repair Estimate:        $349.00  ⓘ

DECLINE                  APPROVE

---

🛑 **ENGINE REPLACEMENT DUE TO OIL CONSUMPTION**                    ⌃

Comments: RECOMMEND REPLACEMENT OF ENGINE

⚠️ Needs Immediate Attention: (5 items)

APPROVE REMAINING( $36959.40)

---

🔴 **EXHAUST DPF**                    ⌃

Comments: FOUND THE DIESEL PARTICULATE FILTER FULL OF SOOT DUE TO OIL CONSUMPTION OF ENGINE. RECOMMEND REPLACING DPF WITH ENGINE REPLACEMENT.

No.

Kompression in bar
Compression value in bar
Pression en bar

Dat.

10    15    20    25    30    35    40

Zyl.
1
2
3
4
5
6
7
8

Best. Nr. 5 1341 250 00

**MOTOMETER**

www.motometer.de

**The #8 one is for the Meter test, disregard**

**EXHIBIT D**
**Fletcher Jones Motorcars Invoice #348310**
**dated: 30 JAN 2025**
**Engine Cylinder Compression Test**

# FLETCHER JONES
## M·O·T·O·R·C·A·R·S
### NEWPORT BEACH

CUSTOMER #: 1143162

**348310**

\*INVOICE\*

3300 Jamboree Rd.  Phone (949) 718-3200
Service Fax (949) 718-3380
**NEWPORT BEACH, CALIFORNIA 92660**
MON - FRI: 7:00 A.M. - 7:00 P.M.
SAT: 8:00 A.M. - 1:00 P.M.  Sprinter Closed Saturday
BAR # ARD 164440  EPA # CAR 000040113  EPA # CAL 000466672
EPA # CAL000266553

BRIAN CONWAY
27662 ALISO CREEK RD
ALISO VIEJO, CA 92656-3881
HOME:949-828-7995 CONT:949-828-7995
BUS:            CELL:949-828-7995

PAGE 1

SERVICE ADVISOR: 2555 ALEX KNIAZUK

| COLOR | YEAR | MAKE/MODEL | | VIN | LICENSE | MILEAGE IN/ OUT | TAG |
|---|---|---|---|---|---|---|---|
| SILVER | 11 | MERCEDES E350 | | WDDHF2EBXBA449406 | 8PCS243 | 114933/114956 | T27441 |

| IN SERVICE DATE | PROD. DATE | WARR. EXP. | TARGET DATE | PO NO. | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 28MAY11 DD | | | 17:00 14JAN25 | | | CASH | 30JAN25 |

| R.O. OPENED | | READY | OPTIONS: | DLR:05101 ENG:3.0 Liter | | | |
|---|---|---|---|---|---|---|---|
| 14JAN25 | | 30JAN25 | | | | | |

| LINE OPCODE TECH TYPE HOURS | LIST | NET | TOTAL |
|---|---|---|---|
| A C/S CHECK ENGINE LIGHT IS ON. CHECK AND ADVISE | | | |

CAUSE: .
      070641 CHECK ASSEMBLY PARTS OF ENGINE:
            .................. AS PER FAULT CODE
         9691   WEL                                             (N/C)
      498800 DIESEL PARTICULATE FILTER (DPF) REPLACE
         9691   WEL                                             (N/C)
      271048 ADAPTATION PERFORM (AFTER REPAIRS)
         9691   WEL                                             (N/C)
      1 212-490-59-00-80 DIESEL PARTICULATE FILTER              (N/C)
      #32 761 FWC
      1 212-490-59-00-70 CORE DIESEL PARTICULATE
      FILTER                                                    (N/C)
      1 000-490-14-41 CLAMP                                     (N/C)
      1 220-492-02-81 THRUST RING                               (N/C)
      1 203-490-06-41 CLAMP                                     (N/C)
      1 219-492-00-80 FLANGE GASKET                             (N/C)
      3 000-990-67-03 SCREW                                     (N/C)
PARTS:      0.00  LABOR:      0.00  OTHER:      0.00  TOTAL LINE A:      0.00
114956 WARR (333-338411 AUTHO FOR 2.02M DIAG, TESTING, DIAG,
PERFORMED PROCEDURES PER TIPS)(BLUETEC WARR EXT) (tips case# 246220934)
- COMPLAINT : C/S CHECK ENGINE LIGHT IS ON. CHECK AND ADVISE. CAUSE :
FOUND THE DIESEL PARTICULATE FILTER FILL LEVEL @ 27% FULL ROAD TESTED
AND UNABLE TO PERFORM REGENERATION PROCESS. CORRECTION : VERIFIED
CONCERN. PERFORMED ROAD TEST AND FOUND VEHICLE LACKING POWER. CONNECTED
BATTERY CHARGER. CONNECTED XENTRY AND CHECKED DIAGNOSTIC CODES. FOUND
CODE 111500 THE SOOT CONTENT OF THE DIESEL PARTICULATE FILTER (DPF) IS
IMPLAUSIBLE. INSPECTED WITH SHOP FOREMAN. CHECKED ACTUAL VALUES AND
FOUND THE DPF TO BE 27% FULL. CHECKED DPF HISTORY AND FOUND
REGENERATION DUE TO BE PERFORMED. OPENED TIPS CASE (246220934) PER MB
TIPS RECOMMENDED TO PERFORM A MANUAL RE-GENERATION OF DPF AND THEN
CONDUCT A CURRENT OIL CONSUMPTION TEST, AFTER TESTING FOUND MANUAL
REGENERATION WITH PASSWORD NOT POSSIBLE ON THIS MODEL, NECESSARY TO
REPLACE THE DPF. REMOVED AND REPLACED THE DIESEL PARTICULATE FILTER.

| TIME | | ORIGINAL ESTIMATE $ | AUTHORIZED ADDITIONS $ | ALL PARTS ARE NEW UNLESS SPECIFIED OTHERWISE. | DESCRIPTION | TOTALS |
|---|---|---|---|---|---|---|
| | | ☐ IN PERSON  ☐ BY PHONE  PERSON CONTACTED | | CODES: (PRECEDING PART NUMBER) A-VENDOR OTHER THEN MBUSA 70-CORE CHARGE/CREDIT | LABOR AMOUNT | |
| DATE | | SUBJECT TO CONDITIONS ON REVERSE SIDE OF THIS CONTRACT. PLEASE READ REVERSESIDE. NOTICE TO CONSUMER: PLEASE READ IMPORTANT INFORMATION ON BACK. | | 88-REBUILT PART, CORE REQUESTED 80-REBUILT PART, CORE REQUESTED. | PARTS AMOUNT | |
| | | I ACKNOWLEDGE NOTICE AND ORAL APPROVAL OF AN INCREASE IN THE ORIGINAL ESTIMATED PRICE AND ADDITIONAL CUSTOMER OR WARRANTY WORK PERFORMED, AND/OR RECEIPT OF VEHICLE. | | | GAS, OIL, LUBE | |
| CALLED BY | | CUSTOMER ACCEPTANCE | | PART NUMBERS ENDING WITH AN A ARE NOT MBUSA SUPPLIED PARTS. THESE PARTS ARE NOT WARRANTED BY MBUSA. | SUBLET AMOUNT | |
| | | X | | FLETCHER JONES MOTORCARS WILL WARRANT THESE PARTS FOR 24 MONTHS. UNLIMITED MILEAGE NO LABOR. | MISC. CHARGES | |
| | | I ACKNOWLEDGE NOTICE AND ORAL APPROVAL OF AN INCREASE IN THE ORIGINAL ESTIMATE PRICE (WARRANTY IF APPLICABLE) | | | TOTAL CHARGES | |
| OUR CHARGES ARE NOT BASED ON ACTUAL TIME BUT ARE ESTABLISHED BY MUTIPLYING OUR RETAIL LABOR RATE BY INDUSTRY FLAT RATE ALLOWANCES OR OUR OWN EXPERIENCE OF THE AVERAGE TIME. | | | | | LESS DISCOUNT | |
| | | | | | SALES TAX | |
| | | | | | **PLEASE PAY THIS AMOUNT** ➜ | |

Copyright 2014 CDK Global, LLC  SERVICE INVOICE TYPE 2 - SI2C - IMAGING

**CUSTOMER COPY**

**EXHIBIT D-1**
Fletcher Jones Motorcars Invoice #348310
dated: 30 JAN 2025

# FLETCHER JONES
## M·O·T·O·R·C·A·R·S
### NEWPORT BEACH

CUSTOMER #: 1143162

**348310**

*INVOICE*

3300 Jamboree Rd.  Phone (949) 718-3200
Service Fax (949) 718-3380
**NEWPORT BEACH, CALIFORNIA 92660**
MON - FRI: 7:00 A.M. - 7:00 P.M.
SAT: 8:00 A.M. - 1:00 P.M.  Sprinter Closed Saturday
BAR # ARD 164440  EPA # CAR 000040113  EPA # CAL 000466672
EPA # CAL000266553

BRIAN CONWAY
27662 ALISO CREEK RD
ALISO VIEJO, CA 92656-3881
HOME: 949-828-7995  CONT: 949-828-7995
BUS:            CELL: 949-828-7995

PAGE 2

**SERVICE ADVISOR:** 2555 ALEX KNIAZUK

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/ OUT | TAG |
|---|---|---|---|---|---|---|
| SILVER | 11 | MERCEDES E350 | WDDHF2EBXBA449406 | 8PCS243 | 114933/114956 | T27441 |

| IN SERVICE DATE | PROD. DATE | WARR. EXP. | TARGET DATE | PO NO. | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 28MAY11 DD | | | 17:00 14JAN25 | | | CASH | 30JAN25 |

| R.O. OPENED | READY | OPTIONS: | DLR:05101 ENG:3.0 Liter |
|---|---|---|---|
| 14JAN25 | 30JAN25 | | |

| LINE | OPCODE | TECH | TYPE | HOURS | | LIST | NET | TOTAL |
|---|---|---|---|---|---|---|---|---|

PERFORMED TEACH IN ADAPTATION WITH XENTRY. CLEARED CODES AND ROAD
TESTED VEHICLE. FOUND VEHICLE TO NO LONGER LACK POWER AND FOUND CHECK
ENGINE LIGHT NO LONGER PRESENT. (NOTE! CUSTOMER DECLINED OIL
CONSUMPTION TEST,) PREVIOUS OIL CONSUMPTION TEST PERFORMED @ 105,600
11/23 MILEAGE OUT 114956 ---NOTE--- WINDSHIELD CRACKED / PARKING BRAKE
HANDLE LOOSE / HOOD RELEASE HANDLE NOT SECURED.
*****************************************************

B C/S VEHICLE IS BURNING OIL QUICKLY. CLIENT HAS TO TOP OFF OIL EVERY
    700 MILES. CHECK AND ADVISE
    DRS DECLINED RECOMMENDED SERVICE

                                                        1043.00   1043.00
       9691  CRP
PARTS:    0.00  LABOR:   1043.00  OTHER:    0.00  TOTAL LINE B:    1043.00
114956 3.5 - COMPLAINT : C/S VEHICLE IS BURNING OIL QUICKLY. CLIENT
STATES HAS TO TOP OFF OIL EVERY 700 MILES. CHECK AND ADVISE. CAUSE :
FINDINGS INCONCLUSIVE. GUEST DECLINED PERFORMING RECOMMENDED OIL
CONSUMPTION TEST AS RECOMMENED IN TIPS CASE. CORRECTION - REMOVED THE
ENGINE GLOW PLUGS. PERFORMED CYLINDER COMPRESSION CHECK. CYL 1 - 27BAR,
CYL 2 - 27BAR, CYL 3 - 25BAR, CYL 4 - 27BAR, CYL 5 - 28BAR, CYL 6 -
21BAR. SPEC IS 23-30 BAR WITH NO MORE THAN 3 BAR VARIANCE. FOUND       ** ORIGINAL
CYLINDER 6 COMPRESSION LOW BUT STILL WITHIN SPEC. PERFORMED CYLINDER
LEAKAGE TEST. #1 -21% #2 -8% #3 -25% #4 21% #5 -21% #6 -22%, ALL WITHIN
SPEC (PERMISSIBLE TOTAL LEAKAGE IS 25%). (INSPECTED TURBO CHARGER AND
FOUND TO EXHIBIT SOME COMMON PLAY; HOWEVER NO SPECIFIED LIMIT FOR
ACCEPTABLE PLAY AVAILABLE. RECOMMEND PERFORMING OIL CONSUMPTION TEST TO
DETERMINE LOSS OF ENGINE OIL, GUEST DECLINED AT THIS TIME. MILEAGE OUT
114956
*****************************************************

C C/S VEHICLE HAS A LACK OF POWER, ENGINE IS RUNNING AT HIGHER RPMS
    LIKE IT IS GOING INTO DPF REGEN. CHECK AND ADVISE
    210 NO CHARGE TO CUSTOMER / COURTESY SERVICE
                                                           0.00      0.00
       969  CRP
PARTS:    0.00  LABOR:    0.00  OTHER:    0.00  TOTAL LINE C:    0.00
114956 N/C - COMPLAINT : C/S VEHICLE HAS A LACK OF POWER, ENGINE IS
RUNNING AT HIGHER RPMS LIKE IT IS GOING INTO DPF REGEN. CHECK AND

| TIME | | ORIGINAL ESTIMATE $ | AUTHORIZED ADDITIONS $ | ALL PARTS ARE NEW UNLESS SPECIFIED OTHERWISE. | DESCRIPTION | TOTALS |
|---|---|---|---|---|---|---|
| | | ☐ IN PERSON | PERSON CONTACTED | CODES: (PRECEDING PART NUMBER) A=VENDOR OTHER THEN MBUSA | LABOR AMOUNT | |
| | | ☐ BY PHONE | | 70-CORE CHARGE/CREDIT | PARTS AMOUNT | |
| DATE | | SUBJECT TO CONDITIONS ON REVERSE SIDE OF THIS CONTRACT. PLEASE READ REVERSESIDE. NOTICE TO CONSUMER: PLEASE READ IMPORTANT INFORMATION ON BACK. | | 88-REBUILT PART, CORE REQUESTED 80-REBUILT PART, CORE REQUESTED. | GAS, OIL, LUBE | |
| | | I ACKNOWLEDGE NOTICE AND ORAL APPROVAL OF AN INCREASE IN THE ORIGINAL ESTIMATED PRICE AND ADDITIONAL CUSTOMER OR WARRANTY WORK PERFORMED, AND/OR RECEIPT OF VEHICLE. | | | SUBLET AMOUNT | |
| CALLED BY | | CUSTOMER ACCEPTANCE | | PART NUMBERS ENDING WITH AN A ARE NOT MBUSA SUPPLIED PARTS. THESE | MISC. CHARGES | |
| | | X | | PARTS ARE NOT WARRANTED BY MBUSA. FLETCHER JONES MOTORCARS WILL | TOTAL CHARGES | |
| | | I ACKNOWLEDGE NOTICE AND ORAL APPROVAL OF AN INCREASE IN THE ORIGINAL ESTIMATE PRICE (WARRANTY IF APPLICABLE) | | WARRANT THESE PARTS FOR 24 MONTHS, UNLIMITED MILEAGE NO LABOR. | LESS DISCOUNT | |
| OUR CHARGES ARE NOT BASED ON ACTUAL TIME BUT ARE ESTABLISHED | | | | | SALES TAX | |
| BY MUTIPLYING OUR RETAIL LABOR RATE BY INDUSTRY FLAT RATE ALLOWANCES OR OUR OWN EXPERIENCE OF THE AVERAGE TIME. | | | | | **PLEASE PAY THIS AMOUNT** ➡ | |

Copyright 2014 CDK Global, LLC  SERVICE INVOICE TYPE 2 - S82C - IMAGING

**CUSTOMER COPY**

**EXHIBIT D-1**
**Fletcher Jones Motorcars Invoice #348310**
**dated: 30 JAN 2025**

# FLETCHER JONES
## M·O·T·O·R·C·A·R·S
### NEWPORT BEACH

CUSTOMER #: 1143162

**348310**

*INVOICE*

3300 Jamboree Rd.  Phone (949) 718-3200
Service Fax (949) 718-3380
**NEWPORT BEACH, CALIFORNIA 92660**
MON - FRI: 7:00 A.M. - 7:00 P.M.
SAT: 8:00 A.M. - 1:00 P.M.  Sprinter Closed Saturday
BAR # ARD 164440  EPA # CAR 000040113  EPA # CAL 000466672
EPA # CAL000266553

BRIAN CONWAY
27662 ALISO CREEK RD
ALISO VIEJO, CA 92656-3881
HOME:949-828-7995 CONT:949-828-7995
BUS:           CELL:949-828-7995

PAGE 3

**SERVICE ADVISOR:** 2555 ALEX KNIAZUK

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/OUT | TAG |
|-------|------|------------|-----|---------|----------------|-----|
| SILVER | 11 | MERCEDES E350 | WDDHF2EBXBA449406 | 8PCS243 | 114933/114956 | T27441 |

| IN SERVICE DATE | PROD. DATE | WARR. EXP. | TARGET DATE | PO NO. | RATE | PAYMENT | INV. DATE |
|-----------------|------------|------------|-------------|--------|------|---------|-----------|
| 28MAY11 DD | | | 17:00 14JAN25 | | | CASH | 30JAN25 |

| R.O. OPENED | READY | OPTIONS: | DLR:05101 ENG:3.0 Liter |
|-------------|-------|----------|-------------------------|
| 14JAN25 | 30JAN25 | | |

| LINE | OPCODE | TECH | TYPE | HOURS | | LIST | NET | TOTAL |
|------|--------|------|------|-------|--|------|-----|-------|

ADVISE. CAUSE : DPF UNABLE TO PERFORM REGEN. CORRECTION : SEE LINE A
FOR DPF REPLACEMENT. MILEAGE OUT 114956
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

D CHECK AND CORRECT TIRE PRESSURES AS NEEDED
CAUSE: CHECKED TIRE PRESSURE AND CORRECTED TO L/F R/F L/R R/R
      TIRE CHECK AND CORRECT TIRE PRESSURES AS NEEDED
            969   CRP                                         0.00          0.00
PARTS:      0.00  LABOR:      0.00  OTHER:      0.00  TOTAL LINE D:        0.00
114956 CHECK AND CORRECT TIRE PRESSURES: L/F 35 R/F 35 L/R 36 R/R
36
            \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

E FLETCHER JONES MOTORCARS MULTI-POINT INSPECTION
      MPI FLETCHER JONES MOTORCARS MULTI-POINT
      INSPECTION
            969   CRP                                         0.00          0.00
PARTS:      0.00  LABOR:      0.00  OTHER:      0.00  TOTAL LINE E:        0.00
114956 N/C - MPI - RECOMMEND PERFORMED OIL CONSUMPTION TEST,
RECOMMEND TRANSMISSION DIAGNOSIS, RECOMMEND REAR TIRES AND ALIGNMENT.
MILEAGE OUT 114956
            \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

F COURTESY CAR WASH
      94-100 COURTESY CAR WASH
            3   CRP                                           0.00          0.00
PARTS:      0.00  LABOR:      0.00  OTHER:      0.00  TOTAL LINE F:        0.00
            \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

G MY SERVICE ADVISOR HAS ASKED ME TO REMOVE ALL MONEY & VALUABLES FROM
      MY VEHICLE. MY SIGNATURE ON THIS REPAIR ORDER ACKNOWLEDGES THAT
      FLETCHER JONES MOTORCARS IS NOT RESPONSIBLE FOR ANY LOST OR
      STOLEN PERSONAL ITEMS.
      333 MY SERVICE ADVISOR HAS ASKED ME TO REMOVE ALL
          MONEY & VALUABLES FROM MY VEHICLE. MY
          SIGNATURE ON THIS REPAIR ORDER ACKNOWLEDGES
          THAT FLETCHER JONES MOTORCARS IS NOT
          RESPONSIBLE FOR ANY LOST OR STOLEN PERSONAL

| TIME | | ORIGINAL ESTIMATE $ | AUTHORIZED ADDITIONS $ | ALL PARTS ARE NEW UNLESS SPECIFIED OTHERWISE. | DESCRIPTION | | TOTALS |
|------|--|---------------------|------------------------|------------------------------------------------|-------------|--|--------|
| | | ☐ IN PERSON ☐ BY PHONE | PERSON CONTACTED | **CODES:** (PRECEDING PART NUMBER) A-VENDOR OTHER THEN MBUSA 70-CORE CHARGE/CREDIT | LABOR AMOUNT | | |
| DATE | | SUBJECT TO CONDITIONS ON REVERSE SIDE OF THIS CONTRACT. PLEASE READ REVERSESIDE. NOTICE TO CONSUMER: PLEASE READ IMPORTANT INFORMATION ON BACK. | | 88-REBUILT PART, CORE REQUESTED 80-REBUILT PART, CORE REQUESTED. | PARTS AMOUNT | | |
| | | | | | GAS, OIL, LUBE | | |
| CALLED BY | | I ACKNOWLEDGE NOTICE AND ORAL APPROVAL OF AN INCREASE IN THE ORIGINAL ESTIMATED PRICE AND ADDITIONAL CUSTOMER OR WARRANTY WORK PERFORMED, AND/OR RECEIPT OF VEHICLE. | | **PART NUMBERS ENDING WITH AN A ARE NOT MBUSA SUPPLIED PARTS. THESE PARTS ARE NOT WARRANTED BY MBUSA** | SUBLET AMOUNT | | |
| | | **CUSTOMER ACCEPTANCE** | | | MISC. CHARGES | | |
| | | X | | FLETCHER JONES MOTORCARS WILL WARRANT THESE PARTS FOR 24 MONTHS. UNLIMITED MILEAGE NO LABOR. | TOTAL CHARGES | | |
| | | I ACKNOWLEDGE NOTICE AND ORAL APPROVAL OF AN INCREASE IN THE ORIGINAL ESTIMATE PRICE (WARRANTY IF APPLICABLE) | | | LESS DISCOUNT | | |
| **OUR CHARGES ARE NOT BASED ON ACTUAL TIME BUT ARE ESTABLISHED BY MUTIPLYING OUR RETAIL LABOR RATE BY INDUSTRY FLAT RATE ALLOWANCES OR OUR OWN EXPERIENCE OF THE AVERAGE TIME.** | | | | | SALES TAX | | |
| | | | | | **PLEASE PAY THIS AMOUNT** ➡ | | |

Copyright 2014 CDK Global, LLC  SERVICE INVOICE TYPE 2 - S2C - IMAGING

**CUSTOMER COPY**

**EXHIBIT D-1**
**Fletcher Jones Motorcars Invoice #348310**
**dated: 30 JAN 2025**

# FLETCHER JONES

## M·O·T·O·R·C·A·R·S

### NEWPORT BEACH

CUSTOMER #: 1143162

348310

*INVOICE*

PAGE 4

3300 Jamboree Rd.  Phone (949) 718-3200
Service Fax (949) 718-3380
**NEWPORT BEACH, CALIFORNIA 92660**
MON - FRI: 7:00 A.M. - 7:00 P.M.
SAT: 8:00 A.M. - 1:00 P.M.  Sprinter Closed Saturday
BAR # ARD 164440  EPA # CAR 000040113  EPA # CAL 000466672
EPA # CAL000266553

BRIAN CONWAY
27662 ALISO CREEK RD
ALISO VIEJO, CA 92656-3881
HOME: 949-828-7995  CONT: 949-828-7995
BUS:                CELL: 949-828-7995

SERVICE ADVISOR:  2555 ALEX KNIAZUK

| COLOR | YEAR | MAKE/MODEL | | VIN | LICENSE | MILEAGE IN/ OUT | | TAG |
|---|---|---|---|---|---|---|---|---|
| SILVER | 11 | MERCEDES E350 | | WDDHF2EBXBA449406 | 8PCS243 | 114933/114956 | | T27441 |

| IN SERVICE DATE | PROD. DATE | WARR. EXP. | TARGET DATE | PO NO. | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 28MAY11 DD | | | 17:00 14JAN25 | | | CASH | 30JAN25 |

| R.O. OPENED | | READY | OPTIONS: | DLR:05101 ENG:3.0 Liter |
|---|---|---|---|---|
| 14JAN25 | | 30JAN25 | | |

| LINE | OPCODE | TECH | TYPE | HOURS | | | LIST | NET | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| | ITEMS. | | | | | | | | |
| | | 3 | CRP | | | | | 0.00 | 0.00 |
| PARTS: | 0.00 | LABOR: | 0.00 | OTHER: | 0.00 | TOTAL LINE G: | | | 0.00 |

*****************************************************

H CLIENT UNDERSTANDS THIS COURTESY VEHICLE IS AT NO CHARGE. THE LOANER
VEHICLE MUST BE RETURNED THE SAME DAY AS YOUR VEHICLE IS
COMPLETED. ANY ADDITIONAL DAYS NOT AUTHORIZED BY YOUR SERVICE
ADVISOR WILL RESULT IN A CHARGE OF $80 PER DAY
TIRE CHECK AND CORRECT TIRE PRESSURES AS NEEDED

| | | 3 | CRP | | | | | 0.00 | 0.00 |
|---|---|---|---|---|---|---|---|---|---|
| PARTS: | 0.00 | LABOR: | 0.00 | OTHER: | 0.00 | TOTAL LINE H: | | | 0.00 |

*****************************************************

Reserved by Daisy
TorresVilchis Brian Conway

ORIGINAL ESTIMATE $ _____
AUTHORIZED ESTIMATE $ _____
I ACKNOWLEDGE NOTICE OF AN INCREASE IN THE OR
IGINAL ESTIMATED PRICE AND ADDITIONAL CUST OR
WARRANTY WORK PERFORMED, AND/OR RECEIPT OF
VEHICLE.
X _____

| TIME | | ORIGINAL ESTIMATE $ | AUTHORIZED ADDITIONS $ | ALL PARTS ARE NEW UNLESS SPECIFIED OTHERWISE. | DESCRIPTION | TOTALS |
|---|---|---|---|---|---|---|
| | | ☐ IN PERSON  ☐ BY PHONE | PERSON CONTACTED | **CODES:** (PRECEDING PART NUMBER) A-VENDOR OTHER THEN MBUSA 70-CORE CHARGE/CREDIT | LABOR AMOUNT | 1043.00 |
| | | | | | PARTS AMOUNT | 0.00 |
| DATE | | SUBJECT TO CONDITIONS ON REVERSE SIDE OF THIS CONTRACT. PLEASE READ REVERSE SIDE. **NOTICE TO CONSUMER: PLEASE READ IMPORTANT INFORMATION ON BACK.** | | 88-REBUILT PART, CORE REQUESTED 80-REBUILT PART, CORE REQUESTED. | GAS, OIL, LUBE | 0.00 |
| | | I ACKNOWLEDGE NOTICE AND ORAL APPROVAL OF AN INCREASE IN THE ORIGINAL ESTIMATED PRICE AND ADDITIONAL CUSTOMER OR WARRANTY WORK PERFORMED, AND/OR RECEIPT OF VEHICLE. | | | SUBLET AMOUNT | 0.00 |
| CALLED BY | | CUSTOMER ACCEPTANCE | | PART NUMBERS ENDING WITH AN A ARE NOT MBUSA SUPPLIED PARTS. THESE PARTS ARE NOT WARRANTED BY MBUSA | MISC. CHARGES | 0.00 |
| | | X _____ | | FLETCHER JONES MOTORCARS WILL | TOTAL CHARGES | 1043.00 |
| | | I ACKNOWLEDGE NOTICE AND ORAL APPROVAL OF AN INCREASE IN THE ORIGINAL ESTIMATE PRICE (WARRANTY IF APPLICABLE) | | WARRANT THESE PARTS FOR 24 MONTHS. UNLIMITED MILEAGE NO LABOR. | LESS DISCOUNT | 0.00 |
| | | **OUR CHARGES ARE NOT BASED ON ACTUAL TIME BUT ARE ESTABLISHED BY MUTIPLYING OUR RETAIL LABOR RATE BY INDUSTRY FLAT RATE ALLOWANCES OR OUR OWN EXPERIENCE OF THE AVERAGE TIME.** | | | SALES TAX | 0.00 |
| | | | | | **PLEASE PAY THIS AMOUNT** ➡ | 1043.00 |

Copyright 2014 CDK Global, LLC  SERVICE INVOICE TYPE 2 - SI2C - IMAGING

**CUSTOMER COPY**

**EXHIBIT D-1**
**Fletcher Jones Motorcars Invoice #348310**
**dated: 30 JAN 2025**

# FLETCHER JONES
## M·O·T·O·R·C·A·R·S
### NEWPORT BEACH

3300 Jamboree Rd.  Phone (949) 718-3200
Service Fax (949) 718-3380
**NEWPORT BEACH, CALIFORNIA 92660**
MON - FRI: 7:00 A.M. - 7:00 P.M.
SAT: 8:00 A.M. - 1:00 P.M. Sprinter Closed Saturday
BAR # ARD 164440 EPA # CAR 000040113 EPA # CAL 000466672
EPA # CAL000266553

CUSTOMER #: 1143162

**348310**

*INVOICE*

BRIAN CONWAY
27662 ALISO CREEK RD
ALISO VIEJO, CA 92656-3881
HOME: 949-828-7995  CONT: 949-828-7995
BUS:                CELL: 949-828-7995

DUPLICATE 1
PAGE 1

SERVICE ADVISOR: 2555 ALEX KNIAZUK

| COLOR | YEAR | MAKE/MODEL | | VIN | LICENSE | MILEAGE IN/ OUT | | TAG |
|---|---|---|---|---|---|---|---|---|
| SILVER | 11 | MERCEDES E350 | | WDDHF2EBXBA449406 | 8PCS243 | 114933/114956 | | T27441 |

| IN SERVICE DATE | PROD. DATE | WARR. EXP. | TARGET DATE | PO NO. | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 28MAY11 DD | | | 17:00 14JAN25 | | | CASH | 30JAN25 |

| R.O. OPENED | | READY | OPTIONS: | DLR:05101 ENG:3.0 Liter | | | |
|---|---|---|---|---|---|---|---|
| 14JAN25 | | 30JAN25 | | | | | |

| LINE OPCODE TECH TYPE HOURS | | | | | LIST | NET | TOTAL |
|---|---|---|---|---|---|---|---|

```
A C/S CHECK ENGINE LIGHT IS ON. CHECK AND ADVISE
CAUSE: .
      070641 CHECK ASSEMBLY PARTS OF ENGINE:
             .................. AS PER FAULT CODE
        9691  WEL                                                    (N/C)
      498800 DIESEL PARTICULATE FILTER (DPF) REPLACE
        9691  WEL                                                    (N/C)
      271048 ADAPTATION PERFORM (AFTER REPAIRS)
        9691  WEL                                                    (N/C)
        1 212-490-59-00-80 DIESEL PARTICULATE FILTER                 (N/C)
        #32 761 FWC
        1 212-490-59-00-70 CORE DIESEL PARTICULATE
        FILTER                                                       (N/C)
        1 000-490-14-41 CLAMP                                        (N/C)
        1 220-492-02-81 THRUST RING                                  (N/C)
        1 203-490-06-41 CLAMP                                        (N/C)
        1 219-492-00-80 FLANGE GASKET                                (N/C)
        3 000-990-67-03 SCREW                                        (N/C)
PARTS:     0.00  LABOR:     0.00  OTHER:     0.00  TOTAL LINE A:     0.00
114956 WARR (333-338411 AUTHO FOR 2.0ZM DIAG, TESTING, DIAG,
PERFORMED PROCEDURES PER TIPS)(BLUETEC WARR EXT) (tips case# 246220934)
- COMPLAINT : C/S CHECK ENGINE LIGHT IS ON. CHECK AND ADVISE. CAUSE :
FOUND THE DIESEL PARTICULATE FILTER FILL LEVEL @ 27% FULL ROAD TESTED
AND UNABLE TO PERFORM REGENERATION PROCESS. CORRECTION : VERIFIED
CONCERN. PERFORMED ROAD TEST AND FOUND VEHICLE LACKING POWER. CONNECTED
BATTERY CHARGER. CONNECTED XENTRY AND CHECKED DIAGNOSTIC CODES. FOUND
CODE 111500 THE SOOT CONTENT OF THE DIESEL PARTICULATE FILTER (DPF) IS
IMPLAUSIBLE. INSPECTED WITH SHOP FOREMAN. CHECKED ACTUAL VALUES AND
FOUND THE DPF TO BE 27% FULL. CHECKED DPF HISTORY AND FOUND
REGENERATION DUE TO BE PERFORMED. OPENED TIPS CASE (246220934) PER MB
TIPS RECOMMENDED TO PERFORM A MANUAL RE-GENERATION OF DPF AND THEN
CONDUCT A CURRENT OIL CONSUMPTION TEST, AFTER TESTING FOUND MANUAL
REGENERATION WITH PASSWORD NOT POSSIBLE ON THIS MODEL, NECESSARY TO
REPLACE THE DPF. REMOVED AND REPLACED THE DIESEL PARTICULATE FILTER.
```

| TIME | | ORIGINAL ESTIMATE $ | AUTHORIZED ADDITIONS $ | ALL PARTS ARE NEW UNLESS SPECIFIED OTHERWISE. | DESCRIPTION | TOTALS |
|---|---|---|---|---|---|---|
| | | ☐ IN PERSON | PERSON CONTACTED | CODES: (PRECEDING PART NUMBER) A-VENDOR OTHER THEN MBUSA | LABOR AMOUNT | |
| | | ☐ BY PHONE | | 70-CORE CHARGE/CREDIT | PARTS AMOUNT | |
| DATE | | SUBJECT TO CONDITIONS ON REVERSE SIDE OF THIS CONTRACT. PLEASE READ REVERSE SIDE. NOTICE TO CONSUMER: PLEASE READ IMPORTANT INFORMATION ON BACK. | | 88-REBUILT PART, CORE REQUESTED 80-REBUILT PART, CORE REQUESTED. | GAS, OIL, LUBE | |
| | | I ACKNOWLEDGE NOTICE AND ORAL APPROVAL OF AN INCREASE IN THE ORIGINAL ESTIMATED PRICE AND ADDITIONAL CUSTOMER OR WARRANTY WORK PERFORMED, AND/OR RECEIPT OF VEHICLE. | | PART NUMBERS ENDING WITH AN A ARE NOT MBUSA SUPPLIED PARTS. THESE PARTS ARE NOT WARRANTED BY MBUSA | SUBLET AMOUNT | |
| CALLED BY | | CUSTOMER ACCEPTANCE | | | MISC. CHARGES | |
| | | X | | FLETCHER JONES MOTORCARS WILL WARRANT THESE PARTS FOR 24 MONTHS. UNLIMITED MILEAGE NO LABOR. | TOTAL CHARGES | |
| | | I ACKNOWLEDGE NOTICE AND ORAL APPROVAL OF AN INCREASE IN THE ORIGINAL ESTIMATE PRICE (WARRANTY IF APPLICABLE) | | | LESS DISCOUNT | |
| OUR CHARGES ARE NOT BASED ON ACTUAL TIME BUT ARE ESTABLISHED BY MUTIPLYING OUR RETAIL LABOR RATE BY INDUSTRY FLAT RATE ALLOWANCES OR OUR OWN EXPERIENCE OF THE AVERAGE TIME. | | | | | SALES TAX | |
| | | | | | **PLEASE PAY THIS AMOUNT** ➡ | |

Copyright 2014 CDK Global, LLC  SERVICE INVOICE TYPE 2 - SI2C - IMAGING

**CUSTOMER COPY**

**EXHIBIT D-2**
Fletcher Jones Motorcars Invoice #348310
dated: 30 JAN 2025

# FLETCHER JONES
## M·O·T·O·R·C·A·R·S
### NEWPORT BEACH

CUSTOMER #: 1143162

**348310**

*INVOICE*

3300 Jamboree Rd.  Phone (949) 718-3200
Service Fax (949) 718-3380
**NEWPORT BEACH, CALIFORNIA 92660**
MON - FRI: 7:00 A.M. - 7:00 P.M.
SAT: 8:00 A.M. - 1:00 P.M. Sprinter Closed Saturday
BAR # ARD 164440  EPA # CAR 000040113  EPA # CAL 000466672
EPA # CAL000266553

BRIAN CONWAY
27662 ALISO CREEK RD
ALISO VIEJO, CA 92656-3881
HOME: 949-828-7995  CONT: 949-828-7995
BUS:                CELL: 949-828-7995

DUPLICATE 1
PAGE 2

**SERVICE ADVISOR:** 2555 ALEX KNIAZUK

| COLOR | YEAR | MAKE/MODEL | | VIN | LICENSE | MILEAGE IN / OUT | TAG |
|-------|------|------------|---|-----|---------|------------------|-----|
| SILVER | 11 | MERCEDES E350 | | WDDHF2EBXBA449406 | 8PCS243 | 114933/114956 | T27441 |

| IN SERVICE DATE | PROD. DATE | WARR. EXP. | TARGET DATE | PO NO. | RATE | PAYMENT | INV. DATE |
|-----------------|------------|------------|-------------|--------|------|---------|-----------|
| 28MAY11 DD | | | 17:00 14JAN25 | | | CASH | 30JAN25 |

| R.O. OPENED | READY | OPTIONS: | DLR:05101 ENG:3.0 Liter |
|-------------|-------|----------|--------------------------|
| 14JAN25 | 30JAN25 | | |

| LINE | OPCODE | TECH | TYPE | HOURS | | LIST | NET | TOTAL |
|------|--------|------|------|-------|---|------|-----|-------|

PERFORMED TEACH IN ADAPTATION WITH XENTRY. CLEARED CODES AND ROAD
TESTED VEHICLE. FOUND VEHICLE TO NO LONGER LACK POWER AND FOUND CHECK
ENGINE LIGHT NO LONGER PRESENT. (NOTE! CUSTOMER DECLINED OIL
CONSUMPTION TEST,) PREVIOUS OIL CONSUMPTION TEST PERFORMED @ 105,600
11/23 MILEAGE OUT 114956 ---NOTE--- WINDSHIELD CRACKED / PARKING BRAKE
HANDLE LOOSE / HOOD RELEASE HANDLE NOT SECURED.
****************************************************

B C/S VEHICLE IS BURNING OIL QUICKLY. CLIENT HAS TO TOP OFF OIL EVERY
    700 MILES. CHECK AND ADVISE
    DRS DECLINED RECOMMENDED SERVICE
          9691    CRP                                      1043.00    1043.00
PARTS:    0.00   LABOR:    1043.00  OTHER:    0.00   TOTAL LINE B:    1043.00
114956 3.5 - COMPLAINT : C/S VEHICLE IS BURNING OIL QUICKLY. CLIENT
STATES HAS TO TOP OFF OIL EVERY 700 MILES. CHECK AND ADVISE. CAUSE :
FINDINGS AND BORE SCOPE RESULTS WERE INCONCLUSIVE. GUEST DECLINED
PERFORMING RECOMMENDED CURRENT OIL CONSUMPTION TEST AS RECOMMEND IN
TIPS CASE. CORRECTION - REMOVED THE ENGINE GLOW PLUGS. PERFORMED
CYLINDER COMPRESSION CHECK. CYL 1 - 27BAR, CYL 2 - 27BAR, CYL 3 -
25BAR, CYL 4 - 27BAR, CYL 5 - 28BAR, CYL 6 - 21BAR. (SPEC FOR
COMPRESSION WEAR LIMIT IS 17bar WITH NO MORE THAN 3bar VARIANCE.) FOUND    ✱
CYLINDER 6 COMPRESSION IS LOWER BUT STILL WITHIN COMPRESSION SPEC,        MODIFIED
VARIANCE IS OUT OF SPEC) PERFORMED CYLINDER LEAKAGE TEST. #1 -21% #2
-8% #3 -25% #4 21% #5 -21% #6 -22%. ALL LEAKAGES WITHIN SPEC
(PERMISSIBLE TOTAL LEAKAGE IS 25%). (INSPECTED TURBO CHARGER AND FOUND
TO EXHIBIT SOME COMMON PLAY HOWEVER NO SPECIFIED LIMIT FOR ACCEPTABLE
PLAY AVAILABLE. RECOMMEND PERFORMING A CURRENT OIL CONSUMPTION TEST TO
DETERMINE LOSS OF ENGINE OIL, GUEST DECLINED AT THIS TIME. BORE SCOPE
PICTURES WERE PROVIDED TO CUSTOMER. MILEAGE OUT 114956
****************************************************

C C/S VEHICLE HAS A LACK OF POWER, ENGINE IS RUNNING AT HIGHER RPMS
    LIKE IT IS GOING INTO DPF REGEN. CHECK AND ADVISE
    210 NO CHARGE TO CUSTOMER / COURTESY SERVICE
          969    CRP                                         0.00       0.00
PARTS:    0.00   LABOR:    0.00  OTHER:    0.00   TOTAL LINE C:    0.00

| TIME | | ORIGINAL ESTIMATE $ | AUTHORIZED ADDITIONS $ | ALL PARTS ARE NEW UNLESS SPECIFIED OTHERWISE. | DESCRIPTION | TOTALS |
|------|---|---|---|---|---|---|
| | | ☐ IN PERSON | PERSON CONTACTED | **CODES:** (PRECEDING PART NUMBER) A-VENDOR OTHER THEM MBUSA 70-CORE CHARGE/CREDIT | LABOR AMOUNT | |
| | | ☐ BY PHONE | | | PARTS AMOUNT | |
| DATE | | SUBJECT TO CONDITIONS ON REVERSE SIDE OF THIS CONTRACT. PLEASE READ REVERSE SIDE. **NOTICE TO CONSUMER: PLEASE READ IMPORTANT INFORMATION ON BACK.** | | 88-REBUILT PART, CORE REQUESTED 80-REBUILT PART, CORE REQUESTED. | GAS, OIL, LUBE | |
| | | I ACKNOWLEDGE NOTICE AND ORAL APPROVAL OF AN INCREASE IN THE ORIGINAL ESTIMATED PRICE AND ADDITIONAL CUSTOMER OR WARRANTY WORK PERFORMED, AND/OR RECEIPT OF VEHICLE. | | | SUBTEAL AMOUNT | |
| CALLED BY | | CUSTOMER ACCEPTANCE | | PART NUMBERS ENDING WITH AN A ARE NOT MBUSA SUPPLIED PARTS. THESE PARTS ARE NOT WARRANTED BY MBUSA. | MISC. CHARGES | |
| | | X | | FLETCHER JONES MOTORCARS WILL WARRANT THESE PARTS FOR 24 MONTHS. UNLIMITED MILEAGE NO LABOR. | TOTAL CHARGES | |
| | | I ACKNOWLEDGE NOTICE AND ORAL APPROVAL OF AN INCREASE IN THE ORIGINAL ESTIMATE PRICE (WARRANTY IF APPLICABLE) | | | LESS DISCOUNT | |
| OUR CHARGES ARE NOT BASED ON ACTUAL TIME BUT ARE ESTABLISHED | | | | | SALES TAX | |
| BY MUTIPLYING OUR RETAIL LABOR RATE BY INDUSTRY FLAT RATE ALLOWANCES OR OUR OWN EXPERIENCE OF THE AVERAGE TIME. | | | | | **PLEASE PAY THIS AMOUNT** ➡ | |

Copyright 2014 CDK Global, LLC  SERVICE INVOICE TYPE 2 - B2C - IMAGING

**CUSTOMER COPY**

**EXHIBIT D-2**
**Fletcher Jones Motorcars Invoice #348310**
**dated: 30 JAN 2025**

# FLETCHER JONES
## M·O·T·O·R·C·A·R·S
### NEWPORT BEACH

CUSTOMER #: 1143162

348310

\*INVOICE\*

3300 Jamboree Rd.  Phone (949) 718-3200
Service Fax (949) 718-3380
**NEWPORT BEACH, CALIFORNIA 92660**
MON - FRI: 7:00 A.M. - 7:00 P.M.
SAT: 8:00 A.M. - 1:00 P.M. Sprinter Closed Saturday
BAR # ARD 164440 EPA # CAR 000040113 EPA # CAL 000466672
EPA # CAL000266553

BRIAN CONWAY
27662 ALISO CREEK RD
ALISO VIEJO, CA 92656-3881
HOME: 949-828-7995   CONT: 949-828-7995
BUS:                 CELL: 949-828-7995

DUPLICATE 1
PAGE 3

**SERVICE ADVISOR:** 2555 ALEX KNIAZUK

| COLOR | YEAR | MAKE/MODEL | | VIN | LICENSE | MILEAGE IN/OUT | TAG |
|-------|------|------------|---|-----|---------|----------------|-----|
| SILVER | 11 | MERCEDES E350 | | WDDHF2EBXBA449406 | 8PCS243 | 114933/114956 | T27441 |

| IN SERVICE DATE | PROD. DATE | WARR. EXP. | TARGET DATE | PO NO. | RATE | PAYMENT | INV. DATE |
|-----------------|------------|------------|-------------|--------|------|---------|-----------|
| 28MAY11 DD | | | 17:00 14JAN25 | | | CASH | 30JAN25 |

| R.O. OPENED | READY | OPTIONS: | DLR:05101 ENG:3.0 Liter | |
|-------------|-------|----------|-------------------------|--|
| 14JAN25 | 30JAN25 | | | |

| LINE | OPCODE | TECH | TYPE | HOURS | | LIST | NET | TOTAL |
|------|--------|------|------|-------|--|------|-----|-------|

114956 N/C - COMPLAINT : C/S VEHICLE HAS A LACK OF POWER, ENGINE IS
RUNNING AT HIGHER RPMS LIKE IT IS GOING INTO DPF REGEN. CHECK AND
ADVISE. CAUSE : DPF UNABLE TO PERFORM REGEN. CORRECTION : SEE LINE A
FOR DPF REPLACEMENT. MILEAGE OUT 114956
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

D CHECK AND CORRECT TIRE PRESSURES AS NEEDED
CAUSE: CHECKED TIRE PRESSURE AND CORRECTED TO L/F R/F L/R R/R
     TIRE CHECK AND CORRECT TIRE PRESSURES AS NEEDED
           969   CRP                                          0.00        0.00
PARTS:    0.00  LABOR:     0.00  OTHER:      0.00  TOTAL LINE D:        0.00
114956 CHECK AND CORRECT TIRE PRESSURES: L/F 35 R/F 35 L/R 36 R/R
36
     \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

E FLETCHER JONES MOTORCARS MULTI-POINT INSPECTION
     MPI FLETCHER JONES MOTORCARS MULTI-POINT
           INSPECTION
           969   CRP                                          0.00        0.00
PARTS:    0.00  LABOR:     0.00  OTHER:      0.00  TOTAL LINE E:        0.00
114956 N/C - MPI - RECOMMEND PERFORMED OIL CONSUMPTION TEST,
RECOMMEND TRANSMISSION DIAGNOSIS, RECOMMEND REAR TIRES AND ALIGNMENT.
MILEAGE OUT 114956
     \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

F COURTESY CAR WASH
     94-100 COURTESY CAR WASH
           3   CRP                                            0.00        0.00
PARTS:    0.00  LABOR:     0.00  OTHER:      0.00  TOTAL LINE F:        0.00
     \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

G MY SERVICE ADVISOR HAS ASKED ME TO REMOVE ALL MONEY & VALUABLES FROM
     MY VEHICLE. MY SIGNATURE ON THIS REPAIR ORDER ACKNOWLEDGES THAT
     FLETCHER JONES MOTORCARS IS NOT RESPONSIBLE FOR ANY LOST OR
     STOLEN PERSONAL ITEMS.
     333 MY SERVICE ADVISOR HAS ASKED ME TO REMOVE ALL
         MONEY & VALUABLES FROM MY VEHICLE. MY
         SIGNATURE ON THIS REPAIR ORDER ACKNOWLEDGES

| TIME | | ORIGINAL ESTIMATE $ | AUTHORIZED ADDITIONS $ | ALL PARTS ARE NEW UNLESS SPECIFIED OTHERWISE. | DESCRIPTION | | TOTALS |
|------|--|---------------------|------------------------|-----------------------------------------------|-------------|--|--------|
| | | ☐ IN PERSON | PERSON CONTACTED | **CODES:** (PRECEDING PART NUMBER) | LABOR AMOUNT | | |
| | | ☐ BY PHONE | | A-VENDOR OTHER THEN MBUSA | PARTS AMOUNT | | |
| DATE | | SUBJECT TO CONDITIONS ON REVERSE SIDE OF THIS CONTRACT. PLEASE READ REVERSE SIDE. **NOTICE TO CONSUMER: PLEASE READ** IMPORTANT INFORMATION ON BACK. | | 70-CORE CHARGE/CREDIT 88-REBUILT PART, CORE REQUESTED 80-REBUILT PART, CORE REQUESTED. | GAS, OIL, LUBE | | |
| | | I ACKNOWLEDGE NOTICE AND ORAL APPROVAL OF AN INCREASE IN THE ORIGINAL ESTIMATED PRICE AND ADDITIONAL CUSTOMER OF WARRANTY WORK PERFORMED, AND/OR RECEIPT OF VEHICLE. | | **PART NUMBERS ENDING WITH AN A ARE** | SUBLET AMOUNT | | |
| CALLED BY | | CUSTOMER ACCEPTANCE | | NOT MBUSA SUPPLIED PARTS. THESE PARTS ARE NOT WARRANTED BY MBUSA | MISC. CHARGES | | |
| | | X | | FLETCHER JONES MOTORCARS WILL WARRANT THESE PARTS FOR 24 MONTHS. | TOTAL CHARGES | | |
| | | I ACKNOWLEDGE NOTICE AND ORAL APPROVAL OF AN INCREASE IN THE ORIGINAL ESTIMATE PRICE (WARRANTY IF APPLICABLE). | | UNLIMITED MILEAGE NO LABOR. | LESS DISCOUNT | | |
| OUR CHARGES ARE NOT BASED ON ACTUAL TIME BUT ARE ESTABLISHED | | | | | SALES TAX | | |
| BY MUTIPLYING OUR RETAIL LABOR RATE BY INDUSTRY FLAT RATE ALLOWANCES OR OUR OWN EXPERIENCE OF THE AVERAGE TIME. | | | | | **PLEASE PAY THIS AMOUNT** ➡ | | |

Copyright 2014 CDK Global, LLC   SERVICE INVOICE TYPE 2 - SI2C - IMAGING

**CUSTOMER COPY**

**EXHIBIT D-2**
**Fletcher Jones Motorcars Invoice #348310**
**dated: 30 JAN 2025**

# FLETCHER JONES
## M·O·T·O·R·C·A·R·S
### NEWPORT BEACH

CUSTOMER #: 1143162

348310

\*INVOICE\*

DUPLICATE 1
PAGE 4

3300 Jamboree Rd.  Phone (949) 718-3200
Service Fax (949) 718-3380
**NEWPORT BEACH, CALIFORNIA 92660**
MON - FRI: 7:00 A.M. - 7:00 P.M.
SAT: 8:00 A.M. - 1:00 P.M.  Sprinter Closed Saturday
BAR # ARD 164440  EPA # CAR 000040113  EPA # CAL 000466672
EPA # CAL000266553

BRIAN CONWAY
27662 ALISO CREEK RD
ALISO VIEJO, CA 92656-3881
HOME:949-828-7995 CONT:949-828-7995
BUS:               CELL:949-828-7995

SERVICE ADVISOR: 2555 ALEX KNIAZUK

| COLOR | YEAR | MAKE/MODEL | | VIN | LICENSE | MILEAGE IN / OUT | TAG |
|---|---|---|---|---|---|---|---|
| SILVER | 11 | MERCEDES E350 | | WDDHF2EBXBA449406 | 8PCS243 | 114933/114956 | T27441 |

| IN SERVICE DATE | PROD. DATE | WARR. EXP. | TARGET DATE | PO NO. | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 28MAY11 DD | | | 17:00 14JAN25 | | | CASH | 30JAN25 |

| R.O. OPENED | READY | OPTIONS: | DLR:05101 ENG:3.0 Liter |
|---|---|---|---|
| 14JAN25 | 30JAN25 | | |

| LINE | OPCODE | TECH | TYPE | HOURS | | | | LIST | NET | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|

```
              THAT FLETCHER JONES MOTORCARS IS NOT
              RESPONSIBLE FOR ANY LOST OR STOLEN PERSONAL
              ITEMS.
              3    CRP                                        0.00        0.00
PARTS:     0.00   LABOR:      0.00  OTHER:      0.00   TOTAL LINE G:      0.00
           ********************************************************

H CLIENT UNDERSTANDS THIS COURTESY VEHICLE IS AT NO CHARGE. THE LOANER
              VEHICLE MUST BE RETURNED THE SAME DAY AS YOUR VEHICLE IS
              COMPLETED. ANY ADDITIONAL DAYS NOT AUTHORIZED BY YOUR SERVICE
              ADVISOR WILL RESULT IN A CHARGE OF $80 PER DAY
              TIRE CHECK AND CORRECT TIRE PRESSURES AS NEEDED
              3    CRP                                        0.00        0.00
PARTS:     0.00   LABOR:      0.00  OTHER:      0.00   TOTAL LINE H:      0.00
           ********************************************************
```

Reserved by Daisy
TorresVilchis Brian Conway

ORIGINAL ESTIMATE $ _____
AUTHORIZED ESTIMATE $ _____
I ACKNOWLEDGE NOTICE OF AN INCREASE IN THE OR
IGINAL ESTIMATED PRICE AND ADDITIONAL CUST OR
WARRANTY WORK PERFORMED, AND/OR RECEIPT OF
VEHICLE.
X _____

| TIME | | ORIGINAL ESTIMATE $ | AUTHORIZED ADDITIONS $ | ALL PARTS ARE NEW UNLESS SPECIFIED OTHERWISE. | DESCRIPTION | TOTALS |
|---|---|---|---|---|---|---|
| | | ☐ IN PERSON | PERSON CONTACTED | CODES: (PRECEDING PART NUMBER) | LABOR AMOUNT | 1043.00 |
| | | ☐ BY PHONE | | A-VENDOR OTHER THEN MBUSA 70-CORE CHARGE/CREDIT | PARTS AMOUNT | 0.00 |
| DATE | | SUBJECT TO CONDITIONS ON REVERSE SIDE OF THIS CONTRACT. PLEASE READ REVERSE SIDE. NOTICE TO CONSUMER: PLEASE READ IMPORTANT INFORMATION ON BACK. | | 86-REBUILT PART, CORE REQUESTED 80-REBUILT PART, CORE REQUESTED. | GAS, OIL, LUBE | 0.00 |
| | | I ACKNOWLEDGE NOTICE AND ORAL APPROVAL OF AN INCREASE IN THE ORIGINAL ESTIMATED PRICE AND ADDITIONAL CUSTOMER OR WARRANTY WORK PERFORMED, AND/OR RECEIPT OF VEHICLE. | | PART NUMBERS ENDING WITH AN A ARE NOT MBUSA SUPPLIED PARTS. THESE | SUBLET AMOUNT | 0.00 |
| CALLED BY | | | CUSTOMER ACCEPTANCE | PARTS ARE NOT WARRANTED BY MBUSA | MISC. CHARGES | 0.00 |
| | | X | | FLETCHER JONES MOTORCARS WILL WARRANT THESE PARTS FOR 24 MONTHS. | TOTAL CHARGES | 1043.00 |
| | | I ACKNOWLEDGE NOTICE AND ORAL APPROVAL OF AN INCREASE IN THE ORIGINAL ESTIMATE PRICE (WARRANTY IF APPLICABLE) | | UNLIMITED MILEAGE NO LABOR. | LESS DISCOUNT | 0.00 |
| OUR CHARGES ARE NOT BASED ON ACTUAL TIME BUT ARE ESTABLISHED | | | | | SALES TAX | 0.00 |
| BY MUTIPLYING OUR RETAIL LABOR RATE BY INDUSTRY FLAT RATE ALLOWANCES OR OUR OWN EXPERIENCE OF THE AVERAGE TIME. | | | | | PLEASE PAY THIS AMOUNT ➡ | 1043.00 |

Copyright 2014 CDK Global, LLC  SERVICE INVOICE TYPE 2 - S/2C - IMAGING

**CUSTOMER COPY**

**EXHIBIT D-2**
**Fletcher Jones Motorcars Invoice #348310**
**dated: 30 JAN 2025**

# FLETCHER JONES
## M·O·T·O·R·C·A·R·S

**N E W P O R T    B E A C H**

CUSTOMER #: 1143162

**281021**

*INVOICE*

3300 Jamboree Rd.  Phone (949) 718-3200
Service Fax (949) 718-3380
**NEWPORT BEACH, CALIFORNIA 92660**
MON - FRI: 7:00 A.M. - 7:00 P.M.
SAT: 8:00 A.M. - 1:00 P.M.  Sprinter Closed Saturday
BAR # ARD 164440  EPA # CAR 000040113  EPA # CAL 000466672

BRIAN CONWAY
27662 ALISO CREEK RD
ALISO VIEJO, CA 92656-3881
HOME:949-828-7995  CONT:949-828-7995
BUS:              CELL:949-828-7995

DUPLICATE 2
PAGE 1

SERVICE ADVISOR: 1715 ROB DRAPER

| COLOR | YEAR | MAKE/MODEL | | VIN | LICENSE | MILEAGE IN / OUT | | TAG |
|---|---|---|---|---|---|---|---|---|
| SILVER | 11 | MERCEDES E350 | | WDDHF2EBXBA449406 | 8PCS243 | 106871/106876 | | T16499 |

| IN SERVICE DATE | PROD. DATE | WARR. EXP. | TARGET DATE | PO NO. | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 28MAY11 DD | | | 17:00 09JAN24 | | | CASH | 12JAN24 |

| R.O. OPENED | | READY | OPTIONS: | DLR:05101 ENG:3.0_Liter | | | |
|---|---|---|---|---|---|---|---|
| 09JAN24 | | 11JAN24 | | | | | |

| LINE | OPCODE | TECH | TYPE | HOURS | | LIST | NET | TOTAL |
|---|---|---|---|---|---|---|---|---|

A CLIENT UNDERSTANDS THIS COURTESY VEHICLE IS AT NO CHARGE. THE LOANER
    VEHICLE MUST BE RETURNED THE SAME DAY AS YOUR VEHICLE IS
    COMPLETED. ANY ADDITIONAL DAYS NOT AUTHORIZED BY YOUR SERVICE
    ADVISOR WILL RESULT IN A CHARGE OF $80 PER DAY
    210 NO CHARGE TO CUSTOMER / COURTESY SERVICE
        3  CRP                                      0.00      0.00
PARTS:     0.00 LABOR:     0.00 OTHER:     0.00  TOTAL LINE A:    0.00
     **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

B GUEST RETURNING FOR OIL CONSUMPTION TESTING, LOW OIL WARNING ON
CAUSE: .
    019690 OIL SEPARATOR REMOVE/INSTALL
        22531  W67                                   (N/C)
       1 642-010-23-91 BLEEDER VALVE                (N/C)
       9 FWC
       1 642-094-05-80 SEAL F CLEAN AIR LINE       (N/C)
PARTS:     0.00 LABOR:     0.00 OTHER:     0.00  TOTAL LINE B:    0.00
106876 CRANKCASE PRESSURE BLEED VALVE MALFUNCTION #WARRANTY 2253
--- VEHICLE RETURNED AFTER DRIVING VEHICLE FOR OIL CONSUMPTION TEST ,
VERIFIED OIL LEVEL LOW , WAS NECESSARY TO ADD 2.0 QUARTS TO FILL.
INSPECTED INTAKE TUBE FOR AIR FILTERS , FOUND EXCESSIVE OIL BUILD UP IN
INTAKE TUBE , FOUND OIL COMING FROM BLEED VALVE , FOUND SEAL OVER TIME
HAS EXPANDED CAUSING MORE OIL TO BE SUCKED IN AND CONSUMED , REMOVED
AND REPLACED BLEED VALVE , REINSTALLED IN REVERSE ORDER , TOPPED OFF
ENGINE OIL , PERFORMED VEHICLE TEST DRIVE , CHECKED OIL LEVEL AFTER
TEST DRIVE AND VERIFIED OIL LEVEL OK , PLEASE HAVE CUSTOMER MONITOR
VEHICLE OVER TIME
     **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

C CHECK AND CORRECT TIRE PRESSURES AS NEEDED
CAUSE: CHECKED TIRE PRESSURE AND CORRECTED TO L/F R/F L/R R/R
    TIRE CHECK AND CORRECT TIRE PRESSURES AS NEEDED
        2253  CRP                              0.00      0.00
PARTS:     0.00 LABOR:     0.00 OTHER:     0.00  TOTAL LINE C:    0.00
106876 TIRE PRESSURE CHECK SET TIRE PRESSURES TO 36 PSI FRONT AND
REAR

| TIME | | ORIGINAL ESTIMATE $ | AUTHORIZED ADDITIONS $ | ALL PARTS ARE NEW UNLESS SPECIFIED OTHERWISE. | DESCRIPTION | TOTALS |
|---|---|---|---|---|---|---|
| | | ☐ IN PERSON ☐ BY PHONE | PERSON CONTACTED | CODES: (PRECEDING PART NUMBER) A-VENDOR OTHER THEN MBUSA 70-CORE CHARGE/CREDIT | LABOR AMOUNT | |
| DATE | | SUBJECT TO CONDITIONS ON REVERSE SIDE OF THIS CONTRACT. PLEASE READ REVERSE SIDE. NOTICE TO CONSUMER: PLEASE READ IMPORTANT INFORMATION ON BACK. | | 88-REBUILT PART, CORE REQUESTED 80-REBUILT PART, CORE REQUESTED. | PARTS AMOUNT | |
| | | I ACKNOWLEDGE NOTICE AND ORAL APPROVAL OF AN INCREASE IN THE ORIGINAL ESTIMATED PRICE AND ADDITIONAL CUSTOMER OR WARRANTY WORK PERFORMED, AND/OR RECEIPT OF VEHICLE. | | PART NUMBERS ENDING WITH AN A ARE NOT MBUSA SUPPLIED PARTS. THESE | GAS, OIL, LUBE | |
| CALLED BY | | | | PARTS ARE NOT WARRANTED BY MBUSA | SUBLET AMOUNT | |
| | | CUSTOMER ACCEPTANCE | | FLETCHER JONES MOTORCARS WILL | MISC. CHARGES | |
| | | X___ | | WARRANT THESE PARTS FOR 24 MONTHS. UNLIMITED MILEAGE NO LABOR. | TOTAL CHARGES | |
| | | I ACKNOWLEDGE NOTICE AND ORAL APPROVAL OF AN INCREASE IN THE ORIGINAL ESTIMATE PRICE (WARRANTY IF APPLICABLE). | | | LESS DISCOUNT | |
| OUR CHARGES ARE NOT BASED ON ACTUAL TIME BUT ARE ESTABLISHED | | | | | SALES TAX | |
| BY MUTIPLYING OUR RETAIL LABOR RATE BY INDUSTRY FLAT RATE ALLOWANCES OR OUR OWN EXPERIENCE OF THE AVERAGE TIME. | | | | | PLEASE PAY THIS AMOUNT ➡ | |

Copyright 2014 CDK Global, LLC  SERVICE INVOICE TYPE 2 - 02C - IMAGING

**CUSTOMER COPY**

**EXHIBIT E**

**Fletcher Jones Motorcars Invoice #281021**
**dated: 12 JAN 2024**

# FLETCHER JONES
## M · O · T · O · R · C · A · R · S

CUSTOMER #: 1143162

**281021**

**NEWPORT    BEACH**
3300 Jamboree Rd. Phone (949) 718-3200
Service Fax (949) 718-3380
**NEWPORT BEACH, CALIFORNIA 92660**
MON - FRI: 7:00 A.M. - 7:00 P.M.
SAT: 8:00 A.M. - 1:00 P.M. Sprinter Closed Saturday
BAR # ARD 164440 EPA # CAR 000040113 EPA # CAL 000466672

\*INVOICE\*

BRIAN CONWAY
27662 ALISO CREEK RD
ALISO VIEJO, CA 92656-3881
HOME:949-828-7995 CONT:949-828-7995
BUS:                CELL:949-828-7995

DUPLICATE 2
PAGE 2

**SERVICE ADVISOR:** 1715 ROB DRAPER

| COLOR | YEAR | MAKE/MODEL | | VIN | LICENSE | MILEAGE IN/OUT | | TAG |
|---|---|---|---|---|---|---|---|---|
| SILVER | 11 | MERCEDES E350 | | WDDHF2EBXBA449406 | 8PCS243 | 106871/106876 | | T16499 |

| IN SERVICE DATE | PROD. DATE | WARR. EXP. | TARGET DATE | PO NO. | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 28MAY11 DD | | | 17:00 09JAN24 | | | CASH | 12JAN24 |

| R.O. OPENED | | READY | OPTIONS: | DLR:05101 ENG:3.0_Liter | | | |
|---|---|---|---|---|---|---|---|
| 09JAN24 | | 11JAN24 | | | | | |

| LINE | OPCODE | TECH | TYPE | HOURS | | LIST | NET | TOTAL |
|---|---|---|---|---|---|---|---|---|

D GUEST WAIVED FLETCHER JONES MOTORCARS MULTI-POINT INSPECTION - PLEASE
   CHECK LIGHTS, TIRE PRESSURES, AND TIRE TREAD DEPTHS
   NMPI GUEST WAIVED FLETCHER JONES MOTORCARS
        MULTI-POINT INSPECTION - PLEASE CHECK
        LIGHTS, TIRE PRESSURES, AND TIRE TREAD
        DEPTHS
        2253    CRP                                        0.00        0.00
PARTS:    0.00  LABOR:    0.00  OTHER:    0.00  TOTAL LINE D:        0.00
 106876 CHECKED EXTERIOR LIGHTS
        **************************************************

E COURTESY CAR WASH
   210 NO CHARGE TO CUSTOMER / COURTESY SERVICE
        3    CRP                                           0.00        0.00
PARTS:    0.00  LABOR:    0.00  OTHER:    0.00  TOTAL LINE E:        0.00
        **************************************************

ORIGINAL ESTIMATE $ _____
AUTHORIZED ESTIMATE $ _____
I ACKNOWLEDGE NOTICE OF AN INCREASE IN THE OR
IGINAL ESTIMATED PRICE AND ADDITIONAL CUST OR
WARRANTY WORK PERFORMED, AND/OR RECEIPT OF
VEHICLE.
X _____

| TIME | | ORIGINAL ESTIMATE $ | AUTHORIZED ADDITIONS $ | ALL PARTS ARE NEW UNLESS SPECIFIED OTHERWISE. | DESCRIPTION | TOTALS |
|---|---|---|---|---|---|---|
| | | ☐ IN PERSON  ☐ PERSON CONTACTED ☐ BY PHONE | | **CODES:** (PRECEDING PART NUMBER) A-VENDOR OTHER THEN MBUSA 70-CORE CHARGE/CREDIT | LABOR AMOUNT | 0.00 |
| DATE | | SUBJECT TO CONDITIONS ON REVERSE SIDE OF THIS CONTRACT. PLEASE READ REVERSE SIDE. NOTICE TO CONSUMER: PLEASE READ IMPORTANT INFORMATION ON BACK. | | 88-REBUILT PART, CORE REQUESTED 80-REBUILT PART, CORE REQUESTED. | PARTS AMOUNT | 0.00 |
| | | I ACKNOWLEDGE NOTICE AND ORAL APPROVAL OF AN INCREASE IN THE ORIGINAL ESTIMATED PRICE AND ADDITIONAL CUSTOMER OR WARRANTY WORK PERFORMED, AND/OR RECEIPT OF VEHICLE. | | | GAS, OIL, LUBE | 0.00 |
| | | CUSTOMER ACCEPTANCE | | PART NUMBERS ENDING WITH AN A ARE NOT MBUSA SUPPLIED PARTS. THESE | SUBLET AMOUNT | 0.00 |
| CALLED BY | | X | | PARTS ARE NOT WARRANTED BY MBUSA FLETCHER JONES MOTORCARS WILL | MISC. CHARGES | 0.00 |
| | | I ACKNOWLEDGE NOTICE AND ORAL APPROVAL OF AN INCREASE IN THE ORIGINAL ESTIMATE PRICE (WARRANTY IF APPLICABLE) | | WARRANT THESE PARTS FOR 24 MONTHS. UNLIMITED MILEAGE NO LABOR. | TOTAL CHARGES | 0.00 |
| OUR CHARGES ARE NOT BASED ON ACTUAL TIME BUT ARE ESTABLISHED | | | | | LESS DISCOUNT | 0.00 |
| BY MUTIPLYING OUR RETAIL LABOR RATE BY INDUSTRY FLAT RATE ALLOWANCES OR OUR OWN EXPERIENCE OF THE AVERAGE TIME. | | | | | SALES TAX | 0.00 |
| | | | | | **PLEASE PAY THIS AMOUNT** ➡ | 0.00 |

Copyright 2014 CDK Global, LLC  SERVICE INVOICE TYPE 2 - S/2C - IMAGING

**CUSTOMER COPY**

**EXHIBIT E**
**Fletcher Jones Motorcars Invoice #281021**
**dated: 12 JAN 2024**

8/27/25, 2:37 PM    Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 190 of 211    Page
Gmail - 2011 e350 boroscope pictures
ID #:190

 Gmail

**Brian Conway <beiwulf1976@gmail.com>**

---

### 2011 e350 boroscope pictures
2 messages

---

**Alex Kniazuk** <AKniazuk@fjmercedes.com>                    Wed, Jan 29, 2025 at 12:39 PM
To: "beiwulf1976@gmail.com" <beiwulf1976@gmail.com>

Please see attached boroscope pictures from the subject cylinder number 6. Nothing telling, no extreme damage found cylinder even has cross hatch still.

Sent from my iPhone

On Jan 28, 2025, at 10:18 AM, Tom Madsen <TMadsen@fjmercedes.com> wrote:

**EXHIBIT F**

Borescope pictures – without mechanical analysis or MB Engineering comments



**EXHIBIT F**

Borescope pictures – without mechanical analysis or MB Engineering comments

8/27/25, 2:37 PM Case 8:25-cv-01949-DOC-KES Document 1 Filed 08/29/25 Page 192 of 211 Page
Gmail - 2041-2350 boroscope pictures
ID #:192



Borescope pictures – without mechanical analysis or MB Engineering comments

**EXHIBIT F**

8/27/25, 2:37 PM    Case 8:25-cv-01949-DOC-KES    Document 1    Filed 08/29/25    Page 193 of 211    Page
Gmail - 2015 e350 boroscope pictures
ID #:193



**EXHIBIT F**

Borescope pictures – without mechanical analysis or MB Engineering comments

8/27/25, 2:37 PM Case 8:25-cv-01949-DOC-KES Document 1 Filed 08/29/25 Page 194 of 211 Page
ID #:194
Gmail - 20140350 boroscope pictures



**EXHIBIT F**

Borescope pictures – without mechanical analysis or MB Engineering comments

**Letter to Mercedes-Benz North America**

**Brian Conway**
**Aliso Viejo, CA 92656**
**949.828.7995**
**beiwulf1976@gmail.com**
**27 JAN 2025**

**Mercedes-Benz USA, LLC**
Attn: Customer Assistance Center
One Mercedes-Benz Drive
Sandy Springs, GA 30328

**Subject:** Warranty Request for Repairs Stemming from Emissions Modification Workmanship and
Systemic Failures

**Dear Mercedes-Benz Customer Assistance Team,**

I am writing to formally request warranty coverage and resolution for ongoing systemic issues with my
**2011 Mercedes-Benz E350 BlueTEC**, stemming from the emissions modification performed in **July 2022**.
These issues have rendered my vehicle unreliable and have created significant challenges for my daily life
as a **disabled veteran** caring for a **service animal** and a **newborn**.

My goal is to work constructively with **Fletcher Jones Mercedes-Benz** to address these issues and restore
my vehicle to its proper working order. However, the repeated failures and systemic damage caused by
poor workmanship during the emissions modification must be recognized and resolved under the
**Extended Modification Warranty (EMW)**.

---

#### 1. Workmanship Issues During the Emissions Modification

The emissions modification performed by **Laguna Niguel Mercedes-Benz** in July 2022 exhibited clear
workmanship issues that have directly contributed to the systemic failures affecting my vehicle. These
include:

1. **Improperly Installed Emissions Components:**

   o The **NOx sensor** and **post-exhaust treatment dosage valve** were improperly seated
   during the modification, disrupting emissions management.

   o This caused prolonged emissions mismanagement, including excessive soot production,
   DPF clogging, and turbo stress.

2. **Damage to Engine Bay Components:**

   o During the modification, **firewall insulation** in my engine bay was damaged. Despite
   acknowledging this, the service manager, **Matt Moskal**, refused to assist with resolving
   the issue.

3. **Neglect in Addressing Post-Modification Issues:**

**EXHIBIT G-1**
**Letter to Mercedes-Benz USA**
**dated: 27 JAN 2025**
**USPS Track #: 9589071052700617456563**

- o White smoke observed after the modification was traced to the improperly seated dosage valve.

- o The State of California's **Bureau of Automotive Repair (BAR)** was involved in investigating this issue, yet no corrective action was taken by Laguna Niguel Mercedes-Benz.

These issues reflect a pattern of poor workmanship, resulting in systemic emissions failures that have caused significant stress on the vehicle's engine and emissions components.

---

### 2. Current Issues and Systemic Failures

#### A. Turbocharger Failure:

The turbocharger has been confirmed to have **excessive shaft play** and **oil leakage**, requiring replacement. Turbo failure is directly tied to:

- **DPF Backpressure:** A clogged DPF caused increased backpressure, placing undue stress on the turbo.

- **Oil Contamination:** Oil leaks from the turbo have contributed to contamination throughout the intake system, increasing soot buildup and wear on the engine.

#### B. DPF Clogging:

The DPF is heavily clogged with soot, impairing proper regeneration and causing:

- Increased backpressure, which disrupts exhaust flow and elevates exhaust gas temperatures (EGT).

- Thermal stress, particularly on **cylinder 6**, due to its proximity to the exhaust manifold and rear turbo components.

#### C. Cylinder 6 Compression Loss:

Cylinder 6 has a **16% reduction in compression** compared to the other cylinders (21 bar vs. 25 bar). This is significant and cannot be dismissed as "acceptable" without addressing its broader impact:

- **Thermal Inefficiency:** Reduced compression disrupts combustion balance and increases localized heat, worsening engine performance.

- **Soot and Oil Contamination:** Prolonged emissions mismanagement (e.g., from the NOx sensor and dosage valve issues) has fouled cylinder 6, contributing to mechanical degradation.

---

### 3. Secondary Effects of Systemic Failures

In addition to workmanship issues, the emissions system failures have caused secondary damage, including:

1. **Oil Contamination from PCV and Turbo Systems:**

   o   The **PCV system**, replaced during the modification and again in 2024, failed prematurely due to excessive oil contamination caused by turbo oil leaks and systemic soot buildup.

   o   This contamination has impacted the intake manifold, intercooler, and DPF, further exacerbating emissions inefficiency.

2. **Thermal Stress from DPF Backpressure:**

   o   The clogged DPF has caused prolonged backpressure, creating high thermal loads on cylinder 6 and the turbocharger.

3. **Intake and Exhaust Soot Accumulation:**

   o   Improperly seated emissions components have caused excessive soot accumulation, directly impacting the DPF, turbo, and engine performance.

---

### 4. Obligations Under the Extended Modification Warranty (EMW)

The **Extended Modification Warranty (EMW)** obligates Mercedes-Benz to ensure the proper functioning of emissions-related components, including the DPF, turbocharger, and all systems affected by the emissions modification. Ignoring a clear symptom of emissions mismanagement—such as thermal stress causing compression loss in cylinder 6—not only neglects the technical responsibilities outlined in the EMW but also violates the spirit of that obligation.

Given the systemic nature of these failures and the clear connection to the workmanship issues during the emissions modification, I request the following repairs be covered under the EMW:

1. **Turbocharger Replacement:** Due to confirmed failure (shaft play and oil leakage).

2. **DPF Cleaning or Replacement:** To restore proper emissions function and resolve backpressure issues.

3. **Engine Repairs or Replacement:** To address the compression loss in cylinder 6 caused by emissions mismanagement and thermal stress.

---

### 5. Request for Resolution and Collaboration with Fletcher Jones

I am seeking a resolution that acknowledges the systemic failures caused by emissions modification workmanship and ensures that my vehicle is restored to proper working order. I am committed to working with **Fletcher Jones Mercedes-Benz** to address these issues comprehensively, and I trust that Mercedes-Benz Corporate will support this effort under the EMW.

I kindly ask for your written confirmation of the steps Mercedes-Benz will take to resolve this matter, as well as any technical documentation regarding the "acceptable" compression standard. Thank you for your attention to this matter and for your commitment to customer satisfaction.

**EXHIBIT G-1**
**Letter to Mercedes-Benz USA**
**dated: 27 JAN 2025**
**USPS Track #: 9589071052700617456563**

Sincerely,
Brian Conway
VIN: WDDHF2EBXBA449406
949.828.7995
beiwulf1976@gmail.com

 Gmail

## Fwd: Postal Annex+ Receipt

1 message

Brian Conway <beiwulf1976@gmail.com>                                      Fri, Jan 31, 2025 at 12:01 PM

Mercedes USA corporate certified mail.

--------- Forwarded message ---------
From: **PostalAnnex+ 14001** <mailserver@notify.postalmate.net>
Date: Thu, Jan 30, 2025 at 5:14 PM
Subject: Postal Annex+ Receipt
To: <BEIWULF1976@gmail.com>

e-Receipt

PostalAnnex+
23986 Aliso Creek Rd.
Laguna Niguel,CA 92677
Ph:(949)600-7037
Fax:(949)600-7093
www.postalannex.com/14001
Store Hours Mon-Fri 9:00AM - 6:00PM
Saturday 10:00AM - 4:00PM

```
USPS First Class Mail          18.20
  Track #: 9589071052700617456563
  Ret Rcpt: 959094027687212209396

    SUBTOTAL               18.20
    TAX                     0.00
    TOTAL                  18.20
TEND Debit                 18.20

Total shipments: 0
Customer: None selected
EMAD                     01/30/2025
#88862                    05:13 PM
Workstation: 0 - Master Workstation
CCTran# dd8256cc-fd96-4020-aadf-
1f6015a43789
```

**EXHIBIT G-2**
**Letter to Mercedes-Benz USA**
**dated: 27 JAN 2025**
**USPS Track #: 9589071052700617456563**

***********************************
Thank you for your business!

 Gmail

Brian Conway <beiwulf1976@gmail.com>

## Final invoice PDF
8 messages

**Alex Kniazuk** <AKniazuk@fjmercedes.com>
To: "beiwulf1976@gmail.com" <beiwulf1976@gmail.com>

Thu, Jan 30, 2025 at 9:44 AM

 *Alex Kniazuk* | Service Advisor

Direct (949) 718-3189 | akniazuk@fjmercedes.com

Fletcher Jones Motorcars

3300 Jamboree Road Newport Beach, CA 92660

 FLETCHER JONES MOTORCARS
NEWPORT BEACH

📄 **CSI-348310_FJM_S_679bbaece86a6.pdf**
224K

**Brian Conway** <beiwulf1976@gmail.com>
To: Alex Kniazuk <AKniazuk@fjmercedes.com>

Thu, Jan 30, 2025 at 10:35 AM

Pictures attached regarding poor workmanship from Laguna Niguel Mercedes
1 Sep 2023
Improperly seated dosage valve
[Quoted text hidden]

**4 attachments**


**IMG_2377.HEIC**
1758K


EXHIBIT H-1



**IMG_2378.HEIC**
1733K



**IMG_2376.HEIC**
1693K



**IMG_2379.HEIC**
1728K

---

**Brian Conway** <beiwulf1976@gmail.com>
To: Alex Kniazuk <AKniazuk@fjmercedes.com>

Thu, Jan 30, 2025 at 10:38 AM

Videos attached regarding smoking from under my vehicle within the fist 30 days after emissions modification performed from Laguna Niguel Mercedes

 IMG_2358.MOV

IMG_2359.MOV

[Quoted text hidden]

---

**Alex Kniazuk** <AKniazuk@fjmercedes.com>
To: Brian Conway <beiwulf1976@gmail.com>

Thu, Jan 30, 2025 at 10:40 AM

Received the pictures and videos

**From:** Brian Conway <beiwulf1976@gmail.com>
**Sent:** Thursday, January 30, 2025 10:39 AM
**To:** Alex Kniazuk <AKniazuk@fjmercedes.com>
**Subject:** Re: Final invoice PDF



**CAUTION: This is an external email! STOP, ASSESS, and VERIFY**

**Do not click on the links or attachments** unless you recognize the sender and trust that the content
is safe.
To report this email as suspicious, please forward it to cybersecurity@fletcherjones.com

Videos attached regarding smoking from under my vehicle within the fist 30 days after emissions modification performed from Laguna
Niguel Mercedes

[Quoted text hidden]

**Alex Kniazuk** <AKniazuk@fjmercedes.com>                                              Thu, Jan 30, 2025 at 11:19 AM
To: Brian Conway <beiwulf1976@gmail.com>

| Model | Part number | Supplier | Version |
|---|---|---|---|
| Hardware | 212 545 10 01 | Bosch | 08/43 01 |
| Software | 212 902 99 04 | Bosch | 10/29 75 |
| Boot software | --- | --- | 10/29 75 |
| Diagnosis identifier | 020151 | Control unit variant | 172_E01A |

## N3/9 - Motor electronics 'CDI60LS' for combustion engine -f-
## 'OM642' (CDI)

| Model | Part number | Supplier | Version |
|---|---|---|---|
| Hardware | 642 901 36 00 | Bosch | 18/35 00 |
| Software | 642 902 52 04 | Bosch | 21/08 00 |
| Software | 642 903 24 20 | Bosch | 22/02 00 |
| Software | 642 904 02 00 | Bosch | 11/18 00 |
| Boot software | --- | --- | 21/08 00 |
| Diagnosis identifier | 020538 | Control unit variant | CR60LS_Diag_38h |

| Fault | Text | | | Status |
|---|---|---|---|---|
| 111500 | The soot content of the diesel particulate filter is implausible. | | | S ☼ |
| | **Name** | | **First occurrence** | **Last occurrence** |
| | Calculated exhaust volume flow rate in diesel particulate filter | | 235.20m³/h | 627.20m³/h |
| | Engine speed | | 1960.00 1/min | 900.00 1/min |
| | Pressure differential in diesel particulate filter | | 0.24bar | 0.00bar |
| | Average offset value of component 'B28/8 (Diesel particulate filter differential pressure sensor)' | | 0.00bar | 0.26bar |
| | Exhaust temperature upstream of diesel particulate filter | | 295.53degC | -40.00degC |
| | Injection quantity without quantity correction (specified value) | | 18.00mm^3/hub | 1.60mm^3/hub |
| | Exhaust volume flow rate for check of maximum pressure differential during run-on time | | 666.40m³/h | 1342.60m³/h |
| | Soot content of diesel particulate filter (filtered value) | | 0.00kg | 0.00kg |
| | Maximum pressure differential in diesel particulate filter | | 0.57bar | --- |
| | Ash content of diesel particulate filter | | 0g | 0g |
| | Soot content of diesel particulate filter | | 7g | 14g |
| | Frequency counter | | --- | 1.00 |

| 14.01.2025 10:24:25 | 09/2024 | WDDHF2EBXBA449406 (212.024) |
|---|---|---|
| Copyright 2025 Mercedes-Benz AG | Order number: 5 | Page '1' of '8' |

**From:** Brian Conway <beiwulf1976@gmail.com>
**Sent:** Thursday, January 30, 2025 10:39 AM
**To:** Alex Kniazuk <AKniazuk@fjmercedes.com>
**Subject:** Re: Final invoice PDF



EXHIBIT H-1

**CAUTION: This is an external email! STOP, ASSESS, and VERIFY**

**Do not click on the links or attachments** unless you recognize the sender and trust that the content is safe.

To report this email as suspicious, please forward it to cybersecurity@fletcherjones.com

Videos attached regarding smoking from under my vehicle within the fist 30 days after emissions modification performed from Laguna Niguel Mercedes

IMG_2358.MOV

On Thu, Jan 30, 2025 at 10:35 AM Brian Conway <beiwulf1976@gmail.com> wrote:

[Quoted text hidden]   IMG_2359.MOV

---

**Brian Conway** <beiwulf1976@gmail.com>                                      Thu, Jan 30, 2025 at 4:05 PM
To: Alex Kniazuk <AKniazuk@fjmercedes.com>

Please see attached for further documentation, picture taken at shop July 2023. A year after emission modification

Brian

On Thu, Jan 30, 2025 at 10:35 AM Brian Conway <beiwulf1976@gmail.com> wrote:
[Quoted text hidden]


IMG_2992.HEIC
2892K

---

**Alex Kniazuk** <AKniazuk@fjmercedes.com>                                   Thu, Jan 30, 2025 at 5:42 PM
To: Brian Conway <beiwulf1976@gmail.com>

Good afternoon, just wanted to go over a few items

-    We will update the case/contact the engineer assigned to the case to find out a list of possible outcomes after performing an oil consumption test and providing the results to the engineers.

-    I have my service directors approval to cover the cost of the oil consumption test with your approval. We would not be able to drive it to perform the test.

-    If possible, we can meet tomorrow to drop off the loaner vehicle, and talk 1 on 1. Just let me know what time works best for you tomorrow.

I will be in at 7am, however I may not have any additional information ready until later in the morning when we hear back from the engineers.

*EXHIBIT H-1*

**From:** Brian Conway <beiwulf1976@gmail.com>
**Sent:** Thursday, January 30, 2025 4:06 PM
**To:** Alex Kniazuk <AKniazuk@fjmercedes.com>
**Subject:** Re: Final invoice PDF

---

**CAUTION: This is an external email! STOP, ASSESS, and VERIFY**

**Do not click on the links or attachments** unless you recognize the sender and trust that the content
is safe.
To report this email as suspicious, please forward it to cybersecurity@fletcherjones.com

---

Please see attached for further documentation, picture taken at shop July 2023. A year after emission modification

Brian

[Quoted text hidden]

---

**Brian Conway** <beiwulf1976@gmail.com>                                                  Thu, Jan 30, 2025 at 7:21 PM
To: Alex Kniazuk <AKniazuk@fjmercedes.com>

**Subject: Formal Request for Comprehensive Root Cause Analysis (RCA) & Warranty Compliance – Ongoing Engine &
Emissions System Failures**

**Dear Alex,**

I am submitting this letter as a **formal request for a full Root Cause Analysis (RCA)** regarding the **Diesel Particulate Filter (DPF)
failure, emissions system modifications, oil consumption, and engine performance concerns** associated with my vehicle,
currently in the care of Fletcher Jones Motorcars.

This request is based on **documented inconsistencies in DPF-related diagnostics**, concerns about **improper emissions system
modifications**, and industry-standard best practices for **failure analysis and warranty-related investigations**.

---

# 1. Mercedes-Benz USA's Failure to Engage – Indication of Bad Faith

Despite multiple documented attempts to engage **Mercedes-Benz USA directly**, I have received **no meaningful response or
assistance from their corporate representatives.** Over the past week, I have made **two phone calls to the Mercedes-Benz USA
customer service line, which is designated to assist customers, yet I have been met with outright refusal of support.**

## Documented Customer Service Calls & Lack of Response

- **January 27, 2025, at 13:09 PST** → Called **Mercedes-Benz USA customer service (1-800-367-6372)** for **24 minutes and 56
  seconds.** Spoke with **Diamond,** a customer service representative. **Requested direct contact from MBUSA with both
  Fletcher Jones service writer Alex Kniazuk and myself regarding the scheduled testing to be performed at the
  dealership. No follow-up occurred.**
- **January 27, 2025, at 17:49 PST** → Called **Mercedes-Benz USA customer service (1-800-367-6372) again** for **24 minutes
  and 19 seconds.** Spoke with **Shamara regarding Case #12060171.**
  - **Shamara confirmed that my case was never escalated,** which is why **no call back was received.**
  - When I asked why the case was not escalated, she repeatedly **attempted to redirect the conversation instead of
    reviewing the case notes.**
  - I explicitly asked her **three separate times** to review the case details in full, but she refused and attempted to shift the
    **discussion instead of addressing my concerns directly.**
  - Due to **the lack of proper customer service, failure to escalate, and refusal to provide a documented review of
    my case history,** I ended the call after informing her that I would be filing a complaint regarding **Mercedes-Benz USA's
    failure to meet their own customer service standards.**

- ◆ This refusal to properly engage is a clear red flag and demonstrates bad faith on the part of Mercedes-Benz.

  - • This lack of response is inconsistent with the obligations outlined in the Approved Emissions Modification (AEM) warranty.
  - • This letter serves as further documentation that I have continuously attempted to resolve this issue in good faith for over two years.

- ◆ Request:

  - • I demand a written response from Mercedes-Benz USA explaining their refusal to engage in a good-faith resolution of this issue.
  - • I request that a Mercedes-Benz Field Service Engineer (FSE) be assigned immediately to formally review all test data and provide a final determination on the underlying failures.

## 2. Approved Emissions Modification (AEM) Warranty Compliance & Manufacturer Responsibility

The AEM warranty legally binds Mercedes-Benz to investigate and repair any emissions-related component failures that arise as a result of the Approved Emissions Modification. As outlined by the EPA and CARB-approved Mercedes-Benz Emissions Modification Warranty, the manufacturer must:

✅ Diagnose and repair failed emissions components covered under the AEM warranty.
✅ Ensure proper engine performance and emissions compliance after the modification.
✅ Perform all necessary diagnostics, including full emissions system verification, before forcing customers into non-relevant testing (e.g., oil consumption tests).

- ◆ Request for AEM Warranty Compliance:

  - • Provide the official Mercedes-Benz warranty documentation specifying the required diagnostic procedures before resorting to an oil consumption test.
  - • Clarify why emissions-related failures (DPF, NOx sensor, etc.) are not being properly evaluated before an oil consumption test.
  - • Provide justification for why the turbocharger and PCV system are not being investigated as contributors to emissions failures.

◆ **Reference: According to the Mercedes-Benz Bluetec Update Extended Modification Warranty, which applies to all modified vehicles, emissions-related failures must be properly diagnosed and repaired before releasing the vehicle. The full documentation is available here.**

## 3. Summary of Outstanding Diagnostic & Repair Requests

✅ **Live Data Logging of Pressure Differential & Exhaust Temp** → Ensures sensor accuracy and verifies true backpressure conditions.
✅ **Pre/Post DPF NOx Sensor Readings** → Determines if upstream components contributed to failure.
✅ **Oil Contamination Analysis in DPF** → Identifies if oil consumption or blow-by contributed to restriction.
✅ **Verification of DPF Pressure Sensor Accuracy** → Confirms if false readings are triggering premature regen cycles.
✅ **Turbocharger Performance & Seal Integrity Test** → Determines if turbo blow-by is contaminating the emissions system.
✅ **PCV System Functionality Test** → Ensures crankcase pressure regulation is functioning properly.
✅ **Borescope Inspection Analysis** → Requires official Mercedes-Benz corporate verification of findings.

EXHIBIT H-1

## 4. Summary of Requests – Ensuring Compliance with Industry Standards & Warranty Obligations

✅ A written explanation from MBUSA regarding their refusal to provide customer support.

✅ Immediate assignment of a Field Service Engineer (FSE) to oversee this case.

✅ Complete all emissions diagnostics required under the AEM warranty before release of the vehicle.

✅ Reject another oil consumption test in favor of proper diagnostics.

✅ Ensure that turbo, PCV, and emissions-related failures are resolved before vehicle return.

This request is being made **in good faith** to ensure that **Mercedes-Benz and Fletcher Jones comply with their warranty obligations** and prevent further damage to my vehicle.

Please provide a **formal response within 48 hours** confirming the next steps for repair.

**Sincerely,**
**Brian Conway**
**949.828.7995**
**WDDHF2EBXBA4494006**
[Quoted text hidden]



 Gmail

Brian Conway <beiwulf1976@gmail.com>

---

### Good faith and Warranty Requirements
1 message

**Brian Conway** <beiwulf1976@gmail.com>                                                 Thu, Jan 30, 2025 at 8:01 PM
To: Alex Kniazuk <AKniazuk@fjmercedes.com>

**Subject:** Formal Request for Warranty Compliance and Resolution of Outstanding Diagnostic Requirements

**Dear Alex,**

I am writing to formally request that Fletcher Jones Mercedes-Benz fulfill its obligations as an **authorized Mercedes-Benz dealership** under the **Approved Emissions Modification (AEM) Warranty**, **Mercedes-Benz New Vehicle Limited Warranty**, and **applicable federal and state consumer protection laws** regarding the ongoing diagnostic and repair concerns associated with my vehicle.

As an **authorized warranty repair facility for Mercedes-Benz**, Fletcher Jones has a duty to ensure that **all warranty-covered diagnostics and repairs are conducted in accordance with manufacturer guidelines, industry best practices, and federal regulatory requirements** before releasing the vehicle.

---

## 1. Dealership Obligations Under Mercedes-Benz Warranty Programs

Under the **Mercedes-Benz New Vehicle Limited Warranty** and **AEM Warranty**, an authorized dealership must:

☑ **Perform necessary warranty repairs or replacements to correct defects in material or workmanship at no charge to the customer.**
☑ **Conduct thorough diagnostics to identify the root cause of any reported concerns before releasing the vehicle.**
☑ **Provide documentation detailing all findings, test results, and work performed.**
☑ **Maintain open communication with the customer regarding repair status, next steps, and expected resolution.**
☑ **Adhere to all Mercedes-Benz manufacturer guidelines and technical procedures when diagnosing and repairing emissions-related components.**
☑ **Escalate the case to Mercedes-Benz USA when dealership technicians are unable to resolve an issue or further manufacturer involvement is required.**

 ◆ **Reference:** Mercedes-Benz New Vehicle Warranty Guidelines

---

## 2. Industry Standards on Proper Diagnostics vs. Repeating an Oil Consumption Test

Fletcher Jones Mercedes-Benz has **recommended another oil consumption test** despite already having performed **compression, leak-down, and borescope testing**. However, **industry best practices and emissions diagnostic standards indicate that an oil consumption test is not the proper diagnostic tool for the failures present in this case.**

 ✦ **Compression, leak-down, and borescope testing have already been conducted at Fletcher Jones.** If these tests are deemed "within specification," then oil consumption concerns are likely due to an emissions or turbo-related failure rather than engine wear.
 ✦ **The DPF, turbo, and PCV system all have direct impacts on oil consumption and emissions efficiency.** If these components have not been properly tested, **repeating an oil consumption test does not address the underlying cause.**
 ✦ **The dealership has not provided any written technical documentation from MBUSA supporting its claim that an oil consumption test is required before further emissions-related diagnostics.**
 ✦ **An oil consumption test does not provide conclusive insight into emissions-related failures** such as **turbo oil blow-by, crankcase pressure irregularities (PCV failure), or fuel dilution from improper post-injection cycles.**

 ◆ **Industry Standard Best Practices for Diagnosing Emissions & Oil Consumption Issues:**

   • **SAE J2012 (Diagnostic Trouble Code Definitions):** Requires emissions-related failures to be diagnosed **at the system level, not solely at the engine level.**
   • **EPA Emissions Compliance Guidelines:** Mandates that **all emissions-related failures, including oil contamination in after-treatment systems, must be diagnosed using full emissions testing protocols, not just oil consumption testing.**
   • **Mercedes-Benz AEM Warranty:** Specifies that **all emissions-related failures must be diagnosed and repaired under warranty before releasing the vehicle.**

 ◆ **Request for Proper Diagnostics Before Releasing the Vehicle:**
☑ **Turbocharger Performance & Seal Integrity Test** – Ensures that **turbo blow-by is not contributing to oil consumption or emissions failure.**
☑ **PCV System Functionality Test** – Confirms that **crankcase pressure regulation is functioning properly.**
☑ **Live NOx Sensor Readings & Exhaust Flow Validation** – Ensures that **post-DPF replacement, the emissions system is functioning correctly.**

EXHIBIT H-2
WARRANTY COMPLIANCE / RCA

☑ **Oil Contamination Analysis in DPF** – Identifies **if excess oil consumption is affecting emissions system performance.**
☑ **Borescope Inspection Manufacturer Interpretation** – MBUSA **must provide an official engineering review of the borescope findings.**

## 3. Federal and State Laws Governing Warranty Service Obligations

Under both **federal and California consumer protection laws,** Fletcher Jones is legally required to perform warranty services in good faith. Relevant statutes include:

☑ **Magnuson-Moss Warranty Act (15 U.S.C. § 2301-2312)**

- Prohibits manufacturers and authorized dealerships from denying warranty coverage without reasonable justification.
- Requires dealerships to honor manufacturer warranties and provide clear, written explanations for any service denial or delay.

☑ **California Song-Beverly Consumer Warranty Act (California Civil Code §1793.2)**

- Requires warranty service providers to make good-faith efforts to diagnose and repair covered defects within a reasonable number of attempts and in a timely manner.
- **Prohibits delaying necessary warranty repairs without reasonable cause. Repeating an oil consumption test instead of properly diagnosing known emissions and turbo-related failures constitutes an unreasonable delay.**

☑ **EPA-Approved AEM Warranty Guidelines**

- The dealership must fully diagnose and repair emissions-related failures caused by or associated with the AEM modification before returning the vehicle.
- MBUSA cannot allow a dealership to release a vehicle with **unresolved emissions-related failures** that may impact vehicle compliance.

◆ **Reference:** Mercedes-Benz AEM Extended Modification Warranty

## 4. Next Steps & Good Faith Resolution Request

I am submitting this request in **good faith** to ensure that all warranty-covered diagnostics and repairs are completed properly before my vehicle is released. To that end:

☑ I **request a written response within 48 hours confirming that all outstanding diagnostics will be completed and documented.**
☑ If **Fletcher Jones is unable to complete any portion of the required diagnostics, it must formally escalate the case to MBUSA and provide me with confirmation of this escalation.**
☑ I **request a copy of all diagnostic reports, including manufacturer interpretations of any test results (borescope analysis, NOx sensor validation, turbo inspection, etc.).**
☑ I **request a written explanation for why an oil consumption test is necessary when known emissions failures remain unresolved.**

If these steps are not taken, I will have no choice but to escalate the matter to **the California Bureau of Automotive Repair (BAR), the California Attorney General's Office, and the Environmental Protection Agency (EPA)** for failure to comply with **manufacturer warranty obligations and federal emissions service requirements.**

However, I would prefer to work toward a resolution that ensures my vehicle receives the necessary warranty services **without further delay.** This should be reviewed along with the prior email sent this evening and carefully considered before asking me for another oil consumption test. Please confirm receipt of this request and provide a response within the stated time frame.

Thank you Alex again for your continued assistance with this very personal matter affecting my family and well being.

Sincerely,
Brian Conway
949.828.7995
WDDHF2EBXBA4494006


**EXHIBIT H-2** WARRANTY COMPLIANCE / RCA



**Crafts Law Firm**
*California Litigation*

Direct No.: (949) 484-7404
Fax No.: (949) 486-0171
Email: aad@craftslawfirm.com

File No.: 28499-2

March 19, 2025

**<u>VIA FEDEERAL EXPRESS & U.S. MAIL</u>**

Brian Conway
27662 Aliso Creek Road
Aliso Viejo, CA 92656

      Re:    Your Vehicle:  2011 Mercedes Benz E350
             <u>VIN Ending:  ...BA449406</u>

Dear Mr. Conway:

      Please be advised that I am counsel for Fletcher Jones Motor Cars, Inc dba Fletcher Jones Motorcars ("FJMC").  FJMC's management has requested that I review the recent correspondence exchange between you and it then reply to you with the dealership's positions and contentions.

      In light of your threats regarding possible legal action, **please do not contact FJMC or any of its personnel directly again regarding this issue. Rather, please address any further correspondence regarding this matter to my office. My mailing address is below, and my email address is aad@craftslawfirm.com.**

      I am informed that on or about January 14, 2025, you presented your vehicle to FJMC's service center because the "check engine" light had activated, and you believed that the vehicle was consuming an excessive amount of oil. Pursuant to your authorization, FJMC conducted diagnostic testing of the engine at which time it determined that the diesel particulate filter ("DPF") was not functioning properly.  The DPF was replaced under the manufacturer's emissions warranty at no charge to you.

      Upon investigating the cause of the oil consumption, FJMC completed a leak test and borescope of the engine's cylinder walls. The leak test and the borescope were inclusive. The dealership then requested assistance from the manufacturer regarding "next steps." Mercedes Benz recommended additional testing including an oil consumption test which you refused to authorize as you believed such testing should be covered under the vehicle's Mercedes Benz warranty.

      I am informed that FJMC advised you in January that it submitted your claim regarding the oil consumption issue to Mercedes Benz. Unfortunately, Mercedes Benz declined to cover any additional testing or repairs under any warranty; FJMC advised you in January that the vehicle manufacturer had denied your warranty claim. Accordingly, since at least the end of January, there have been no outstanding warranties repairs; your claim has been declined by Mercedes Benz. Importantly, FJMC did not warrant any of the issues you have raised.

333 S. Anita Drive, Suite 730  Orange, CA 92868  |  Phone: 949-484-7400  Fax: 949-486-0171  |  www.craftslawfirm.com

2924406.1

**Exhibit I**
*Letter from Crafts Law Firm*

*Crafts Law Firm*

Brian Conway
March 19, 2025
Page 2

I understand further that you have been in touch with Mercedes Benz customer care, and it has reiterated its declination of your warranty repair requests. Accordingly, as service director, Eric Smith, has advised you several times, unless you authorize and agree to pay for the additional testing there is nothing more that FJMC can do to attempt to resolve the issues you are experiencing with your vehicle.

I am also advised that you made a complaint regarding FJMC to the Bureau of Automotive Repair which has been resolved in FJMC favor.

At this point, FJMC is no longer willing to retain you as a customer. It will no longer provide you with any additional service or repairs for the vehicle identified above.

Your vehicle has been ready for you to pick-up since January 31, 2025. Mr. Smith has advised you via correspondence dated February 6, 2025, that FJMC would charge you storage fees of one hundred dollars ($100) per day, excluding Sundays, beginning March 11, 2025. Unfortunately, as of the date of this letter, your vehicle remains on FJMC's premises, and you have not yet paid the storage charges.

By this correspondence, **please be advised that your permission to store your vehicle on FJMC's premises is hereby expressly withdrawn and revoked. The continued presence of your vehicle on FJMC's premises is without its consent. Accordingly, as of the date of this correspondence, your vehicle is considered abandoned.** Please be advised that your vehicle may be towed and/or be subject to a lien sale within ten (10) days of the date of this letter if it is not removed from FJMC premises.

**Exhibit I**
*Letter from Crafts Law Firm*

*Crafts Law Firm*

Brian Conway
March 19, 2025
Page 3

If you would like to retrieve your vehicle before it is towed and/or subject to a lien sale, please email me with a date and time, during FJMC normal service department hours, when you would like to retrieve it and I will alert the dealership. I am also authorized to waive storage fees if you retrieve your vehicle on or before March 31, 2025.

Please let me know how you intend to proceed.

Thank you.

Very truly yours,

Crafts Law Firm

Angelo A. DuPlantier III

AAD

**Exhibit I**
*Letter from Crafts Law Firm*